**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------- x

LORI JO VINCENT, RUTH ANN
GUTIERREZ, LINDA U. GARRIDO, and
JOHN GARRIDO, on behalf of themselves
and all others similarly situated,

              Plaintiffs,

    - against -

THE MONEY STORE, TMS MORTGAGE,
INC., HOMEQ SERVICING CORP., and
MOSS, CODILIS, STAWIARSKI, MORRIS,
SCHNEIDER & PRIOR, LLP,

              Defendants.

-------------------------------------------------------------------------- x

        No. 03 CV 2876

**MOSS CODILIS' OPPOSITION TO**
**PLAINTIFFS' MOTION TO AMEND THE COMPLAINT**

**INTRODUCTION**

Seven years into this case, Plaintiffs want to add a new claim based on a statute that was repealed eight years ago, use a savings clause to revive it, and then rely on a discovery rule to get by the one-year statute of limitation that would have applied to this repealed statute. The proposed amendment comes after undue delay, is futile, and its addition would substantially prejudice Moss Codilis. Therefore, Plaintiffs' motion should be denied.

I.    **PLAINTIFFS HAVE FAILED TO PROVIDE AN EXPLANATION FOR THEIR INEXCUSABLE SEVEN-YEAR DELAY.**

"The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay." Cresswell v. Sullivan and Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (affirming denial of motion to amend to add a new claim based on the same facts previously alleged after a delay of 17 months where plaintiff's only explanation for the delay was his ignorance of the law). See also Deere v. Goodyear Tire and Rubber Company, 175 F.R.D. 157, 165 (N.D.N.Y. 1997) ("In instances where a considerable amount of time has passed between filing the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his or her neglect and delay."). As a matter of law, a delay of seven years, without any explanation, requires denial of a motion to amend. Indeed, district courts within the Second Circuit have routinely denied motions to amend where the delay is less than seven years, even when the new claim is based entirely on facts previously alleged. Cresswell, 922 F.2d at 72; Troxel Mfg. Co. v. Schwinn Bicycle Co., 489 F.2d 968, 971 (2nd Cir. 1974) (district court did not abuse discretion in denying a motion to amend after a delay of two years where plaintiff failed to offer a satisfactory reason for the delay); Deere, 175 F.R.D. at 165 (motion to amend denied where delay exceeded two years and plaintiff offered no satisfactory reason for the delay); Prince v. Suffolk County Dep't of Health Servs., Nos. 89 Civ. 7243 (LAP), 89 Civ. 8085 (LAP), 1995 WL 144782 at *4 (S.D.N.Y. April 3, 1995) (motion to amend was denied where the plaintiff's only excuse for three-and-a-half year delay in adding a new claim based on the facts previously alleged was ignorance of the law).

The two cases upon which Plaintiffs rely to support their contention that they need not provide a reason for their seven-year delay are readily distinguishable from the instant case. In Richardson Greenshields Sec., Inc. v. Lau, the court granted defendant leave to add a counterclaim a little over one year after the original answer was filed, and engaged in no discussion of the arguments for and against the amendment.  In fact, the only reason the court gave for permitting the amendment was that the district judge had impermissibly refused to allow the motion for leave to be filed.  825 F.2d at 650 (2nd Cir. 1987).  In State Teachers Retirement Bd. v. Fluor Corp., the plaintiff's delay in seeking the amendment was less than three years and the delay was due to plaintiff's efforts to verify the factual basis for the new claim.  654 F.2d 843, 849 (2nd Cir. 1981).  Plaintiffs here waited far longer than the amending party in Richardson, and do not have the excuse that they needed to verify facts. Thus, neither of the cases cited by Plaintiffs contradicts the well-established law that a motion to amend must be denied when the party seeking to amend a pleading fails to provide a satisfactory explanation for a long delay.  Cresswell, 922 F.2d at 72.  Plaintiffs cannot escape their burden to provide a satisfactory explanation for their inexcusable seven-year delay.

The fact that Plaintiffs are relying on the same facts alleged in their original Complaint is unavailing.  In Cresswell, the Second Circuit affirmed the denial of a motion to add a new claim based on a different statute after a delay of only seventeen months. Cresswell, 922 F.2d at 72.  Because the Cresswell plaintiff's only excuse for the delay was his ignorance of the statute, an excuse that the court found unacceptable, the motion was denied.  Accord Troxel, 489 F.2d at 970-71 (affirming denial of motion to add new claim

based on previously alleged facts where movant offered no satisfactory reason for the delay); <u>Deere</u>, 175 F.R.D. at 165 (denying motion to add claim for punitive damages based on previously alleged facts because plaintiff offered no satisfactory reason for the delay); <u>Prince</u>, 1995 WL 144782 at *4 (denying motion to add a claim under the First Amendment to complaint alleging violation of Section 1983 because the only reason offered for the delay was plaintiff's ignorance of the law).  The delay in the instant case is particularly egregious when compared to those cases because Plaintiffs were aware of this potential claim *as early as November 2003*, nearly seven years ago, when they cited to Section 12-5-115 in their Opposition to Moss Codilis' Motion to Dismiss.  <u>See</u> Plaintiffs' Motion to Amend Complaint at 14.   Notwithstanding their awareness of Section 12-5-115, Plaintiffs waited for seven years to add the claim, while discovery on the remaining claims concluded.  In light of Plaintiffs' admitted awareness of this potential claim over the last seven years, it is clear that the delay is inexcusable.  As in <u>Cresswell</u>, <u>Troxel</u>, <u>Deere</u> and <u>Prince</u>, the Motion offered without any explanation for the delay should be denied.

## II.   <u>THE ADDITION OF THE SECTION 12-5-115 CLAIM WOULD BE FUTILE.</u>

Plaintiffs cannot assert a claim under Section 12-5-115 against Moss Codilis because they did not and cannot allege that they had an attorney-client relationship or any other contractual relationship with Moss Codilis.  Thus, Moss Codilis had no duty to the Plaintiffs that could implicate Section 12-5-115.  That statute, repealed in 2002, prohibits unlicensed attorneys from charging fees for legal services to their clients.  According to Plaintiffs' allegations, The Money Store, not Plaintiffs, had an attorney-client relationship with Moss Codilis.  Thus, the only party that could have a claim against Moss Codilis under

Section 12-5-115 is The Money Store.  If Plaintiffs believe that The Money Store improperly passed its own attorneys fees on to Plaintiffs, then Plaintiffs' recourse is not to sue Moss Codilis for legal services rendered to The Money Store.   Rather, the appropriate remedy would have been for Plaintiffs to assert a breach of contract claim against The Money Store.   Forcing Plaintiffs to look to The Money Store makes sense because The Money Store is the party with whom Plaintiffs had a contractual relationship. Authorizing Plaintiffs to assert a claim that centers on the relationship between Moss Codilis and The Money Store, and to which Plaintiffs were not a party, is fraught with peril.  Indeed, Plaintiffs now accuse Moss Codilis of "practicing law without a license" when at the same time, for their FDCPA claim against The Money Store in <u>Mazzei</u>, they make precisely the opposite allegations.  Specifically, in <u>Mazzei</u>, the plaintiffs allege that Moss Codilis was *not* practicing law at all, and instead, assert that The Money Store was attempting to deceive plaintiffs into *believing* that Moss Codilis *was* practicing law.  <u>Mazzei</u> alleges as follows:

> Moss Codilis was never "retained" by the Money Store Defendants to attempt to collect the alleged debt from Plaintiff, and did not review borrowers' files before sending the letter.  Rather, upon information and belief, in exchange for a flat fee, Moss Codilis merely provided an attorney letterhead and form dunning letter *to make it appear* as if the letter was a communication from an attorney acting in that capacity who was directly involved in Plaintiff's case.

<u>See</u> Second Amended Complaint in <u>Mazzei v. The Money Store, *et al.*</u>, Case No. 01 Civ. 5694, ¶ 25 (emphasis added).  In <u>Mazzei</u>, the plaintiffs acknowledged that Moss Codilis was *not* practicing law.  This allegation was the basis of an FDCPA claim against The Money Store that <u>Mazzei</u> and the <u>Vincent</u> Plaintiffs failed to file against Moss Codilis before the statute of limitations expired.  This Court should not permit Plaintiffs to file a new claim

against Moss Codilis seven years later, based on precisely the *opposite* and irreconcilable facts that they alleged – and never retracted – in <u>Mazzei</u>.[1]

## III.  MOSS CODILIS WILL SUFFER PREJUDICE IF PLAINTIFFS ARE PERMITTED TO AMEND THE COMPLAINT.

Even if the Court determined that Plaintiffs could stand in the shoes of The Money Store to bring a claim under Section 12-5-115, the prejudice to Moss Codilis that would result from allowing the amendment likewise compels a denial.  In particular, discovery has concluded, and Moss Codilis had no opportunity to take discovery on at least one critical issue related to the Section 12-5-115 claim:  the issues relating to the applicable statute of limitations.  Even if Plaintiffs could assert a claim against Moss Codilis for fees charged to The Money Store, the applicability of the statute of limitations is unknowable at this point.  The statute of limitations for a claim under Section 12-5-115 is at most two years.  Colo. Rev. Stat. § 13-80-102.  That claim accrues when the injury giving rise to the cause of action "is discovered or should have been discovered by the exercise of reasonable

---

[1]     With respect to the FDCPA claims Plaintiffs were originally attempting, some points are worth noting.  In certain circumstances, the mass mailing of form letters on law firm letterhead has been roundly criticized and held to be a violation of Section 1692e of the Fair Debt Collection Practices Act ("FDCPA").  <u>See</u>, <u>e.g.</u>, <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1321 (2d Cir. 1993); <u>Avila v. Rubin</u>, 84 F.3d 222, 228-29 (7th Cir. 1996).  The reason courts find trouble with such mass mailing is that creditors and debt collectors are not permitted to use law firm letterhead to deceive and scare debtors into thinking that they are about to be sued, when the creditor has no real intention of pursuing legal action against them.  That reasoning has no application here, as The Money Store and Moss Codilis caused the letters to be sent in order to enforce security interests, namely the mortgages held on Plaintiffs' homes.  <u>See</u> <u>Jordan v. Kent Recovery Serv., Inc.</u>, 731 F. Supp. 652, 657 (D. Del. 1990).  The breach letters from Moss Codilis were not only a statutory prerequisite to such foreclosure, but also an important warning to the borrowers that they were in grave danger of losing their homes.  To the extent the borrowers took the notices more seriously because they were drafted on law firm letterhead, so much the better.  The fact that it would be local counsel in the relevant jurisdiction – rather than Moss Codilis – who actually filed the foreclosure did not change the importance to the borrowers of receiving this warning letter from a law firm.  The letters did not deceive the borrowers; the letters helped them to realize the likely consequence of their delinquency.

diligence." Colo. Rev. Stat. § 13-80-108(8).  As discussed above, if Plaintiffs can sue under Section 12-5-115, it is only as a subrogee of The Money Store.  Because the claim belongs to The Money Store as the party who was charged by Moss Codilis for legal services, it is The Money Store's awareness of the alleged wrongdoing that controls when the statute of limitations begins to run.  See Colo. Rev. Stat. § 12-80-108(8).  Cf. Group Health Inc. v. Mid-Hudson Cablevision Inc., 58 A.D.3d 1029, 1031, 871 N.Y.S.2d 780, 782 (N.Y. App. Div. 2009) ("the subrogee acquires only the rights that the subrogor had, and so any subrogee may find its claim defeated by on a defense based on the subrogor's action or inaction"); Union Ins. Co. v. RCA Corp., 724 P.2d 80, 82 (Colo. App. 1986) (statute of limitation begins to run against a subrogee insurer at the time a claim accrues to its insured).  The critical question is therefore when The Money Store should have discovered the Section 12-5-115 claim with reasonable diligence.  In other words, assuming that The Money Store expected and required Christina Nash to be a licensed attorney in order to perform her work, when did, and when should have, The Money Store discovered that Ms. Nash was not licensed to practice.  These issues have not been the subject of any discovery because they were not relevant at that time.  The time of accrual of the claim to The Money Store – and hence to the Plaintiffs – is therefore totally unknown at this time.[2]

---

[2]       At the previous telephonic hearing in this matter, after having only a short time to review Plaintiffs' proposed Amended Complaint, Moss Codilis indicated its belief that Plaintiffs' proposed claims under Section 12-5-115 were barred by either the two-year "catch all" statute of limitations or the one-year statute of limitations applicable to penalties and forfeitures of penal statutes.  Plaintiffs correctly point out in their motion that the limitations period most likely must be measured from the date the injury and its cause was or should have been known.  But see Colo. Rev. Stat. § 13-80-108(4) (measuring the time the cause of action accrues from the date the money was owed).  From that point, however, Plaintiffs' analysis is misguided because Plaintiffs fail to recognize, as explained above, their claim is only as good as The Money Store's, and thus the limitation period is therefore measured from when The Money Store knew or should have known.

Plaintiffs contend that their mere citation of Section 12-5-115 in previous filings gave Moss Codilis notice of Plaintiffs' claim under Section 12-5-115.   That assertion is misleading.   None of Plaintiffs' submissions to the Court or to Moss Codilis indicated that they intended to *assert a claim* under Section 12-5-115.   Rather, the citation to Section 12-5-115 in a string cite including several other citations to New York and California state court decisions prohibiting the unlicensed practice of law served to support Plaintiffs' existing claims for fraud and unjust enrichment against Moss Codilis.   Under those circumstances, the alleged violation of Section 12-5-115 and several other states' law vis-à-vis The Money Store served as the basis for the common law claims.   There was never any indication that Plaintiffs would seek to recover under Section 12-5-115 independently, and thus no indication of the relevance of the statute of limitations as a claim under that section.   Thus, Plaintiffs' citation to Section 12-5-115 cannot serve as an adequate basis for notice of Plaintiffs' claim under that statute.

It is important to note that because Plaintiffs' delay has been so long, Moss Codilis need not show a great deal of prejudice in order to defeat the Motion.   "The longer the period of unexplained delay, the less will be required of a nonmoving party in terms of a showing of prejudice."   Evans v. Syracuse City School Dist., 704 F.2d 44, 47 (2d Cir. 1983) (upholding denial of leave to amend after two-year delay).   Indeed, courts have concluded that a movant's failure to provide a satisfactory explanation for a long delay is sufficient on its own to compel the denial of an amendment.   See Deere, 175 F.R.D. at 165 (denying motion to amend, without discussing prejudice to the defendant, solely due to the plaintiff's failure to provide a satisfactory explanation for the two-year delay in seeking the amendment).

Moreover, the passage of seven years inevitably causes prejudice in the form of diluted memories and the degradation of evidence.  See United States v. Ramos, 420 F. Supp. 2d 241, 251 (S.D.N.Y. 2006) (presumption of prejudice grows over time); Prince, 1995 WL 144782 at *5-*6 (the dimming of recollection inherently resulting from the passage of time damages a party's ability to present evidence, and this was sufficient to show prejudice to nonmovants so as to deny motion to amend).  Thus, due to the unexplained and inexcusable delay of over seven years, Moss Codilis' burden with respect to showing prejudice is relaxed. Nevertheless, contrary to Plaintiffs' contention, Moss Codilis would be substantially prejudiced by the proposed amendment.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Amend the Complaint to add a new claim against Moss Codilis should be denied.

Dated:  July 23, 2010

Respectfully submitted,

MOSS, CODILIS, STAWIARSKI, MORRIS, SCHNEIDER & PRIOR, LLP

By: /s/ David J. Chizewer
    David J. Chizewer (ARDC 06206747)
    Jon E. Klinghoffer (ARDC 06270082)
    GOLDBERG KOHN LTD.
    55 East Monroe Street, Suite 3300
    Chicago, Illinois  60603
    (312) 201-4000

    Thomas P. Battistoni (TPB 8012)
    SCHIFF HARDIN LLP
    900 Third Avenue, 23rd Floor
    New York, New York  10022
    (212) 753-5000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on July 23, 2010, he caused a copy

of **MOSS CODILIS' OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE**

**COMPLAINT** to be served via the Court's ECF/electronic mailing system upon the

following:

Paul S. Grobman
Law Offices of Paul S. Grobman
555 – Fifth Avenue
17th Floor
New York, New York  10017

Kenneth F. McCallion
McCallion & Associates LLP
24 West 40th Street
New York, New York  10018

W. Hans Kobelt
Daniel A. Pollack
McCarter & English, LLP
27th Floor
245 Park Avenue
New York, New York  10167

/s/ David J. Chizewer
David J. Chizewer