UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LORI JO VINCENT, RUTH ANN GUTIERREZ, and
LINDA U. GARRIDO, and JOHN GARRIDO, on behalf
of themselves and all others similarly situated,

                Plaintiffs,                      03 Civ. 2876 (JGK)

    -- against --

THE MONEY STORE, TMS MORTGAGE, INC.,
HOMEQ SERVICING CORP., and MOSS, CODILIS,
STAWIARSKI, MORRIS, SCHNEIDER
& PRIOR, LLP,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**<u>PLAINTIFF'S MEMORANDUM OF LAW<br>IN SUPPORT OF MOTION<br>TO AMEND AND SUPPLEMENT THE COMPLAINT</u>**

## PRELIMINARY STATEMENT

Plaintiffs' Lori Jo Vincent, Ruth Ann Gutierrez and Linda and John Garrido submit this memorandum in support of their Motion to Amend and Supplement the Complaint in this action. (A copy of proposed Amended Complaint is annexed as Exh. A to the Declaration of Paul Grobman (hereinafter "Grob. Decl.") filed in support of the Vincent plaintiffs' motion) The proposed Amended Complaint arises from concerns raised by the court that the proposed class definition in the motion for class certification filed by plaintiffs in April 2009 was different than the proposed class definition in the Complaint.

As shown below, the defined classes in the proposed First Amended Complaint are each clearly encompassed within the broad class definition set forth in the original Complaint filed with the Court on April 24, 2003, as well as the prior Complaint in the related action involving Joseph Mazzei ("the Mazzei action"). Moreover, even if the proposed Amended Complaint had significantly departed from the claims and allegations in the prior pleading, amendment should be allowed for the following reasons: (1) the defendants were clearly aware of the nature of the claims against them, and cannot legitimately claim unfair surprise or prejudice; (2) merits and class discovery in this action did not commence until years after the filing of the Complaint, with class discovery (and discovery on the state claims) not concluding until March 2009; and (3) defendants have failed to produce critical discovery which delayed the investigation and narrowing of the class claims.

## BACKGROUND

Each of the plaintiffs in this action owned homes subject to mortgage loans serviced by the defendants in this action. When each fell behind on their loans, the defendants put their homes into foreclosure, allegedly incurring certain legal fees and expenses in foreclosure and in

1

bankruptcy actions filed by Ms. Gutierrez and the Garridos. Eventually, each of the plaintiffs paid off their loan pursuant to Payoff Quotes provided by HomEq, including the attorneys fees and expenses which defendants represented they had incurred.

In April 2003, plaintiffs filed a lawsuit against defendants, alleging that defendants "engaged in misconduct in connection with servicing and attempting to collect amounts purportedly owed on residential home equity loans", including "charging attorneys and other fees for which they had no right to be compensated." (See Complaint annexed to the Grob. Decl. as Exh. B, at ¶2) The Complaint alleged causes of action under §1666d of the Truth in Lending Act ("TILA"), the Fair Debt Collection Practices Act ("the FDCPA"), and various statutory and common law claims under state law, and sought damages and injunctive relief.

Stating that Money Store, Inc., TMS and HomEq would be "referred to collectively hereinafter as 'the Money Store Defendants'", (Grob. Exh. B, ¶11), the Complaint pled several proposed classes, including a class of "all Money Store borrowers who were charged late fees for periods after the Money Store had accelerated their loans, or other fees not permitted under the Money Store's standard form loan documents." (Grob. Exh. B, ¶14) Among the questions of law and fact which the Complaint alleged were common were "whether Defendants sought the payment of legal fees from borrowers which they had no right to collect under either state or federal law." (Grob. Exh. B, ¶18(f));

### Judge Sprizzo's Limitations on Discovery

Notwithstanding F.R.C.P. 16, Judge Sprizzo never issued a scheduling order advising the parties about discovery deadlines, or the deadline for filing Amended Complaints. Instead, as he did in the Mazzei action, the court directed that discovery in this action was to proceed in piecemeal form.

In fact, discovery on *any* issue in this action was not permitted to commence until January 5, 2006, when the Court granted defendants' motions for summary judgment dismissing plaintiffs' FDCPA claim, but denied their motions to dismiss the TILA claims. (See Docket Sheet annexed to Grob. Decl. as Exh. C, at entry #23, p. 6). Even at that point, however, the court limited discovery to plaintiffs' TILA claim, and stayed discovery on plaintiffs' state and class claims. (Grob. Exh. C, p. 6, entry # 23)

Discovery with regard to plaintiff's TILA claims was not completed until September 2006, and defendants immediately filed a second summary judgment motion thereafter. (Grob. Exh. C, p. 6, entry dated 7/27/06; p.7, entry #24)  By Order dated April 23, 2008, Judge Sprizzo again denied defendants' motion for summary judgment on defendants' TILA claims, and directed plaintiffs to move for class certification. (Grob. Exh. C, at p.9, entry #51)  When the parties pointed out to the court that there had not yet been class discovery or discovery on the state claims, by Order dated May 29, 2008, Judge Sprizzo finally allowed class discovery and discovery on the state claims to go forward. (Grob. Exh. C, p. 10, entry # 52; see also excerpts from May 28, 2010 conference annexed to Grob. Decl. as Exh. D, pp. 7-8, 9, 35-36)  That discovery was not completed until March 13, 2009, when plaintiff was finally able to complete the deposition of Jon Dunnery, HomEq's Rule 30(b)(6) witness, on class discovery and state law issues.

### Plaintiffs' Opposition Papers Further Identified The Challenged Fees

In opposition to the four dismissal motions filed by the HomEq defendants and Moss Codilis in this matter, plaintiffs substantially elaborated on the claims in the Complaint.  For instance, despite the lack of discovery, in response to defendants' first motion to dismiss filed in October 2003, plaintiffs submitted papers which specifically challenged defendants' assessment

of late fees after acceleration, and various other attorneys' fees and expenses paid to HomEq by the plaintiffs. (See excerpts from Supplemental Mem. of Law in Opp. To Motion to Dismiss dated Feb. 11, 2004 annexed to Grob. Decl. as Exh. E, at p. 10-12)  Moreover, in opposition to defendants' Motion for Summary Judgment filed in October 2006, plaintiffs submitted papers identifying other specific fees and expenses which were allegedly improperly charged, including: (1) a so-called "Outsource Management Fee" or "Attorney Outsource Fee" (2) late fees after acceleration; (3) property inspection fees; (4) surcharges for breach letters; (4) attorneys fees and expenses which HomEq never paid, or paid only years after they were charged to plaintiffs; and (5) late fees, inspection fees and substitution of trustee fees prohibited by California law (Memo in Opposition to Motion for Summary Judgment annexed to Grob. Decl. as Exh. F, at p. 1, 7-10, 18-24, 25-29)

      In sum, as a result of the allegations in plaintiffs' Complaint, the papers in opposition to defendants' various dismissal motions, and subjects raised during discovery, the defendants were provided with notice of each of the fees and expenses which the plaintiffs are challenging in these lawsuits, and which form the basis for the class definitions in the plaintiffs' proposed Amended Complaint.  In fact, in their motion papers in opposition to class certification in Vincent – which pursuant to Judge Sprizzo's direction were filed *before* plaintiffs' motion for class certification was made – defendants themselves provided a list of "18 different types of fees and charges" which plaintiffs were challenging, including each of the fees and expenses described in plaintiff's proposed Amended Complaint. (See excerpts from the Declaration of John Dunnery in Opposition to Class Certification in Vincent, annexed to Grob. Decl. as Exh. G)

# ARGUMENT

## PLAINTIFFS MOTION FOR LEAVE TO AMEND AND SUPPLEMENT THE COMPLAINT SHOULD BE GRANTED

Rule 15(a) of the Federal Rules of Civil Procedure, in relevant part, states that a "court should freely give leave when justice so requires." (FRCP 15(a)) As the Second Circuit has stated:

> The Rule reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated . . . . and 'mere technicalities' should not prevent cases from being decided on the merits. . . Thus, absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed.

Monahan v. N.Y.C. Dep't of Corrections, 214 F.3d 275, 283 (2nd Cir. 2000)

In considering motions to amend, courts in this Circuit have routinely found "that delay, standing alone, is an insufficient basis to deny leave to amend", U.S. v. Continental Illinois Nat. Bank & Trust Co., 889 F.2d 1248, 1254 (2d Cir. 1989), and that it is the party opposing the motion which bears the burden "of demonstrating that substantial prejudice would result were the proposed amendment to be granted." Hall v. North Bellmore School District, 2010 U.S. Dist. Lexis 27448, *5 fn 2 (E.D.N.Y. 2010).

As in the Mazzei case, for several reasons, defendants cannot possibly allege that they were surprised or unaware of the claims in the proposed amended complaint, much less establish the type of "undue prejudice" necessary to defeat the broad right to amend.

## A. The Allegations In Plaintiffs' Amended Complaint Are Encompassed Within The Prior Complaint, And Are Merely Pled With More Specificity

In the pending Complaint, plaintiffs seeks certification of a class of "all Money Store borrowers who were charged late fees for periods after the Money Store had accelerated their

5

loans, or *other fees not permitted under the Money Store's standard form loan documents.*" (Exh. B, ¶14 (emphasis added))  Moreover, among the common questions of law and fact which the Vincent Complaint identified were "whether Defendants *sought the payment of legal fees* from borrowers which they had no right to collect under either state or federal law." (Exh. B, ¶18(f) (emphasis added)).

In the proposed Amended Complaint, the class definitions merely amplify what each of those allegedly improper "fees" are. (Grob. Exh. A, ¶14) Each of the specific fees and expenses described in the class definitions of the proposed Amended Complaint is clearly encompassed within the broad class definition described above in the original Complaint.

In evaluating purported claims of prejudice arising from a proposed amendment, "courts consider whether a party has had prior notice of a claim and whether the claim arises from the same transaction as claims in the original pleading." Margel v. EGI Gem Lab, Ltd, 2010 U.S. Dist. Lexis 10622, *29 (S.D.N.Y. 2010)  Thus, even where a proposed amended complaint adds additional causes of action, where the new claims rely on the same set of operative facts as conduct challenged in the pending Complaint, courts have regularly found that the defendant had fair notice of the amended allegations and thus could not demonstrate prejudice.  For instance, in Hanlin v. Mitchelson, 794 F.2d 834, 840-41 (2nd Cir. 1986), the plaintiff sought to amend a Complaint alleging legal malpractice to add additional claims for breach of contract and negligence against her attorney in a prior lawsuit.  The District Court found that the defendant "would be prejudiced by an amendment after discovery", but the Second Circuit reversed, finding that:

> The new claims are merely variations on the original theme of malpractice, arising from the same set of operative facts as the original complaint.  Moreover, both the contract and negligence theories set

>forth in the proposed amended complaint *were forecast* by the original malpractice allegations.

Id. at 841 (emphasis added). See also Siegel v. Converters Transportation, Inc., 714 F.2d 213, 216 (2d Cir. 1983) (allowing amendment of complaint to enlarge period for which damages were sought was allowed where it was based on the same "transaction in question" as that pled in the initial complaint); Margel, 2010 U.S. Dist. Lexis 10622, *31 (granting motion to amend complaint to add breach of contract claim, court found that "plaintiffs' new claim stems from the same agreements that govern their previous claims").

Thus, for this reason alone, any claim of prejudice by the HomEq defendants is meritless. Tiller v. Atl. Coast Line R.R., 323 U.S. 574, 581 (1945) (allowing amendment to add additional allegations relating to accident where "the [nonmovant] has had notice from the beginning that petitioner was trying to enforce a claim against it because of the events leading up to the death of the deceased"); see also 3 James Wm. Moore et al., Moore's Federal Practice §15.19[2], at 15-82 (3d ed. 1999) ("Amendments that amplify or restate the original pleading or set forth facts with greater specificity should relate back.").

### B. Defendants Were Also Aware Of The More Specific Allegations In the Amended Claims Through Papers Filed By Plaintiffs In This Action And Information Sought During Discovery

Moreover, in addition to notice arising from the pending Complaint itself, defendants have also been supplied ample additional notice of the allegations and claims in the proposed amended complaint through both papers filed by plaintiffs in this action and information sought by plaintiffs during discovery.

Courts routinely reject claims of "undue prejudice" arising from a proposed amendment to a pleading where the nonmovant had notice of the new allegations through papers filed in court or arguments otherwise raised by the parties. U.S. v. Continental Ill. Nat. Bank & Trust Co., 889

F.2d 1248, 1255 (2d Cir. 1989) (reversing denial of motion to amend answer because court can "discern little legitimate surprise" from amendment of an answer where the allegation was raised in prior "motion papers filed in [a] related …proceeding"); Tokio Marine & Fire Ins. Co. v. Employers' Ins. of Wausau, 786 F.2d 101, 103 (2d Cir. 1986) (reversing denial of motion to amend because the new allegations had been "explicitly foreshadowed" at a prior oral argument); 6A Wright, et al., Federal Practice & Procedure §1497 ("it is sufficient if the opposing party was made aware of the matters to be raised by the amendment from sources other than the pleadings")

In this action, the papers filed by plaintiffs' in opposition to defendants' motions to dismiss and for summary judgment specifically described each of the various fees and expenses which defendants claim are illegal. (Grob. Decl. Exh. E, pp. 10-12; Grob. Decl. Exh. F, at pp. 1, 7-10, 18-24, 25-29)

In fact, if there were any doubt that defendants were clearly aware of the fees and expenses challenged by plaintiffs in this action and the companion Mazzei action, it should be conclusively dispelled by the Declaration of Jon Dunnery filed in this action by defendants on January 7, 2009, *before* plaintiffs had moved for class certification or raised the revised class definitions set forth in their Amended Complaint. Thus, in the Dunnery Declaration filed in the Vincent action, defendants said the following:

> In this action and the companion *Mazzei* action, the plaintiffs are complaining about 18 different types of fees and charges assessed to loan accounts, which were assessed to different borrowers at different times and in different states. Those charges and fees include or cover: a. dishonored checks; b. broker price opinions; c. property inspections; d. late fees after TMS had accelerated their loan; e. an outsource management fee; f. an attorney outsourcing fee; g. file review/monitoring in bankruptcy; h. the assignment of their mortgage; i. motions for relief from stay; j. notices of sale; k. substitutions of trustees; l. demand/collection letters; m. proofs of claim; n. posting a notice of default; o. the cost of obtaining documents in

> bankruptcy; p. bankruptcy motions which were never filed; q. breach letters generated by HomEq; r. senior lien monitoring.

(See excerpt from Dunnery Decl. annexed to Grob. Decl. as Exh. G, p. 5, fn 1) Thus, the Dunnery Declaration conclusively demonstrates that -- as a result of four separate motions filed by HomEq in this and the related Mazzei case -- defendants' counsel was well aware of the claims which form the basis for the class definitions in the proposed Amended Complaint. As a result, the proposed amendment would "not unfairly surprise [defendants] or impede the fair prosecution of their claims", and the motion to amend should therefore be permitted. Monahan, 214 F.3d at 284.

Moreover, the Second Circuit has also found that amendment is proper where "the amended claim was obviously one of the objects of discovery and related closely to the original claim...." State Teachers Retirement Board v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); Tokio, 786 F.2d at 103. Here, the allegations and class definitions contained in the proposed Amended Complaint were the subject of repeated discovery requests in this and the related Mazzei action, as well as the depositions taken of the defendants. For instance, document and interrogatory demands served on the HomEq defendants in the winter of 2006 demanded information about attorneys' fees, late charges after acceleration, property inspections, amounts charged by non-attorney Outsourcers and all other fees and charges which defendants assessed against plaintiffs. (See discovery demands annexed to Grob. Decl.as Exh. H, #4-5, 7-10, 14-15, 18-20; Grob. Exh. I, #1-9) Moreover, depositions taken of HomEq's Rule 30(b)(6) witness also repeatedly focused on these specific fees and expenses. (See deposition excerpts annexed to Grob. Decl. as Exh. J, pp. 43, 46, 53, 57, 75, 81, 93, 101, 147, 151-155, 216-17, 225, 266, 271-76, 280, 282, 286-87, 298-300, 303-04, 321-24, 342, 344-45, 347-48, 361-62, 369-70, 383, 417-21, 433-35, 438-39, 486-89)

9

In sum, defendants cannot possibly assert that they were "unfairly surprised" by the allegedly improper fees and expenses alleged in the proposed Amended Complaint, because each was raised numerous times in plaintiff's opposition to defendants' motions for summary judgment, and in the discovery in the <u>Vincent</u> and <u>Mazzei</u> action sought by plaintiff. As a result, defendants cannot show prejudice, and the motion to amend must be granted.

### C. There Was No Undue Delay In This Case

Plaintiff anticipates that defendants will attempt to argue that the <u>Vincent</u> plaintiffs "unduly delayed" moving to amend. Even if this were correct, "mere delay, . . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." <u>Richardson v. Greenshields</u>, 825 F.2d 647, 653, n.6 (2d Cir. 1987), <u>quoting</u> <u>State Teachers Ret. Corp. v. Fluor Corp.</u>, 654 F.2d 843, 856 (2d Cir. 1981)  In any event, the plaintiffs cannot be accused of undue delay.

In this case, over five years elapsed between the commencement of this action in April 2003 and Judge Sprizzo's May 29, 2008 Order finally allowing class discovery to go forward. Indeed, class discovery in this action was not completed until March 13, 2009, barely a month before the class certification motion was required to be made pursuant to a previous court order. (Grob. Exh. C, p. 12, entry #67)

Under these circumstances, plaintiff cannot be said to have acted unreasonably – much less in bad faith – in not seeking to amend the complaint before class discovery was completed. Plaintiff learned significant information about the nature of the prospective classes during class discovery. This is common in a class action, where "the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class member's claims." <u>Steiman v. Bush</u>, 221 F.3d 1266, 1273 (11th Cir. 2000);

Columbus Drywall & Insulation, Inc. v. Masco Corp., 2009 U.S. Dist. Lexis 30937, *63 (N.D. Ga. 2009) ("with regard to the amended class definition, it is well-recognized that the act of refining a class definition is a natural outcome of federal class action practice"). Indeed, had plaintiff sought to amend the Complaint before the close of class discovery, "they might have been placed in the unenviable position of having to request a second motion to amend" to revise the class definitions, "which would have been in bad form." Ruggles v. Wellpoint, Inc., 2009 U.S. Dist. Lexis 99548, *9 (N.D.N.Y. 2009)

Moreover, even in 2009, defendants were still unable or unwilling to supply basic information bearing on plaintiff's claims. For instance, one of plaintiffs' claims in these actions is that the HomEq defendants have routinely passed on hundreds of dollars in attorney's fees and expenses to borrowers which they either (i) *never* incurred, (ii) paid only years after the borrower was charged, and/or and/or (iii) improperly shared with non-attorney or unlicensed Outsourcers. Despite repeated requests during discovery, defendants have failed to provide a single check or any other document which shows when – or even *whether* -- the attorneys who purportedly performed legal services which were passed on to plaintiffs by HomEq were actually paid. (See March 31, 2009 letter demanding such documents annexed to the Grob. Decl. as Exh. K)

Furthermore, defendants have not only failed to provide highly relevant discovery regarding when the purported legal fees passed on to plaintiffs were actually incurred by HomEq, they have continued to affirmatively represent in papers filed with this Court in June 2009 that attorneys fees are not passed onto to a borrower "unless and until they had been incurred, reviewed and paid." (See excerpt from Money Store's Reply Memorandum dated June 10, 2009 annexed to Grob. Decl. as Exh. L, p. 16)  Plaintiffs believe that the record will

demonstrate that this assertion is patently false. As a court in this District stated in granting a motion to amend under similar circumstances:

> A litigant cannot withhold evidence requested in discovery and testify falsely under oath and then claim that his adversary has delayed in asserting claims relating to the information that was concealed. Thus, [plaintiff] is not responsible for any delay here, and it was the defendant who acted in bad faith.

Lennon v. Seaman, 2001 U.S. Dist. Lexis 2798, *13-14 (S.D.N.Y. 2001)

### The New Claim Against Moss Codilis

The Amended Complaint also seeks to add a claim against defendant Moss Codilis under Colorado Revised Statute §12-5-115 (C.R.S. 2000), which prohibits an unlicensed person from receiving any money as compensation "for services rendered . . .by him as an attorney" in Colorado. During the June 24, 2010 conference call with the Court, Moss Codilis indicated that it objects to the proposed Colorado statutory claim on several grounds, including: (1) that plaintiffs' assertion of the §12-5-115 claim is barred by the statute of limitations; and (2) that Moss Codilis would be unfairly surprised by the statutory claim's assertion. However, neither of these arguments holds water.

#### (i) The Colorado Statutory Claim Is Not Barred By the Statute of Limitations

Plaintiffs' claim under §12-5-115 against Moss Codilis is centered around the activities of Christina Nash, Moss Codilis's in-house counsel and the person who oversaw the program under which Moss Codilis sent out 88,937 breach letters on behalf of the HomEq defendants, charging a $50 or $35 per letter "attorney fee" which was ultimately passed on to HomEq borrowers. As defendants learned during discovery in the Mazzei action, Nash was never

12

admitted to practice law in Colorado (or indeed in any state other than Pennsylvania), and thus Moss Codilis had no right to charge "attorneys fees" under §12-5-115 for her services.

During the telephone conference, Moss Codilis contended that the §12-5-115 claim is subject to either a one- or two-year statute of limitations. For purposes of determining whether the §12-5-115 claim is timely, however, that difference in length is irrelevant. Instead, the critical question is when the cause of action "accrues", triggering the commencement of the limitations period.

Under §13-80-108(8) of the Colorado Revised Statutes, a cause of action under §12-5-115 does not accrue until "the injury, loss, damage or conduct giving rise to the cause of action is discovered or should have been discovered by the exercise of reasonable diligence." §12-5-115 (CRS 2009). As a Colorado federal district court recently stated:

> Colorado's general discovery rule provides that claims accrue when a plaintiff knows or should know through reasonable diligence of both the injury and its cause... A claim for relief does not accrue until the plaintiff knows or should know, in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action.

Conrad v. Educational Resources Inst., 652 F.Supp.2d 1172, 1185 (D.Col. 2009)

In the present case, the deposition of non-party witness Moss Codilis in the Mazzei action pursuant to subpoena did not occur until January 23, 2003. Christina Nash testified on the firm's behalf. At the January 23, 2003 deposition, Moss Codilis disclosed that (i) Ms. Nash was the Moss Codilis attorney who oversaw the breach letter program for HomEq, and was personally responsible for the letters sent out to HomEq borrowers; (ii) Ms. Nash operated out of Moss Codilis's Englewood, Colorado offices, and (iii) Ms. Nash was never admitted to practice law in Colorado.

13

Moss Codilis cannot legitimately dispute that this was the first time that plaintiffs' counsel – much less plaintiffs' themselves – could possibly have learned of the conduct which forms the basis for their claim under §12-5-115. Plaintiffs commenced this action in April 2003, only three months after taking Moss Codilis's deposition.

In order for a new claim to relate back to the time of the original pleading, it must arise out of the same "conduct, transaction, or occurrence" as the claims raised in the earlier filing. See Fed.R.Civ.P. 15(c) As the Second Circuit has stated, "the pertinent inquiry, in this respect, is whether the original complaint gave the defendant fair notice of the newly alleged claims." Wilson v. Fairchild Rep. Co., 143 F.3d 733, 738 (2d Cir. 1998) In this case, the original Complaint repeatedly advised Moss Codilis that plaintiffs claimed that the breach letters were illegal because they were "overseen by an attorney who was not licensed in the state from which the Breach Letters originated and thus had no right to practice law in the State of Colorado." (Grob. Decl. Exh. B, ¶22; see also ¶¶2, 18, 20, 28-30, 33, 40, 44, 55) Thus, Moss Codilis cannot possibly argue that it did not have "fair notice" of the newly alleged claims.

### (ii) Plaintiffs Repeatedly Invoked §12-5-115 In This Litigation

Moreover, in opposition to Moss Codilis's several motions to dismiss plaintiffs' claims in this litigation and in support of their cross-motion against Moss Codilis, plaintiffs repeatedly and specifically cited to §12-5-115 and Colorado cases requiring unlicensed lawyers to disgorge fees under the statute. See excerpts from Plaintiffs' Memo in Opposition to Moss Codilis' Motion to Dismiss dated Nov. 17, 2003 annexed to Grob. Decl. as Exh. M, pp. 19-20 (citing to §12-5-115 and Koscove v. Bolte, 30 P.3d 784 (Col. 2001) for proposition that Moss Codilis may not retain legal fees for services "carried out by a non-licensed attorney'); Excerpts from Plaintiffs' Memo in Opposition to Moss Codilis' Motion For Summary Judgment dated Nov. 20, 2006 annexed to

14

Grob. Decl. as Exh. N, at pp. 7-8 (also citing to §12-5-115 and <u>Koscove</u> to show that legal fees charged by Moss Codilis were illegal)

In fact, in response to plaintiffs' cross-motion for summary judgment filed in November 2006 claiming that the firm was prohibited from charging fees for work overseen by Ms. Nash as a matter of law, Moss Codilis made a Rule 56(f) motion to take discovery, claiming that "discovery has been stayed with respect to plaintiffs' claims", and that it "must have the opportunity to subpoena Ms. Nash for deposition" to counter "the proposition that she was allegedly the attorney responsible for the notices sent to plaintiffs and that she was allegedly unlicensed." (See Moss Codilis Memo annexed as Exh. O to Grob. Decl., pp. 6-7) Under these circumstances, Moss Codilis cannot possibly demonstrate the type of prejudice necessary to justify denial of a motion to amend.

## **CONCLUSION**

For each of the above reasons, plaintiff respectfully submits that its Motion to Amend the Complaint should be granted.

Dated: July 9, 2010

                                                      Law Offices of Paul Grobman

                                                      By: Paul Grobman  
                                                      555 Fifth Avenue -17[th] floor  
                                                      New York, New York 10017  
                                                      Tel.: 212-983-5880  
                                                      Fax.: 212-682-7060  
                                                      E-Mail: Grobtown@aol.com