UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORI JO VINCENT, RUTH ANN GUTIERREZ, and LINDA U. GARRIDO, and JOHN GARRIDO, on behalf of themselves and all others similarly situated,

Plaintiffs,

03 Civ. 2876 (JGK)

-- against --

THE MONEY STORE, TMS MORTGAGE, INC., HOMEQ SERVICING CORP., and MOSS, CODILIS, STAWIARSKI, MORRIS, SCHNEIDER & PRIOR, LLP,

Defendants.

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO AMEND AND SUPPLEMENT THE COMPLAINT**

## PRELIMINARY STATEMENT

While purporting to generally oppose plaintiffs' proposed Amended Complaint, defendants Money Store, TMS Mortgage and HomEq (hereinafter "Money Store") specifically challenge only a few discrete aspects of the proposed amendment. Money Store's arguments are virtually identical to those made in opposition to the motion to amend in the Mazzei action, and -- because the court has imposed an eight-page limitation on this brief -- plaintiffs expressly incorporate and specifically adopt the arguments made in Mr. Mazzei's Reply Brief in further support of his motion to amend.

## POINT I
## MOSS CODILIS HAS FAILED TO MEET ITS BURDEN IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND

Defendant Moss Codilis ("Moss") also opposes the motion to amend the complaint, arguing that plaintiffs' attempt to add a claim under Section 12-5-115 of the Colorado Statutes would be futile, and cause Moss undue prejudice. Moss does not and cannot deny that the question of whether Moss could charge legal fees for work performed from its Colorado offices by its "in-house counsel" Christina Nash -- an attorney not licensed in Colorado – has been ***the*** central focus of plaintiffs' claims against it in this action. Moreover, Moss admits that plaintiffs repeatedly invoked Section 12-5-115 in their papers filed in opposition to Moss motions in this action, citing the statute as a basis for concluding that Moss's assessment of legal fees for Ms. Nash's work was illegal. Grob. Decl. Exh. M, pp. 19-20; Grob. Decl. Exh. N, at pp. 7-8.

### A. Moss Has Failed To Show That It Would Suffer Prejudice From The Proposed Amendment

Moss first argues that plaintiffs had the information necessary to bring the Colorado statutory claim "nearly seven years ago", and that "as a matter of law, a delay

of seven years, without any explanation, requires denial of a motion to amend." ((Moss Opposition Mem. (hereinafter "Moss Mem."), p. 4, 7). In making this argument, however, Moss misconstrues both the facts and the law.

Section 12-5-115 of the Colorado statutes stated in relevant part that:

> If any unlicensed person *receives any money*…as a fee or compensation for services rendered… by him as an attorney…within this state, all money *so received by him* shall be considered as money received to the use of the *person paying the same* and may be recovered… by an action for money had and received. (emphasis added)

As can be seen, the statute requires *payment* to the unlicensed attorney by the person bringing the action. Though plaintiffs became aware that Ms. Nash was not admitted to practice law in Colorado around the time this case was filed, plaintiffs had no idea whether Money Store paid Moss for the breach letters sent to them by the firm, or whether plaintiffs were ultimately charged for those letters by Money Store. Those facts could only be learned through discovery from Money Store, which was not permitted to commence until January 2006. (Grob. Decl. Exh. C, #23) Moreover, even at that point, the court ordered that "discovery on plaintiffs' state law claims against both parties shall be and hereby is stayed." (Grob. Decl. Exh. C, #23) Thus, Moss's assertion that plaintiffs had enough information to amend the complaint to bring the §12-5-115 claim in 2003 is simply incorrect. The record evidence demonstrates that plaintiffs could not learn that Money Store paid Moss for the breach letters sent to plaintiffs -- and passed on those fees to the plaintiffs – until well after the commencement of discovery in this action in 2006. Since a §12-5-115 claim could not be made absent evidence of such payment, the assertion of a purported "seven year delay" is a myth.

In any event, even if there were no explanation for the failure to amend earlier, delay is not a basis for precluding amendment. As the Second Circuit has repeatedly stated, "the rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith…Mere delay… absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." Block v. First Blood Ass., 988 F.2d 344, _ (2d Cir. 1993)

"Courts in this district have consistently granted motions for leave to amend a complaint where facts and allegations developed during discovery are closely related to the original claim and are foreshadowed in earlier pleadings." Stonewell Corp. v. Stonewell Corp., 2010 U.S. Dist. Lexis 14690, *6 (S.D.N.Y. 2010) Here, the original complaint repeatedly advised Moss that plaintiffs were challenging their right to charge legal fees for letters sent "by an attorney who was not licensed in the state from which the Breach Letters originated and thus had no right to practice law in the State of Colorado." (Grob. Decl. Exh. B, ¶23, and ¶¶20, 28-30, 33, 40, 44(c), 51(c), 55, 56) Thus, because the new claims "aris[e] from the same set of operative facts as the original complaint" and "were forecast by the original [] allegations", Moss cannot show prejudice. Hanlin v. Mitchelson, 794 F.2d 834, 840-41 (2nd Cir. 1986).

Moreover, plaintiffs repeatedly cited to §12-5-115 in papers filed in response to Moss's motions in this action, providing another reason why Moss can claim "little legitimate surprise" from the proposed amendment. U.S. v. Continental Ill. Nat. Bank, 889 F.2d 1248, 1255 (2d Cir. 1989) (reversing denial of motion to amend where the allegation was raised in prior "motion papers filed in [a] related …proceeding")[1]

[1] Moss argues that the references to Section 12-5-155 in plaintiff's papers should be discounted, because plaintiffs never indicated "that they intended to *assert a claim* under Section 12-5-115. "

In an attempt to establish prejudice, Moss raises the following theory. According to Moss, plaintiffs can not sue directly under Section 12-5-115 for legal fees charged to them for the breach letters, but "only as a subrogee of The Money Store." (Moss Mem., p. 7) As a result, for purposes of determining whether the statute of limitations has run on plaintiffs' §12-5-115 claim, the point at which plaintiffs learned that Ms. Nash wasn't licensed in Colorado is irrelevant. Rather, "the critical question" is "when did, and when should have, The Money Store discovered that Ms. Nash was not licensed to practice." (Moss Mem., p. 7) According to Moss, since they never took discovery on this issue, they will be prejudiced if the amendment is allowed.

Moss fails to provide the slightest support for this novel theory, which would make plaintiffs right to recover illegal attorneys fees paid by plaintiffs dependent on whether Money Store -- Moss's joint tortfeasor – knew of the attorney's wrongdoing. Indeed, far from limiting the right to bring an action under §12-5-115 to parties who had a direct "attorney-client relationship" with the unlicensed lawyer, as Moss asserts, the statute grants standing to "the person ***paying***" the fee "received" by the unlicensed attorney, (Section 12-5-115 (emphasis added), clearly encompassing parties other than direct clients.

Moss cannot dispute that Ms. Vincent, Ms. Gutierrez and the Garridos ultimately paid the fees for the breach letters prepared by Ms. Nash. Moss does not deny that plaintiffs could not have discovered that Moss was charging legal fees for services

---

(Moss Mem., p. 8) However, that is true in every case in which a plaintiff seeks to amend a complaint to add a new cause of action, and yet the Second Circuit not only regularly grants such amendments, but finds that they relate back to the date the original complaint was filed. Hanlin, 794 F.2d at 41; see Tran v. Alphonse Hotel, 281 F.3d 23, 36 (2d Cir. 2002) ("if the original complaint referred to general acts of fraud ...that might support a RICO claim, then a later amendment adding a RICO claim would "relate back" to the original complaint")

performed by an unlicensed attorney until January 2003 at the earliest, when Moss's deposition was taken in the Mazzei action. Since Moss acknowledges that the §12-5-115 limitations period does not begin to run until "the injury and its cause was or should have been known", (Moss Mem., p.7, fn 2), and since this action was commenced just months after the Moss deposition, the §12-5-115 cause of action is clearly timely.

In any event, even if Moss could make a plausible argument that the §12-5-115 limitations period is measured by when the Money Store defendants "discovered that Ms. Nash was not licensed to practice", (Moss Mem., p. 7), it is difficult to discern how information regarding what Moss conveyed to Money Store about Ms. Nash's licensing status is not already within Moss's possession. Margel v. E.G.L. Gem Lab, Ltd., 2010 U.S. Dist. Lexis 10622, *31 (S.D.N.Y. 2010) (allowing amendment adding new breach of contract theory where the information underlying the claim "is already within the defendants' possession")

Finally, even if an additional deposition from the Money Store defendants were necessary, courts have routinely found "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." U.S. v. Cont Ill. Nat'l Bank, 889 F.2d 1248, 1255 (2d Cir. 1989); JP Morgan Chase v. IDW Group, LLC, 2009 U.S. Dist. Lexis 39858, *12 (S.D.N.Y. 2009) ("the mere fact that discovery has concluded does not provide a reason for denying leave to amend")

**B. Moss Has Failed To Show That Adding the §12-5-115 Claim Would Be Futile**

Moss also contends that allowing the proposed addition of the Colorado statutory claim would be "futile", because the statute only prohibits "unlicensed attorneys from

charging fees for legal services *to their clients*." (Moss Mem. p. 4 (emphasis added)) According to Moss, since the firm had no attorney-client relationship with plaintiffs, they "had no duty to the Plaintiffs that could implicate Section 12-5-115." (Moss Mem. p. 4)

Again, however, Moss fails to cite a single decision – or language from the statute – to support this interpretation. Under its plain meaning, §12-5-115 does not limit standing to parties who had a direct "attorney-client relationship" with the unlicensed lawyer, but rather grants standing to any "person ***paying***" the fee "received" by the unlicensed attorney. (Section 12-5-115)

**POINT II**
**MONEY STORE HAS NO BASIS FOR CHALLENGING THE MODIFICATIONS TO THE CLASS DEFINITION**

As previously stated, the Money Store defendants have opposed the Vincent plaintiffs' Motion to Amend on virtually the same grounds as those raised by them in Mazzei, and plaintiffs expressly incorporate and adopt the arguments made in the Mazzei Reply Brief in this reply.

Plaintiffs wish to emphasize a few points. First, just as the original complaint did in the Mazzei action, the Vincent Complaint provided fair notice to the Money Store that plaintiffs were challenging the legal fees charged by Money Store on a class-wide basis. The Vincent Complaint filed in April 2003 defined a class made up of:

> All Money Store borrowers who were charged late fees for periods after the Money Store had accelerated their loans, or *other fees not permitted under the Money Store's standard form loan documents*.

(Grob. Decl. Exh. B, ¶14(c) (emphasis added)) Indeed, among "the questions of law and fact" which the Vincent Complaint alleged were common to the Class were:

> whether ***Defendants sought the payment of legal fees*** *from borrowers which they had no right to collect under either state or federal law.*

(Grob. Decl. Exh. B, ¶18(f), p.6 (emphasis added)) See also Grob. Decl. Exh. B, ¶2 (original Complaint alleges that Money Store defendants "***charg[ed] attorneys and other fees*** for which they had no right to be compensated.")[2]

Second, wholly apart from the notice provided in the Vincent complaint and through filings in the Mazzei action, papers submitted in opposition to Money Store's motions in this action clearly put Money Store on notice that plaintiffs were challenging payments of fees to Outsourcers. (Grob. Decl. Exh. E, p. 12 (discussing improper "Attorney Outsource Fees"); Exh. F, p. 1, 7 (defendants "improperly charged a so-called 'Outsource Management Fee"). Moreover, plaintiffs also repeatedly sought information regarding legal fees shared with outsourcers in discovery. (Grob. Decl. Exh. H, # 7-10)

Third, to the extent that Money Store was unaware of the specific grounds underlying plaintiff's claim that attorney's fees were improperly charged, it could and should have sought that information from plaintiffs through class discovery. In this case, however, defendants sought *no class discovery whatsoever* from plaintiffs in either the Mazzei or Vincent matter. Having failed to seek any class discovery from plaintiff on the

[2] Moreover, even if the original Vincent Complaint did not provide such notice, the Money Store defendants also received notice based on the pleadings and other filings in Mazzei. U.S. v. Continental Ill. Nat. Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989) (emphasis added) (reversing denial of motion to amend answer because court can "discern little legitimate surprise" from amendment of where the allegations were raised in prior "motion papers *filed in [a] related ...proceeding*"). In fact, after Mr. Mazzei's filing, it was not necessary for the Vincent plaintiffs to even file a separate class action to provide notice of their claims. As the Second Circuit has stated, "[c]lass members are permitted – even encouraged – to rely on the class plaintiffs to advance their claims, and the initiation of a class action gives defendants all the information they need to prepare their defense." In re Worldcom Sec., 496 F.3d 245, 254 (2d Cir. 2007)

question of what allegedly improper "attorney's fees" were encompassed within the class definition in the original complaint, defendants cannot complain about their ignorance.

Fourth, Money Store has not and cannot dispute that class discovery in this action did not even commence until June 2008, and was not finished until March of 2009, less than a month before the challenged class definitions were set forth in plaintiffs' initial motion for class certification. While Money Store argues that plaintiffs should be penalized for failing to amend their class definition before class discovery *has even begun*, they provide no support for this theory. Hudson v. Delta Airlines, 90 F.3d 451, 459 (11th Cir. 1996) ("prior discovery is often necessary to sufficiently define the proper scope of an alleged class or subclass")

Fifth, Money Store does not and cannot dispute that – despite repeated demands in discovery – it not only failed to produce legal bills from the law firms which purportedly performed the work for which the Vincent plaintiffs were charged, but also any check or other document which shows the amount of legal fees which Money Store actually paid. Money Store has never offered any explanation for the failure to produce this basic information fundamentally bearing on the fee-sharing and penalty payment issues, and as a result, cannot complain that plaintiff delayed amendment of the class definition. Lennon v. Seaman, 2001 U.S. Dist. Lexis 2798, *13-14 (S.D.N.Y. 2001)[3]

## **CONCLUSION**

For each of the above reasons, plaintiffs respectfully submit that their Motion to Amend the Complaint should be granted.

---

[3] In any event, even by Money Store's estimation, plaintiffs did not have the information necessary to raise the modifications to the class definition until 2006, six years after this action was instituted. Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653n.6 (2d Cir. 1987) (noting that parties "have been permitted to amend their pleadings to assert new claims long after they acquired the facts necessary to support those claims")

Dated: August 2, 2010

Law Offices of Paul Grobman

By: Paul Grobman
555 Fifth Avenue -17th floor
New York, New York 10017
Tel.: 212-983-5880
Fax.: 212-682-7060
E-Mail: Grobtown@aol.com