UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
LORI JO VINCENT, RUTH ANN :
GUTIERREZ, LINDA U. GARRIDO, and :
JOHN GARRIDO, on behalf of themselves and :
all others similarly situated, :
 :
                                                                        :    No. 03 CV 2876 (JGK)
                      Plaintiffs, :
 :
    - against - :
 :    **MOSS CODILIS' MEMORANDUM**
THE MONEY STORE, TMS MORTGAGE, :    **IN SUPPORT OF ITS MOTION**
INC., HOMEQ SERVICING CORP., and :    **FOR SUMMARY JUDGMENT**
MOSS, CODILIS, STAWIARSKI, MORRIS, :
SCHNEIDER & PRIOR, LLP, :
 :
                      Defendants. :
---------------------------------------------------------------- X

## INTRODUCTION

        All of Plaintiffs' claims against Defendant Moss, Codilis, Stawiarski, Morris, Schneider & Prior, LLP ("Moss Codilis") are based on a falsity – that Moss Codilis engaged in the unauthorized practice of law when it sent default notices on behalf of TMS Mortgage Services, Inc. ("TMS") to delinquent borrowers. Plaintiffs base this false premise exclusively on the fact that Christina Nash, who had day-to-day responsibility for sending out the default notices, was not licensed to practice law. Plaintiffs ignore that (a) Ms. Nash did not engage in legal work; (b) was always supervised by a properly licensed attorney; and (c) was replaced midway through the Moss Codilis-TMS relationship by another properly licensed attorney.

        Plaintiffs willfully ignore these facts. Indeed, Plaintiffs made no attempt to investigate or develop the factual basis for any of their claims in this case – they never deposed

Ms. Nash in this case, they never deposed Leo Stawiarski or Valerie Bromley, the properly licensed Moss Codilis attorneys involved in drafting and/or generating the Breach Letters, and they never deposed any TMS representative on the subject of whom TMS expected to be performing Moss Codilis' work in connection with the Breach Letters. Had Plaintiffs conducted such an investigation, it would have revealed the undisputed proof that the only legal work performed by Moss Codilis in connection with the Breach Letters was performed by a duly-licensed attorney. Ms. Nash's work on the Breach Letter Program was largely administrative in nature and involved overseeing the mass generation and mailing of over 1000 Breach Letters in a 24-hour period every month.

In addition to, and independent from, these indisputable facts, two of the Plaintiffs' claims have separate fatal defects. First, it is uncontested that Plaintiff Ruth Ann Gutierrez suffered no damages related to the Breach Letters because she was never charged for and never paid any fee related to the Moss Codilis Breach Letters. Additionally, Gutierrez never scheduled her claim in this case as an asset in her subsequent bankruptcy. Second, Plaintiff Lori Jo Vincent as well as Guteirrez received their Breach Letters in 2000, at which time it is undisputed that a duly-licensed attorney had overtaken Ms. Nash's duties relating to the Breach Letters. For these reasons, Plaintiffs' claims find no support in the record, and Moss Codilis is entitled to judgment as a matter of law.

## STATEMENT OF FACTS

In April 1997, TMS, a mortgage loan servicing company, retained Moss Codilis to enforce TMS' rights under the mortgages it serviced. See Moss Codilis' Statement of Material Facts ¶ 1, filed concurrently herewith (hereinafter the "SOMF"). Moss Codilis agreed to perform services for TMS related to the creation, development, and operation of a program to send delinquent borrowers default notices that were a prerequisite to foreclosing on the mortgages that

TMS serviced (the "Breach Letter Program") SOMF ¶ 1. The contract was signed on behalf of Moss Codilis by Bill Breeden, who signed in his capacity as an Operations Manager – by definition, a non-legal position. He subsequently signed the only amendment to the contract expressly in his capacity as Moss Codilis' "COO – Non-Legal Affairs". SOMF ¶ 1. Pursuant to the Breach Letter Program, TMS referred their residential mortgage loans that were a certain number of days in default to Moss Codilis for preparation of a Breach Letter. SOMF ¶ 2. When Moss Codilis sent a Breach Letter to a borrower, it did not contain a false threat of litigation. Mortgage servicers, such as TMS, were typically under strict guidelines to pursue foreclosure against borrowers after their loans became a certain number of days delinquent. SOMF ¶ 13.

Under the Breach Letter Program, Moss Codilis developed a series of template letters which were created by Leo Stawiarski, a partner at Moss Codilis who was, at all times relevant to this lawsuit, licensed to practice law in the State of Colorado. SOMF ¶ 4. Part of Moss Codilis' responsibilities under the Breach Letter Program was to make sure that the template for the Breach Letters, including the form text, complied with all state and federal laws applicable to servicing the mortgages. SOMF ¶ 4. Sometimes that involved using different text for letters designated for certain states. SOMF ¶ 4. All changes to the templates and form text were approved by Mr. Stawiarski. SOMF ¶ 5. The Breach Letter templates were also approved by Samuel Shusterman, an in-house lawyer with TMS. SOMF ¶ 10.

Other than the initial creation of, and the subsequent modifications to, the template Breach Letters, the Program was an exercise in mass production, using proprietary information technology created for Moss Codilis. SOMF ¶ 6. Specifically, TMS would send information regarding defaulted mortgages to Moss Codilis electronically, typically once per month, in batches that usually exceeded 1000 borrowers. SOMF ¶ 6. TMS required that the

Breach Letters to these borrowers be mailed within 24 hours after Moss Codilis received each batch of borrower information. SOMF ¶ 6. The 24-hour turnaround was expressly mandated by the contract between Moss Codilis and TMS. SOMF ¶ 6.

TMS compensated Moss Codilis for these services by paying Moss Codilis a "pre-set charge" that was originally fifty dollars ($50.00) (and then was decreased to thirty-five dollars ($35.00)) for each Breach Letter generated by Moss Codilis. SOMF ¶ 3. In some instances, TMS then passed the costs of Moss Codilis' services on to certain of the borrowers. SOMF ¶ 3. Although some borrowers reimbursed TMS for these fees, Moss Codilis had a contractual right to, and did in fact, collect its fees from TMS regardless of whether TMS charged or collected those fees from its borrowers. SOMF ¶ 3. Moss Codilis received no compensation related to the Breach Letter Program other than the pre-set charge. SOMF ¶ 3.

Ms. Nash was primarily responsible for the administration of the Breach Letter Program from April 1997 through October 1999. SOMF ¶ 5. During that time, Ms. Nash's duties related to the Breach Letter Program were limited to overseeing the generation of the Breach Letters through Moss Codilis' computer programs. SOMF ¶ 9. In general, Moss Codilis did not review the loan documents of the individual borrowers. SOMF ¶ 9. Rather, it reviewed certain information, flagged by the computer system according to pre-determined criteria, such as incomplete information about the borrower or the percentage of the amount due under the loan. SOMF ¶ 9. If there was a potential problem with the information reviewed, Ms. Nash referred the loan back to TMS for a resolution. SOMF ¶ 11. On occasion, Ms. Nash may have exercised some business judgment in determining whether a Breach Letter should be sent. SOMF ¶ 11. All of this work was done within 24 hours of Moss Codilis receiving the borrowers'

information.  SOMF ¶ 6.  TMS was fully informed about this process, and indeed demanded that the borrower information be transformed into Breach Letters within 24 hours.  SOMF ¶¶ 6, 10.

In July, 1999, Valerie Bromley began working on the administration of the Breach Letter Program and took over Ms. Nash's duties in late October 1999.  SOMF ¶ 7.  Ms. Bromley was licensed to practice law in the State of Colorado on October 28, 1999 and remains licensed to this day.  SOMF ¶ 8.  After October, 1999, Ms. Nash's involvement in the Breach Letter Program was extremely limited.  From that time forward, Ms. Nash was no longer involved in the review of any individual loan files or Breach Letters in any way.  SOMF ¶ 7.

Moss Codilis sent a Breach Letter to Plaintiff Lori Jo Vincent ("Vincent") on or about March 22, 2000.  SOMF ¶ 14.  Moss Codilis sent a Breach Letter to Plaintiff Ruth Ann Gutierrez ("Gutierrez") on or about September 28, 2000, and an additional Breach Letter on or about October 30, 2000.  SOMF ¶ 18.  By March, 2000, Ms. Bromley had already taken over for Ms. Nash with respect to administration of the Breach Letter Program, and she was licensed to practice law in the State of Colorado.  SOMF ¶¶ 7, 8.  At that point, Ms. Nash had only minimal involvement in the Breach Letter Program.  SOMF ¶ 7.

Notably, TMS never charged or collected any amounts from Gutierrez related or attributable to these Breach Letters.  SOMF ¶ 20.  Moss Codilis also sent a Breach Letter to Plaintiffs Linda U. Garrido and John Garrido (the "Garridos") on or about October 8, 1997.  SOMF ¶ 16.

Each of the Breach Letters sent to Plaintiffs stated that Moss Codilis was "authorized . . . to contact you regarding the status of your account."  SOMF ¶¶ 15, 17, 19.  The Breach Letters also stated that TMS "intends to enforce the provisions of the Note and Security Instrument" or that TMS "may seek any and all remedies provided for in the contract."  SOMF

¶¶ 15, 17, 19.  None of the Breach Letters sent to any Plaintiff stated that Moss Codilis would act as counsel in a foreclosure proceeding.  SOMF ¶ 22.  None of the Breach Letters sent to any Plaintiff stated that Moss Codilis would charge and collect attorney's fees from the Plaintiffs.  SOMF ¶ 23.  None of the Breach Letters sent to any Plaintiff stated that a Moss Codilis attorney had reviewed their loan documents.  SOMF ¶ 24.

## ARGUMENT

The Court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."  Bessemer Trust Co., N.A. v. Branin, 618 F.3d 76, 85 (2d Cir. 2010) (quoting Fed. R. Civ. P 56(c)).  Not all disputes of fact will preclude summary judgment, rather a fact is material if it "might affect the outcome of the suit under the governing law."  Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003).  "A fact issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Id. (quoting from Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  Plaintiffs cannot rely on conclusory statements or mere allegations in order to defeat summary judgment.  Yin Jing Gan v. City of New York, 996 F.2d 522, 532-33 (2d Cir. 1993).  Rather, Plaintiffs must "offer such proof as would allow a reasonable juror to return a verdict in [their] favor."  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  Moss Codilis need not prove that Plaintiffs' case is "wholly frivolous.  Rather, where [Plaintiffs] will bear the ultimate burden of proof at trial on an issue, [Moss Codilis'] burden will be satisfied if [it] can point to an absence of evidence to support an essential element of [Plaintiffs'] claim."  Flair Int'l Corp. v. Heisler, 173 F.3d 844, 845 (2d Cir. 1999).

I.	**Moss Codilis Did Not Engage In The Unauthorized Practice Of Law.**

Every one of Plaintiffs' claims against Moss Codilis relies on the allegation that Moss Codilis was engaged in the unauthorized practice of law. In alleging a fraud claim, Plaintiffs contend that Moss Codilis misled Plaintiffs in to believing that Moss Codilis had a right to collect fees for the Breach Letters, even though Moss Codilis was allegedly engaged in the unauthorized practice of law. Amended Complaint ¶¶ 64-68. See also, Ball Interior Demolition Corp. v. Palmadessa, 874 F. Supp. 576, 588 (S.D.N.Y. 1995) (holding that a misrepresentation of a material fact is an element of fraud under New York law). In alleging unjust enrichment, Plaintiffs claim that Moss Codilis was unjustly enriched by the fees it received from TMS that were reimbursed to TMS by Plaintiffs, but which were not really owed to TMS because Moss Codilis was not licensed to practice law. Amended Complaint ¶¶ 64-67. Plaintiffs also seek disgorgement under Colorado Revised Statutes § 12-5-116 on the theory that the Moss Codilis fees, which Plaintiffs allegedly reimbursed to TMS, should never have been paid to Moss Codilis by TMS in the first place because of the allegations that Moss Codilis was engaged in the unauthorized practice of law. Amended Complaint ¶¶ 81-82. Finally, Plaintiffs use the same allegations to state claims under the California Business and Professions Code § 17200, *et seq*. Amended Complaint ¶ 60. Every one of these claims fails because the undisputed evidence proves that Moss Codilis was *not* engaged in the unauthorized practice of law.

The Breach Letter Program involved a combination of legal and non-legal services. The great majority, if not all, of the legal work and legal judgments performed by Moss Codilis centered on the drafting and revising of the form language to be inserted into Breach Letter templates. The record reflects that this was done by Mr. Stawiarski or only with the approval of Mr. Stawiarski, who was licensed to practice law in Colorado during the entire

relevant time period. SOMF ¶ 4. The drafting of the Breach Letter templates involved legal research and legal judgments on whether the templates complied with the applicable state and federal laws. Id. ¶ 4.

The only remaining work on the Breach Letter Program involved the actual generation and mailing of the individual Breach Letters. This was an exercise in mass-production mandated by TMS' requirement that Moss Codilis generate and send out the Breach Letters within 24 hours after TMS sent the information regarding more than 1,000 delinquent borrowers. Id. ¶ 6. It would have been impossible for Moss Codilis to perform any sort of legal review or legal work on each of the over 1,000 borrowers in 24 hours, much less also generate and send the Breach Letters within that time frame. TMS could have had no reasonable expectation that such process would involve "legal" review or would need to be performed by licensed lawyers. In fact, TMS knew that the person who signed the contract for Moss Codilis and who was ultimately responsible for the operations of the Breach Letter program as a whole, was Bill Breeden. Mr. Breeden was identified to TMS as a non-lawyer. Id. ¶ 1.

The Breach Letter information was processed by Moss Codilis' proprietary computer programs and, according to certain pre-determined criteria, the computer program flagged some borrowers' information. The person responsible for administering this aspect of the Breach Letter Program reviewed this flagged information and, if the information was incomplete or appeared incorrect, she referred the borrower file back to TMS for a resolution. Id. ¶¶ 9, 11. From April 1997 to October 1999, that person was Ms. Nash. Id. ¶ 5. From October 1999 to June 2001, that person was Ms. Bromley, who was then licensed to practice in the State of Colorado. Id. ¶ 7. During the two-and-a-half years she administered the Breach

Letter Program, it may be possible that Ms. Nash may have made a very limited number of legal judgments in relation to the Breach Letter Program. Id. ¶ 12. Even assuming that she did, there is no evidence whatsoever that she did so with respect to any of the Plaintiffs in this case. Id. ¶ 26. In any event, the vast majority of Ms. Nash's work on the Breach Letter Program was non-legal – the simple fact that she was an attorney (albeit unlicensed) does not render every activity she did into the practice of law.[1]

## II. Plaintiffs Vincent And Gutierrez's Claims Have Additional Fundamental Defects That Preclude Any Recovery.

### A. Gutierrez Never Paid Legal Fees for the Breach Letter.

It is undisputed that Gutierrez never paid any fees to TMS related to the Breach Letters sent to her by Moss Codilis. SOMF ¶ 20. Without the payment of fees, Gutierrez has no standing to assert a claim under Colo. Rev. Stat. § 12-5-116. Thus, Moss Codilis is entitled to judgment as a matter of law on these claims.

Gutierrez's claim for fraud is also doomed for this reason. Proof of damages or injury is an essential element of fraud in every jurisdiction. See Conroy v. Regents of Univ. of Cal., 45 Cal. 4th 1244, 1255, 203 P.3d 1127, 1137 (Cal. Ct. App. 2009) (damage resulting from the fraud in an essential element of a fraud claim under California law); Restatement (Second) of Torts § 525 (claim for fraud requires proof of "pecuniary loss"). Cf. Simon v. Philip Morris, Inc., 124 F. Supp. 2d 46, 71 (E.D.N.Y. 2000) ("State laws' elements of a claim for fraudulent concealment, while not uniform in all states share many attributes. A plaintiff must prove that

---

[1] TMS is not the only one that understood the non-legal nature of this work. Plaintiffs' counsel in this case alleged in the companion case the precise opposite allegations with respect to the nature of Moss Codilis' legal work as they have alleged here. In Mazzei v. TMS, Plaintiffs allege that Moss Codilis was *not* practicing law at all and that TMS was attempting to deceive Plaintiffs into *believing* that Moss Codilis *was* practicing law. See Second Amended Complaint in Mazzei v. The Money Store, et al., Case No. 01 Civ. 5694, ¶ 25. These allegations, which directly contradict the claims made in this case, have never been retracted.

-9-

. . . the plaintiff suffered damages as a proximate result of the defendant's conduct.") (citing Restatement (Second) of Torts §§ 550, 551).

As with the fraud claim, a claim for unjust enrichment requires that the plaintiff prove she suffered some detriment. "This necessarily means that the plaintiff must show that the defendant was unjustly enriched at the plaintiff's expense." Clay v. Am. Tobacco Co., 188 F.R.D. 483, 500 (S.D. Ill. 1999) (declining to certify a class based on other important differences between other elements of the claim in the different states, but noting that damage or detriment to the plaintiff is a universal requirement); Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 1593 (Cal. Ct. App. 2008) ("The elements of an unjust enrichment claim are the receipt of a benefit and the unjust retention of a benefit at the expense of another."). Since Gutierrez was never paid a fee for the Breach Letter, no one was enriched at her expense. For this reason alone, Moss Codilis is entitled to judgment as a matter of law on Gutierrez's claim for unjust enrichment.

Finally, the same applies to Gutierrez's claim under the California Business and Professions Code § 17200. Lorenzo v. Qualcomm, Inc., 603 F. Supp. 2d 1291, 1303 (S.D. Cal. 2009) (a claim under section 17200 *et seq*. requires a showing that the plaintiff has lost money or property as a result of the violation).

### B. Gutierrez Is Further Barred from Asserting this Claim Because She Deceived the United States Bankruptcy Court.

Gutierrez's claim against Moss Codilis is barred by the doctrine of judicial estoppel. The doctrine of judicial estoppel prevents a party from "asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding." Bates v. Long Island R.R. Co., 997 F.2d 1028, 1037 (2d Cir. 1993). Because of her financial troubles, Gutierrez filed for bankruptcy on February 5th, 2004. SOMF ¶ 21. Her

petition for bankruptcy was filed under the penalty of perjury. Id. Gutierrez also declared under the penalty of perjury that her schedule of assets, which was filed along with her bankruptcy petition, "was true and correct to the best of her knowledge, information and belief." Id. The schedule of assets, however, did not include the claims that Gutierrez asserts in this case, notwithstanding the fact that this case was pending at the time of her February 5, 2004 bankruptcy filing. Id. This fact exposes Gutierrez's claim to the defense of judicial estoppel. See Sea Trade Co. Ltd. v. FleetBoston Fin. Corp., No. 03 Civ. 10254, 2008 WL 4129620, *10 (S.D.N.Y. Sept. 4, 2008) (finding plaintiff's claim judicially estopped when it failed to disclose the claim as an asset in a Argentinian bankruptcy filing). Accordingly, Gutierrez's claims against Moss Codilis are barred.

### C. Gutierrez's and Vincent's Claims Fail as a Matter of Law Because an Attorney Licensed in Colorado Worked on the Breach Letter Program When Vincent's Breach Letter Was Sent.

Gutierrez and Vincent received Breach Letters from Moss Codilis on or after March 22, 2000. SOMF ¶ 14. At that time, Valerie Bromley was employed by Moss Codilis and her primary job was overseeing the Breach Letter Program, having replaced Christina Nash in that role. SOMF ¶ 7. Ms. Bromley was first licensed to practice law in the State of Colorado in 1999 and remains licensed in Colorado today. Id. ¶ 8. There is no evidence in the record that Ms. Nash had anything whatsoever to do with Gutierrez's or Vincent's Breach Letters. To the contrary, by that time, Ms. Nash was not involved in the review of loan files or Breach Letters in any way. Id. ¶ 7. Thus, both Gutierrez's and Vincent's Section 12-5-116 claim fails because both Mr. Stawiarski and Ms. Bromley were licensed to practice law in the State of Colorado and were involved in the Breach Letter Program on March 22, 2000. For this same reason, the factual basis for Gutierrez's and Vincent's fraud and unjust enrichment claims are wholly unsupported and cannot withstand this Summary Judgment motion.

## III. Conclusion

Regardless of the legal theory pled by Plaintiffs, all of their claims against Moss Codilis are based on Moss Codilis' alleged unauthorized practice of law. Ms. Nash did not perform any legal work except under the supervisor of the duly-licensed lawyer. Moreover, she was replaced by another duly-licensed lawyer midway through the Program. Thus, there was no such unauthorized practice of law. Furthermore, Gutierrez's claims fail for other flaws, including the fact that she was never charged and never paid the Breach Letter fee at issue, and is judicially estopped from pursuing his claim. For these reasons, Moss Codilis is entitled to judgment as a matter of law.

Dated: November 12, 2010

MOSS, CODILIS, STAWIARSKI, MORRIS,
SCHNEIDER & PRIOR, LLP

By: /s/ David J. Chizewer
David J. Chizewer (ARDC 06206747)
Jon E. Klinghoffer (ARDC 06270082)
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois  60603
(312) 201-4000

Thomas P. Battistoni (TPB 8012)
SCHIFF HARDIN LLP
900 Third Avenue, 23rd Floor
New York, New York  10022
(212) 753-5000

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he caused a copy of **MOSS CODILIS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be served via on November 12, 2010 upon the following:

> Paul S. Grobman
> Law Offices of Paul S. Grobman
> 555 – Fifth Avenue
> 17th Floor
> New York, New York  10017
> *Via the Court's ECF/electronic mailing system*
>
> Himanshu R. Sharma
> Suite 2002
> 286 Madison Avenue
> New York, NY  10017
> *Via Federal Express*
>
> Kenneth F. McCallion
> McCallion & Associates LLP
> 24 West 40th Street
> New York, New York  10018
> *Via the Court's ECF/electronic mailing system*
>
> W. Hans Kobelt
> Daniel A. Pollack
> McCarter & English, LLP
> 27th Floor
> 245 Park Avenue
> New York, New York  10167
> *Via the Court's ECF/electronic mailing system*

/s/ David J. Chizewer
David J. Chizewer