UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

LORI JO VINCENT, RUTH ANN GUTIERREZ, LINDA          :
U. GARRIDO and JOHN GARRIDO, on behalf of
themselves and all others similarly situated,                       :
                                                                                              Case No. 03 Civ. 2876 (JES)
                          Plaintiffs,                                          :

          -- against --                                                        :

THE MONEY STORE, TMS MORTGAGE, INC.,               :
HOMEQ SERVICING CORP., and MOSS, CODILIS,
STAWIARSKI, MORRIS, SCHNEIDER                             :
& PRIOR, LLP,
                                                                                       :
                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

## PLAINTIFFS' RESPONSE TO
## MONEY STORE'S RULE 56.1 STATEMENT

Plaintiffs Lori Jo Vincent, Ruth Ann Gutierrez and Linda and John Garrido submit this Statement in response to the Rule 56.1 Statement of defendants The Money Store, TMS Mortgage and HomEq Servicing Corp. (collectively "Money Store"):

1. Plaintiffs object to this statement in Money Store's Rule 56.1 Statement of Material Facts since it is not "followed by citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure 56(e)" as required by Local Rule 56.1(d).

As stated in plaintiffs' brief, plaintiffs also allege that Money Store is precluded from contesting that it did not originate the loans at issue and is not a creditor under the Truth In Lending Act (hereinafter "TILA") by virtue of its prior admissions in this litigation, and its failure to raise this issue until seven years after this litigation had commenced.  (Declaration of

Paul Grobman dated December 12, 2010 filed in Opposition to Money Store's Motion for Summary Judgment (hereinafter "Grob. Decl."), Exh. A, P-R, T, V-Y)

Plaintiffs also dispute this fact because numerous documents in the record indicate that Money Store originated the loans at issue, including Exhibits C, I and N annexed to the Declaration of Hans Kobelt filed in support of Money Store's Motion for Summary Judgment (hereinafter "Kobelt Decl"), which establish that the Money Store defendants were identified as the creditors on the original documents signed by the plaintiffs (Kobelt Decl. Exh. C, at V0004, Exh. I at TMS615; Exh. N, at TMS1118)

In addition, Exhibits C-O and S annexed to the Grobman Declaration indicate that the Notes were owned and payable to Money Store before the proceeds of the loans were actually disbursed to the plaintiffs, and before there was even a binding agreement to make the loans between the parties, and that Money Store was the source of the funding on the plaintiffs' loans. In addition, the documents also indicate an issue of fact as to whether the Money Store and the other entities listed on the plaintiffs' Notes may have been affiliated entities. (Grob. Decl. Exh. O) Evidence in the record also indicates that First Financial was not acting as a creditor on the Guttierez loan, but rather as a mortgage broker, for which it received a broker fee. (Grob. Decl. Exh. D), and there is evidence to suggest that FHB and Accubanc were also not acting as creditors, but as a broker for Money Store.

In addition, to the extent that the Court were to find that Money Store had met its burden of showing an absence of material fact in dispute on the issue of whether Money Store originated any of the loans at issue or whether Money Store is a creditor under TILA, plaintiffs respectfully submit that they are entitled to discovery under Rule 56(f) of the Federal Rules of Civil Procedure on the factual issues which form the basis for Money Store's motion.

2. Admitted.

3. Admitted.

4. Denied. See Objections and Citations in Paragraph 1 above.

5. Denied. See Objections and Citations in Paragraph 1 above

6. Denied. See Objections and citations in Paragraph 1 above, which is expressly incorporated herein by reference. Moreover, the evidence cited in support of this statement does not support the proposition raised. The Note signed by Vincent and submitted by Money Store in support of its motion identifies Money Store as the "initially payable" and current Note holder. (Kobelt Decl. Exh. I at TMS615) Moreover, documents produced by Money Store provide no indication as to who actually disbursed the funds to Vincent, whether Money Store owned the note at that time, whether Accubanc or Equicredit was acting as a mortgage broker for Money Store, or whether there was any relationship between Money Store and these parties.

7. Admit that Money Store has submitted a document which purports to show an assignment from Equicredit to TMS, but otherwise deny. See objections and citations in Paragraphs 1 and 4 above, which are expressly incorporated herein. In addition, the documents relied upon by Money Store to support this assertion are inadmissible hearsay, and have not been in any way authenticated or shown subject to a hearsay exception.

8. Deny. The Note signed by Vincent and submitted by Money Store in support of its motion identifies Money Store as the current Note holder. (Kobelt Decl. Exh. C, at V0004) See reponses in Paragraphs 1 and 4 above, which are expressly incorporated herein.

9. Admit.

10. Denied. See response in Paragraph 1 above, which is expressly incorporated herein by reference. Moreover, the evidence cited in support of this statement does not support

the proposition raised. The Note signed by Guttierez and submitted by Money Store in support of its motion identifies Money Store as the current Note holder. (Kobelt Decl. Exh. C, at V0004)

Documents produced by Money Store demonstrate that the Guttierez loan did not close until well after Money Store purportedly became the owner of the loan on April 7, 1997. (Kobelt Decl. Exh. I, p. TMS 00616)   The Transaction History for the Gutierrez loan indicates that the initial funding of the loan (which Money Store's own records show as "Origination") did not occur until April 21, 1997, which was 14 days *after* the date that TMS obtained the loan documents. (Grob. Decl. Exh. E, at p. TMS1254, at 4/21/97) Another document entitled "Important Notice From The Money Store" to "1st Financial" dated "4-9-97" states: "We will be unable to fund this loan until all conditions indicated above have been received in our office, reviewed and accepted." (Grob. Decl. Exh. F). A facsimile under "The Money Store" letterhead dated "4/14/97" and entitled "Daily Wire Transfer Log" shows under "Borrower Name" the name of Ruth Gutierrez and indicates that the entire amount of the Note for $"41,642.00" was paid by TMS. (Grob. Decl. Exh. G)   A document entitled "Notice of Change in Payment Date" advised Plaintiff Gutierrez that the "first payment has been adjusted in accordance with your loan funding date" and was changed to "5-14-97." (Grob. Decl. Exh H)

Moreover, documents produced by Money Store indicate that no loan obligation even existed until after Money Store obtained and approved the loan documents.  See Grob. Decl. Exh. K  (Acknowledgment dated 4/5/97 signed by Gutierrez indicating that Lender "is not bound to make any loan, nor has it agreed to do so. … [A]pplicant's status is that of an individual seeking a loan…"); Grob. Decl. Exh. L at TMS662 (Itemization statement dated April 5, 1997 signed by Gutierrez indicating that "neither you nor the lender previously has become obligated

4

to accept this loan, nor is any such obligation made by the delivery or signing of this disclosure")

Documents produced by Money Store show that First Financial was not a "lender" on Guttierez's loan as Money Store claims, but rather a mortgage broker.  Thus, closing documents on Money Store letterhead state "Lender: Money Store" and itemize costs of closing with a notation showing "First Financial – 1500.11 Broker" under "Account & Description."  (Grob. Decl. Exh. D).  Under the heading "Amount" on the same line as First Financial, the closing document shows a fee of "1365".  (Grob. Decl. Exh. D).  Documents also show that the initial payment on the Guttierez loan as well as all payments thereafter were made to Money Store. (Grob. Decl. Exh. E).

11.     Admit that Money Store has submitted a document which purports to show an assignment from First Financial to TMS, but otherwise deny.  See reponses in Paragraphs 1, 4 and 11 above, which are expressly incorporated herein.  In addition, the documents relied upon by Money Store to support this assertion are hearsay, and have not been authenticated or shown subject to a hearsay exception.

12.     Denied.  The Note signed by Guttierez and submitted by Money Store in support of its motion identifies Money Store as the "initially payable" and current Note holder. (Kobelt Decl. Exh. C, at V0004)  See reponses in Paragraphs 1, 4 and 10 above, which are expressly incorporated herein

13.     Admit.

14.     Deny.  See response in Paragraph 1 above, which is expressly incorporated herein by reference.  Moreover, the evidence cited in support of this statement does not support the proposition raised.  The Note signed by the Garridos and submitted by Money Store in support

of its motion identifies Money Store as the current Note holder. (Kobelt Decl. Exh. N, at TMS1118)

Documents produced by Money Store indicate that the Garrido loan did not close until well after Money Store purportedly became the owner of the loan on June 13, 1996. (See Exh. P to Kobelt Decl.) The Transaction History produced by TMS for the Garrido loan indicates that the initial funding of the loan (which Money Store's records describe as the "Origination") did not occur until July 3, 1996, which was *after* the date that TMS obtained the loan documents. (Grob. Dec. Exh. M, TMS1261, at 7/3/96; Grob. Decl. Exh. N) Documentary evidence shows that the initial payment on the Garridos' loan was made on "8/96" to Money Store. (Grob. Decl. Exh. N).

Money Store documents also indicate that FHB and Money Store were related entities – a Disclosure Statement from FHB to the Garridos dated May 22, 1996 advised them that "we presently intend to assign, sell or transfer the servicing of your mortgage loan ***to our affiliate***." (Grob. Decl. Exh. O, at TMS00971 (emphasis added)) In fact, in all of the prior sworn submissions to the Court before the present motion, TMS contended that, "[i]n connection with their loan, the Garridos executed and ***delivered to The Money Store*** several loan documents, including…a Note and a mortgage…." (Grob. Decl. Exh. P, p. 8, ¶35; Exh Q, p. 8; Exh. R, p. 18, ¶44).

15. Admit that Money Store has submitted a document which purports to show an assignment from FHB to TMS, but otherwise deny. See reponses in Paragraphs 1, 4 and 14 above, which are expressly incorporated herein. In addition, the documents relied upon by Money Store to support this assertion are hearsay, and have not been authenticated or shown subject to a hearsay exception.

6

16. Denied. The Note signed by the Garridos and submitted by Money Store in support of its motion identifies Money Store as the "initially payable" and current Note holder. (Kobelt Decl. Exh. C, at V0004) See reponses in Paragraphs 1, 4 and 14 above, which are expressly incorporated herein. In fact, in all of the prior sworn submissions to the Court before the present motion, TMS contended that, "[i]n connection with their loan, the Garridos executed and ***delivered to The Money Store*** several loan documents, including…a Note and a mortgage…." (Grob. Decl. Exh. P, p. 8, ¶35; Exh Q, p. 8; Exh. R, p. 18, ¶44).

17. Admit.

Dated: New York, New York
       December 13, 2010

THE LAW OFFICES OF PAUL GROBMAN

ss _____
Paul Grobman  (PG 1876)
555 Fifth Avenue, 17th Floor
New York, NY 10017
Tel: (212) 983-5880


Attorneys for Plaintiffs