UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LORI JO VINCENT, RUTH ANN GUTIERREZ, and : 
LINDA U. GARRIDO, and JOHN GARRIDO, on behalf   Case No. 03 Civ. 2876 (JGK)
of themselves and all others similarly situated, :

                Plaintiffs, :

    -- against -- :

THE MONEY STORE, TMS MORTGAGE, INC., :
HOMEQ SERVICING CORP., and MOSS, CODILIS,
STAWIARSKI, MORRIS, SCHNEIDER :
& PRIOR, LLP,

                Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COUNTER-STATEMENT OF PLAINTIFFS
## PURSUANT TO LOCAL CIVIL RULE 56.1 OF THIS COURT

Pursuant to Rule 56.1 of the Local Civil Rules ("Rule 56.1") of this Court, Plaintiffs respectfully submit the within Response & Counter-Statement to The Statement of Material Facts submitted by Defendant Moss, Codilis, Stawiarski, Morris, Schneider & Prior LLP ("Moss Codilis") advancing the following responses and objections, controverting the statements of material fact in Moss Codilis Statement as to which it is claimed that there is no genuine dispute of material facts to be tried.

## GENERAL OBJECTIONS

Plaintiffs object to the statements set forth in Moss Codilis' Rule 56.1 Statement of Material Facts to the extent that they violate Local Rule 56.1(d) which requires that each statement of fact "be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." As further indicated

below, numerous statements of material fact purported by Moss Codilis are not supported anywhere in the record and Moss Codilis correspondingly fails to provide citations to admissible evidence.

As discussed in the accompanying memorandum of law submitted in opposition to Moss Codils' motion for summary judgment, plaintiffs further object to the Moss Codilis Rule 56.1 Statement to the extent that it cites to the Declaration of Christian Nash dated November 11, 2010, which statements are in direct conflict with Ms. Nash's prior testimony taken during her deposition on January 23, 2003.

### PLAINTIFFS' RESPONSES AND OBJECTIONS TO THE STATEMENTS OF MATERIAL FACT IN DEFENDANT'S 56.1 STATEMENT

1.  Plaintiffs object to Paragraph 1 of the Statement to the extent that it violates Rule 56.1(d). Moss Codilis baldly claims that an unidentified person at Moss Codilis purportedly communicated on some uncertain date to an unidentified person at TMS Mortgage, Inc. that Bill Breedon, as "a non-lawyer was the appropriate person to have the ultimate operational responsibility for the Breach Letter Program."

Subject to the foregoing objections, Plaintiffs dispute the statement based on, inter alia, MoneyStore and TMS Mortgage Inc. both having previously admitted in their Rule 56.1 Statement In Support of Its Motion For Summary Judgment, dated May 7, 2003 ("MoneyStore 2003 Rule 56.1 Statement"), that (i) it was Christina Nash on behalf of Moss Codilis that "made the legal determinations with the help of paralegals working under her supervision," Par. 18; and (ii) that Money Store, as Moss Codilis' client, represented that they believed it was not a non-lawyer providing the breach letter services, but their "collection counsel" which was making "independent legal determination that collection of the debt was proper and legal" (See Exhibit M to the

Declaration of Neal Deyoung dated December 13, 21010 in Opposition to Moss Codilis's Motion for Summary Judgment (hereinafter "Deyoung Decl.") see also Deyoung Decl. Exh. L (Moss Codilis' "Proposal [to TMS] For Default Outsourcing Breach Letter Services" identifies Ms. Nash as it "In House Counsel" and "Corporate Counsel")

To the extent Moss Codilis is relying on the conclusory hearsay contained in paragraph 4 of the Declaration of Christina Nash, dated November 11, 2010, such hearsay is not only inadmissible, but directly refuted by Ms. Nash's prior testimony. See Nash deposition taken on Jan. 23, 2003, annexed to Deyoung Decl. Exh. B, p. 14 (Nash's title was not as a non-attorney but "attorney"); p. 140 (only Nash and paralegals under her supervision were involved in the Breach Letter Program through 2000); p. 43 (Nash was the "attorney" supervising the breach letter program in 1997-1998); See also Deyoung Decl. Exh. M, Paras. 18, 19 (Money Store Rule 56.1 Statement adopting Nash's deposition testimony that she was making the legal decisions for Moss Codilis ostensibly "as a lawyer" in connection with the breach letter program); Para. 44; Para. 45 (Adopting Nash's deposition testimony that Nash was responsible for the Breach Letter Program and that legal determinations were being made "based on [her] experience").

2. Admitted.

3. Plaintiffs object to Paragraph 3 of the Statement to the extent that it violates Rule 56.1(d). Plaintiffs admit to the statement regarding the amount of attorney fees charged under the Letter of Agreement, and, upon information presently available, admits that certain borrowers were not charged for the attorney fees to the extent such borrowers' properties were located in states which prohibited such imposition of attorney

3

fees. Plaintiffs dispute the quoted language "pre-set charge" to the extent Moss Codilis is implying that it was not charging "attorney fees" for the services it rendered to MoneyStore. See Deyoung Decl. Exh. D, Letter of Agreement, para. 3 ("Moss, et al. will not calculate attorney fees into the breach letter delinquency...."), para. 4 (...collection of reasonable attorneys fees in connection with the generation of the breach letter"); Nash Dep., pp.158-160.

    4.    Plaintiffs object to Paragraph 4 of the Statement to the extent that it violates 56.1(d). There is no evidence in the record that Mr. Stawiarski was a partner in the defendant firm Moss Codilis during the relevant time period).

    Plaintiffs dispute the statement that Mr. Stawiarksi created breach letter templates for Moss Codilis. See Nash Dep., Deyoung Decl. Exh. B, at pp. 125-27 (Ms. Nash testifying that she created the templates on behalf of Moss Codilis).

    5.    Plaintiffs object to Paragraph 5 of the Statement to the extent that it violates Rule 56.1(d) and refer to Point   of their Memorandum of law concerning the conflict between the Nash Declaration and her prior sworn testimony.

    Plaintiffs dispute the statement that Christina Nash, an unlicensed attorney, either met with Mr. Stawiarski "frequently" regarding the Breach Letter Program or that Mr. Stawiarski was otherwise regularly involved in the Breach Letter Program "during the time Ms. Nash administered the Breach Letter Program." To the contrary, Ms. Nash testified that she and paralegals working under her supervision were the only employees at Moss Codilis involved in the Breach Letter Program through 2000. Nash Dep., Deyoung Decl. Exh. B, pp. 139-140; see Moss Codilis Answer, para. 23 (Moss Codilis admits that Breach Letter Program "overseen by someone who was not

licensed to practice law" "during the portion of time in which Moss Codilis was preparing and sent out default notices for The Money Store"); Deyoung Decl. Exh. B, pp. 135, 151-52 (Nash was the Breach Letter Supervisor through 2000 with no one acting as her "Supervisor "prior to 2000); Deyoung Decl. Exh. N , Moss Codilis' <u>Breach Letter Policies and Procedures</u>, page 13, IV. Inter-Office Due diligence, Subsection A. Letter Generation (Defendant's protocol for the Breach Letter Program was set forth in its Policy and Procedure document which does not identify Stawiarski as being affiliated with the supervision of the Breach Letter Program); Deyoung Decl. Exh. B., p. 151 (Nash was the Breach Letter Supervisor well into 2000).

    Plaintiffs further dispute that Ms. Nash was primarily responsible for the Breach Letter Program up to only October 1999. See Deyoung Decl. Exh. B, pp. 15, 16 (Nash involved in Moss Codilis' breach letter services through November 2000); p. 116 (90% of Nash' time devoted to TMS matters during period 1997-2000); p. 129 (in or about April or May 2000, Nash created Breach Letter Program's policies and procedures for TMS); p. 140 (Nash and paralegals under her supervision only Moss Codillis employees responsible for Breach Letter Program); pp. 151-153 (Nash continues to review breach letters until end of November 2000); p. 155 (Nash became "unavailable" and goes on maternity leave from the Breach Letter Program in November 2000); See Moss Codilis Answer, ¶23.

    6. Plaintiffs object to Paragraph 6 of the Statement to the extent that it violates l Rule 56.1(d). Plaintiffs object to and dispute the statements of this paragraph in that Ms. Nash previously testified that she exercised legal analysis and independent legal judgment during her supervision and involvement in Moss Codilis' breach letter program.

See Nash Dep, Deyoung Decl. Exh. B, p. 206-08, 210 ("I really resent the fact that you're telling me that you don't feel that my independent legal judgment was utilized…"); see generally Deyoung Decl. Exh. B, pp. 41 (discusses her "legal analysis" when providing breach letter services and use of "legal opinion"), pp. 83, 84, 103, 104, and pp. 105-107.

      7.     Plaintiffs object to Paragraph 7 of the Statement to the extent that it violates Rule 56.1(d) and refer to their Memorandum of law concerning the conflict between the Nash Declaration and her prior sworn testimony.

      Plaintiffs dispute the statements in Paragraph 7 that Valerie Bromley took over the administration of the Breach Letter Program at the end of October 1999 and that, by November 1999, Ms. Nash's involvement in the Breach Letter Program was extremely limited and was "no longer involved in the review of any of the individual loan files or Breach Letters in any way." See Nash Dep., Deyoung Decl. Exh. B, p. 151 (Ms. Nash was the Breach Letter Supervisor in 2000), p. 152 (Nash reviewed "more than a 1000" default letters in the year 2000), pp. 203-04 (Nash testifies to her review of loan files in 2000); see also Nash Dep., p. 116 (90% of Nash's time at Moss Codilis involved with TMS matter for the years 1998 through-2000), pp. 117-118 (Nash testifies to her review of individual letters and files as well as supervising the paralegals involved in the Breach Letter Program), and p.129 (Nash created the Breach Letter Program's policies and procedures in April or May 2000). See Moss Codilis Answer, ¶23.

      8.     Admit that the document appended by Moss Codilis indicates the date Valerie Bromley was admitted to practice law in Colorado, but deny knowledge sufficient to know the length of her tenure at Moss Codilis.

9.      . Plaintiffs dispute each of the statements in Paragraph 9. See citations in paragraphs 1 and 6 above; see also Nash Dep., Deyoung Decl. Exh. B, p. 28 ("We provided legal advice to the Money Store regarding the content of their preacceleration letter…"); p. 40 ("we made ..the legal decision…legal determination that we weren't going to send a breach letter out on that account"); pp. 53-54 (Nash would review underlying loan documentation…"it wasn't just based on a number necessarily all the time").

10.     Plaintiffs object to Paragraph 10 of the Statement to the extent that it violates Rule 56.1(d). Plaintiffs are without sufficient knowledge to determine whether Moss Codilis communicated to individuals at Money Store the "level of review afforded to the information provided by TMS about its delinquent borrowers", but notes that Money Store has previously asserted that Moss Codilis and Nash made regular legal determinations on behalf of Money Store with regard to whether a debt was owed and a letter should be sent. See citations in Paragraph 1 above; See Deyoung Decl. Exh. M)

11.     Plaintiffs object to Paragraph 11 of the Statement to the extent that it violates Rule 56.1(d) and refer to Point I of their Memorandum of law concerning the conflict between the Nash Declaration and her prior sworn testimony. Plaintiffs dispute each of the statements in Paragraph 9. See Citations in paragraphs 1, 6 and 9 above.

12.     Plaintiffs object to Paragraph 12 of the Statement to the extent that the contentions are based on statements in the Nash Declaration which conflict with her prior sworn testimony and refer to Point I of their Memorandum of Law. Plaintiffs dispute each of the statements in Paragraph 12. See Citations in paragraphs 1, 6 and 9 above.

13. Plaintiffs object to Paragraph 13 to the extent that it sets forth a legal or factual conclusion. Plaintiffs further dispute the statement that Moss' Codilis "threat of litigation" was not false. Nash Dep., Deyoung Decl. Exh. B, p.172 (Moss Codilis did not have authority to institute action); Deyoung Decl. Exh. L (benefit of of using Moss Codils' Breach Letter Program was "the impression which the attorney breach letter makes.")

14. Plaintiffs dispute statement in Paragraph that 14 Ms. Nash "had only very limited involvement in the Breach Letter program" at time of Breach Letter being sent to Plaintiff Vincent. See Citations in Paragraph 7.

15. Plaintiffs object to paragraph 15 as the citation relied upon by Moss Codilis does not support the statements therein. Plaintiffs refer to the referenced letter of March 22, 2000 for the terms therein.

16. Admit.

17. Plaintiffs refer to the referenced Letter of March 22, 2000 for the terms therein.

18. Plaintiffs dispute statement in Paragraph that Ms. Nash "had only very limited involvement in the Breach Letter program" at time of Breach Letters being sent to Plaintiffs. See Citations in Paragraph 7.

19. Plaintiffs refer to the referenced Letters for the terms therein.

20. Plaintiffs object to the cited documentary evidence as being inadmissible absent proper foundation.

In addition, plaintiffs deny that the cited documentary evidence provides evidence that Guttierez was not charged. In fact, as Jon Dunnery stated at his deposition,

Money Store charged over $1,929.00 in purported fees and expenses to Ms. Guitterez's account after she paid off her loan through an accounting procedure it described as a "Transaction Reversal", (Deyoung Decl. Exh. O, p. TMS1260). Mr. Dunnery testified that he did not know what those fees consisted of, or whether they were proper. Moreover, Money Store has admitted that it supplied no invoices to explain the purported fees and expenses which comprise this amount. (Deyoung Decl. Exh. P, ¶52; Exh. Q, ¶52), Under these circumstances, where Money Store has refused to identify what these $1929.00 in fees consisted of, the evidence in no way supports the conclusion that Guttierez was never charged for the Moss Codilis letters.

21. Plaintiff admits that Guttierez filed for bankruptcy, and that the schedule of assets did not include her claims in this case.

22. Plaintiffs dispute the statement in this paragraph and refer to the documents for the terms therein. Moss Codilis' 56.1 Statement, Exhibits E,F and G.

23. Plaintiffs dispute the statement in this paragraph and refer to the documents for the terms therein. Moss Codilis' 56.1 Statement, Exhibits E,F and G.

24. Admit.

25. Plaintiffs object to the cited testimony as being inadmissible absent proper foundation. Plaintiffs also deny information sufficient to answer this Statement.

26. Admit that Nash says this in her Declaration filed in support of Summary Judgment.

Dated: New York, New York
December 13, 2010

THE LAW OFFICES OF PAUL GROBMAN

---

Paul Grobman (PG 1876)
535 Fifth Avenue, 33rd Floor
New York, NY 10017
212 983-5880
Attorneys for Plaintiffs