UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LORI JO VINCENT, RUTH ANN GUTIERREZ, LINDA :
U. GARRIDO and JOHN GARRIDO, on behalf of
themselves and all others similarly situated,           :
                                                      Case No. 03 Civ. 2876 (JES)

               Plaintiffs,           :

     -- against --           :

THE MONEY STORE, TMS MORTGAGE, INC.,           :
HOMEQ SERVICING CORP., and MOSS, CODILIS,
STAWIARSKI, MORRIS, SCHNEIDER           :
& PRIOR, LLP,
                                                       :

              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### AFFIDAVIT OF PAUL GROBMAN IN SUPPORT OF APPLICATION FOR ADDITIONAL DISCOVERY PURSUANT TO RULE 56(f)

PAUL S. GROBMAN, being duly sworn, hereby deposes and says:

1. I am an attorney for Plaintiffs in the above-captioned action and am fully familiar with the facts concerning this matter. I respectfully submit this affidavit in support of Plaintiffs' application for additional discovery pursuant to Federal Rule of Civil Procedure ("FRCP") 56(f).

2. Plaintiffs make this application without waiving their right to oppose Defendants' motion on any grounds including, without limitation, based on the argument that Defendants' motion fails as a matter of law to carry their initial, threshold burden for purposes of summary judgment under FRCP 56 based on numerous procedural and substantive deficiencies.

3. However, at this juncture, Plaintiffs request additional discovery pursuant to Rule 56(f) about Money Store's argument, and the allegations of fact which constitute the premise of such argument, that Defendants have advanced as grounds for summary judgment:

- That the Money Store defendants did not originate any of the loans at issue in this action, so as to bring them within the definition of a "creditor" under the Truth in Lending Act ("TILA");

- That the plaintiffs took out mortgage loans with lenders other than Money Store, and thus Money Store is not a "creditor" within the meaning of TILA;

See Money Store Rule 56.1 Statement, ¶¶1, 4, 5, 6, 10, 11, 14-15, Money Store Mem., pp. 3-5.

4. Though this action was first commenced in April 2003, the Money Store defendants did not raise its affirmative defense that it was not a creditor under TILA until October 2010, when they pled it as an Affirmative Defense in their Answer to the First Amended Complaint in this action. (See Money Store's Answer to the First Amended Complaint dated October 19, 2010, ¶55) Because the Money Store defendants waited almost eight years after the commencement of this litigation to raise the argument that it was not a "creditor" under 15 U.S.C. §1602 of TILA – indeed, having taken a contrary position in prior motions -- the Plaintiffs in this action have had no opportunity to conduct discovery on these issues.

## ARGUMENT

5. FRCP 56(f) states that when it appears from the affidavits of a party opposing a motion for summary judgment that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may either deny the summary judgment motion or order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had. See, e.g., Meloff v. New York Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995).

6. In Hudson River Sloop Clearwater, Inc. v. Department of Navy, 891 F.2d 414, 422 (2d Cir. 1989), the Second Circuit held that an affidavit to obtain Rule 56(f) discovery should address each of the following issues: (a) what facts are sought and how they are to be obtained; (b) how those facts are reasonably expected to create a genuine issue of material fact;

(c) what effort affiant has made to obtain them; and (d) why the affiant was unsuccessful in those efforts. As described more fully below, each of these factors has been met.

## I. Facts Sought by Plaintiffs and How They Are To Be Obtained

7.  To test the new defense that Money Store "did not originate any of the loans" nor "make the loans at issue in this lawsuit" (Money Store Rule 56.1 Statement, ¶¶1, 5), plaintiffs will be required to take discovery from defendants and other third parties on at least the following issues.

### A. Document Discovery

8.  Plaintiffs require documents from the Money Store defendants relating to the loans made to plaintiffs, including: (i) documents relating to Money Store's involvement in the decision to make loans to each of the plaintiffs, including the date it first became involved, and its participation in the approval process leading up to funding of each loan; (ii) documents relating to the actual closing of each of the plaintiffs' loans; (iii) documents relating to the source of the funds which were disbursed to each of the plaintiffs; (iv) documents relating to the entity which was the owner or creditor of each of the plaintiffs' loans at the time their statutory right to rescind the loan under TILA expired; (v) documents relating to the entity which was the owner or creditor of each of the plaintiffs loans at the time the funds were disbursed; (vi) documents relating to any pre-existing arrangement between Money Store and either FHB Funding Corporation ("FHB"), Accubanc Mortgage Corporation ("Accubanc"), First Financial Funding Group ("First Financial") or Equicredit Corporation of America ("Equicredit") regarding the plaintiffs' loans; (vii) documents relating to whether Money Store agreed to pay FHB, Accubanc or First Financial Funding a broker fee or other loan origination payment for any of plaintiffs loans; (viii) documents relating to whether FHB, Accubanc or First Financial Funding received a broker fee or other loan origination payment for any of plaintiffs' loans; (ix) documents

relating to whether Money Store preapproved the plaintiffs' loans, and provided the forms filled out by the plaintiffs; (x) documents relating to any consideration paid by Money Store to either FHB, Accubanc, First Financial or Equicredit Corporation of America in connection with the plaintiffs' loans; (xi) documents relating to the entity which actually received the initial payment due on each of the plaintiffs' loans.

9. Plaintiffs are also entitled to documents from the Money Store defendants relating to

- its relationship with FHB, Accubanc, First Financial and Equicredit during the time period in which each of the plaintiffs' loans was consummated, including documents relating to whether there any overlapping ownership interests between the entities, or overlapping Boards of Directors, office space, officers or executives, personnel, bank accounts, etc.

- any agreements between Money Store and FHB, Accubanc, First Financial or Equicredit during the time period in which each of the plaintiffs' loans was consummated, including mortgage sale agreements, brokerage agreements, and agreements relating to assignments of mortgages;

- the number and percentage of loans that were sold, assigned or otherwise transferred to Money Store by FHB, Accubanc, First Financial or Equicredit within the year preceding the consummation of the each of the plaintiffs' loans.

### B. Deposition Discovery

10. Plaintiffs have not had an opportunity to take a deposition on the issues raised by Money Store's motion for summary judgment. A Rule 30(b)(6) deposition of the Money Store defendants is necessary to respond to Money Store's contention that Money Store "did not make the loans at issue in this lawsuit" (Money Store Rule 56.1 Statement, ¶5), "did not originate any

of the loans at issue" (Money Store Rule 56.1 Statement, ¶1), and to question Money Store on the subjects raised in Paragraphs 8 and 9 of this Affidavit.

11. Plaintiffs also require a deposition of Money Store witnesses on whether any of the loans to plaintiffs were high-interest loans falling subject to 15 U.S.C. §1602(aa) of TILA, and the steps taken by Money Store to determine whether these were high-interest loans.

C. **Requests to Admit**

12. Defendants are seeking summary judgment based on the fact that there are no genuinely disputed issues of material fact in this case on the question of whether Money Store made the loans at issue in this lawsuit. Plaintiffs are entitled to proffer a list of relevant, material facts in order to ascertain if there is a genuine dispute as to any of those material facts including, but not limited to, whether Money Store (i) owned plaintiffs loans at the time the loan documents were signed; (ii) owned plaintiffs loans at the time the proceeds were disbursed; (iii) was the source of the funds which were disbursed to each of the plaintiffs; (iv) had a pre-existing arrangement with FHB Funding Corporation ("FHB"), Accubanc Mortgage Corporation ("Accubanc"), First Financial Funding Group ("First Financial") or Equicredit Corporation of America ("Equicredit") to purchase the plaintiffs' loans; (v) agreed to pay FHB, Accubanc or First Financial Funding a broker fee or other loan origination payment for any of plaintiffs loans; (vi) provided the forms filled out by the plaintiffs; (vii) paid consideration to FHB, Accubanc, First Financial or Equicredit Corporation of America in connection with the plaintiffs' loans; and (viii) actually received the initial payment on each of the plaintiffs' loans.

D. **Third Party Discovery**

13. Plaintiffs are also entitled to third party discovery pursuant to FRCP 56(f).

14. As described above, the Money Store defendants' Motion argues that it was neither the lender nor originator of the loans at issue in this lawsuit, and that such loans were in

fact made by FHB (Garrido), Accubanc (Vincent), and First Financial (Guttierez). Documents in the possession of FHB, Accubanc and First Financial are directly relevant to the question of (i) who actually made the loans at issue in this lawsuit, (ii) the timing of the transfers of the loans; (iii) Money Store's involvement in the application and approval process on the loans; (iv) the relationship between Money Store and these entities at the time the loans were consummated, (v) any payments made to these entities by Money Store as consideration for transfer of plaintiffs' loans; (vi) whether these entities were operating as mortgage brokers, not lenders, in connection with the plaintiffs' loans. Plaintiffs are also entitled to seek deposition testimony from FHB, First Financial, Accubanc and Equicredit on these issues.

## II.   PLAINTIFFS INABILITY TO OBTAIN DISCOVERY ON THE ISSUES RAISED BY MONEY STORE'S MOTION

15. Until first suggesting it might have such a defense at a hearing before this Court in May 2010, the Money Store defendants had never raised the argument that they were not "creditors" subject to TILA on the plaintiffs' loans during the first seven years of this lawsuit.

16. Up to that point, the only defense Money Store raised to plaintiffs' claims under §1666d of TILA was that there was no existing "credit balance" under §1666d. Even on that point, however, the Money Store defendants repeatedly admitted that the Garridos were owed a "credit balance" subject to §1666d of TILA, and in fact repeatedly requested that the Court determine how much the Garridos and the other plaintiffs were owed so that Money Store could pay that amount and resolve the TILA claims. (See Exhibits A, P-R, T, V-Y annexed to the Declaration of Paul Grobman in Opposition to Summary Judgment in this Action dated December 13, 2010). Because the Money Store never raised this defense before the close of discovery in this action and, in fact, admitted that a "credit balance" subject to TILA was owed

to at least one of the plaintiffs, plaintiffs never had a reason to take discovery on the issues which are now raised in Money Store's Motion for Summary Judgment.

17. Moreover, though Money Store had never raised this particular issue, plaintiffs did request the "loan file for each plaintiff" in their First Request For The Production of Documents served on Money Store in this action. (Plaintiff's First Request for Production dated Jan. 4, 2006, p. 3, ¶2) While Money Store provided some documents relating to the origin, application, consummation, review, funding and transfer of the loans with regard to some of the plaintiffs, there are significant gaps in the produced documents (no documents relating to the source of funding for the Vincent and Garrido loans; when the proceeds of those loans were disbursed; whether Money Store preapproved those loans; whether Accubanc, Equicredit or FHB were acting as mortgage brokers for Money Store rather than creditors), as well as inconsistencies in the documents relied upon by Money Store in support of its motion (Compare Exhibit C to the Declaration of Hans Kobelt in Support of Money Store's Motion for Summary Judgment (Allonge to Vincent Note says that mortgage was transferred on June 23, 1998) and Exhibit F (assignment of Vincent Note says that it was transferred on April 30, 1998)

18. Moreover, because it was not an issue contested by Money Store, plaintiffs did not request documents relating to the relationship between the Money Store defendants and either Accubanc, Equicredit, FHB, or First Financial, and have yet to receive any discovery relating to this issue.

19. Nor have plaintiffs had an opportunity to depose a Rule 30(b)(6) witness from Money Store with regard to any of the issues raised by the documents which have been produced by Money Store and are relevant to the new defense raised in its motion, much less with regard to documents which have yet to be produced.

### III.  WHY THESE FACTS CREATE A GENUINE ISSUE OF MATERIAL FACT

20. The Money Store's newly-raised defense to plaintiffs' claims under §1666d of TILA rest on several factual premises: (1) that each of the plaintiffs "took out mortgage loans on their homes with lenders other than The Money Store Defendants" (Money Store Br. p. 3, 4; Money Store Rule 56.1 Statement, ¶¶ 4, 6, 10, 14); (2) that "Money Store did not make the loans at issue" (Money Store Br., p. 3; Money Store Rule 56.1 Statement, p. 2, ¶5).

21. Even though plaintiffs have not yet had the opportunity to take discovery directed to these alleged facts and new contentions which form the predicate for Money Store's newly-raised TILA defense, documents produced in response to other general discovery requests indicate that Money Store was not an assignee of a loan which had already been made by another third-party lender, but rather (i) that Money Store actually was the "creditor" on the loans before the loan documents were signed, the agreements became binding, and/or the loan proceeds were disbursed; (ii) that Money Store was the source of the money loaned to the plaintiffs; (iii) that First Financial, FHB and Accubanc may have been acting as mere "mortgage brokers" for Money Store rather than lenders; and (iv) that there may have been a corporate relationship between Money Store and these other entities.

22. For instance, on the Guttierez loan, Money Store relies on documents indicating that the loan to Guttierez was made by an entity called First Financial Funding Group on April 5, 1997 and then assigned to Money Store two days later on April 7, 1997. (See Exh. I and K to Declaration of Hans Kobelt dated Nov. 11, 2010 in support of Summary Judgment). However, documents produced by Money Store indicate that the actual initial funding of the loan (which Money Store's records describe as the "Origination") did not occur until either April 14, 1997 (Grob. Decl. Exh. G) or April 21, 1997. (Transaction History, Grob. Decl. Exh.E, at p. TMS1254, at 4/21/97)   Other documents produced by Money Store alternatively describe First

Financial as a "broker" (Grob. Decl. Exh. D, at p. TMS674) or "Contractor" (Grob. Decl. Exh. I), and that First Financial served as a mortgage broker, for which Money Store paid it a fee. Grob. Decl. Exh. D (TMS674) (document dated 4/4/97 produced by Money Store describing Money Store as the "lender" on the Guttierez loan, and indicating that First Financial was to receive a "broker" fee of $1365.00)

23.   On the loan to John and Linda Garrido, Money Store represents that the Garridos "took out a mortgage loan on their house … in May 1996 with FHB Funding Corp." which was then assigned in June 1996 to TMS Mortgage. (Rule 56.1 Statement, ¶¶14, 15), However, documents produced by Money Store for the Garrido loan indicate that the initial funding of the loan (which the document describes as the "Origination") did not occur until July 3, 1996, which Money Store admits was after the date it purportedly acquired the loan. (Grob. Dec. Exh. M, TMS1261, at 7/3/96; Grob. Exh. N)  Documents produced by Money Store also suggest that FHB and Money Store were related entities – a Disclosure Statement from FHB to the Garridos dated May 22, 1996 advised them that "we presently intend to assign, sell or transfer the servicing of your mortgage loan to our affiliate." (Grob. Decl. Exh. O, at TMS00971 (emphasis added))  In fact, in all of its prior sworn submissions to the Court before the present motion, Money Store contended that, "[i]n connection with their loan, the Garridos executed and delivered to The Money Store several loan documents, including…a Note and a mortgage…." (Grob. Decl. Exh. P-R)

24.   Finally, with regard to the Vincent loan, Money Store's summary judgment papers do not even purport to represent when the loan to Vincent was actually consummated, or to whom the initial payment was made.  However, a document produced by Money Store indicates that the first payment on the loan was not made until May 12, 1998, after the loan was

437408.1 1                                    9

transferred. (Grob. Decl. Exh. S)

25. The documents produced in response to Plaintiffs' general discovery request for plaintiff's loan file present only a partial picture of numerous questions material to Money Store's motion, such as (i) who actually funded the loans at issue, and ; (ii) when Money Store first became involved in plaintiff's loans; (iii) when the loan transactions were actually signed and consummated; (iv) the actual role of the entities which Money Store's papers summarily describe as the "lenders" of the loans to plaintiffs; and (v) the relationship between those entities and Money Store.

26. Each of the Rule 56(f) discovery requests, requests for admission and depositions are targeted, relevant and necessary for determining the merit of the facts and arguments raised by Money Store in support of its Motion for Summary Judgment.  Without discovery specifically directed to the new defenses raised by Money Store -- and the purported facts which support them – plaintiffs' ability to respond to these arguments is significantly hindered.
I declare, under pains of perjury, that the above is true and correct to the best of my knowledge.

_____
Paul Grobman

Sworn to me this 13th day
of December 2010.

_____
LAUREN MILGROM
Notary Public, State of New York
No. 31-4654052
Qualified in New York County
Commission Expires March 30, 2011

*[signature: Lauren Milgrom]*