UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

LORI JO **VINCENT**, RUTH ANN GUTIERREZ and
LINDA U. GARRIDO and JOHN GARRIDO on behalf of
themselves and all others similarly situated,

                             Plaintiffs,

               -against-

**THE MONEY STORE**, TMS MORTGAGE, INC.,
HOMEQ SERVICING CORP., and MOSS, CODILIS,
STAWIARSKI, MORRIS, SCHNEIDER & PRIOR, LLP,

                             Defendants.

-------------------------------------------------------------------x

03 Civ. 2876 (JGK)

## THE MONEY STORE DEFENDANTS'
## REPLY MEMORANDUM IN SUPPORT OF MOTION
## <u>FOR SUMMARY JUDGMENT</u>

McCARTER & ENGLISH, LLP
    By Daniel A. Pollack (DP-9207)
    *dpollack@mccarter.com*
    W. Hans Kobelt (WK 1847)
    *wkobelt@mccarter.com*
245 Park Avenue, 27th Floor
New York, New York 10167
    Tel. (212) 609-6800
    Fax (212) 609-6921

Attorneys for Defendants
    The Money Store,
    TMS Mortgage, Inc. and
    HomEq Servicing Corp.

Dated:  January 14, 2011

## TABLE OF CONTENTS

**Page**

OVERVIEW OF REPLY.................................................................... 1

A. The Money Store Defendants are not "assignees" who can be liable
   under TILA............................................................................ 1

B. The Money Store Defendants are not "creditors" under TILA.......................... 2

         Vincent................................................................................. 4
         Gutierrez.............................................................................. 4
         The Garridos.......................................................................... 6

C. Plaintiffs admit that their TILA Disclosure Statements  were made by
   entities other than the Money Store Defendants.......................................... 8

D. Reply to Plaintiffs' other contentions.................................................... 8

E. This Court should not exercise supplemental jurisdiction over the
   State law claims....................................................................... 9

CONCLUSION............................................................................. 10

ME1 11012000v.1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cedeno v. Indymac Bancorp, Inc.,*
   2008 U.S. Dist. LEXIS 65337 (S.D.N.Y. 2008) (Koeltl, J.)......................................................8

*In re Parmalat Sec. Lit.,*
   421 F. Supp. 2d 703 (S.D.N.Y. 2006)......................................................................9

*Mayfield v. General Electric Capital Corp.,*
   1999 U.S. Dist. LEXIS 4048 ............................................................................3, 6

*Ridha v. Mortgage Electronic Registration Systems, Inc.,*
   2010 U.S. Dist. LEXIS 123869 ...........................................................................2

*Vallies v. Sky Bank,*
   432 F. 3d 493 (3d Cir. 2006)............................................................................8

**STATUTES AND OTHER AUTHORITIES**

12 U. S. C. 2605 (a) ......................................................................................7

15 U.S.C. §§ 1631 and 1635 ..............................................................................8

15 U.S.C. § 1666d..........................................................................................9

12 C.F.R. Part 226.2.......................................................................................3

Article 3 of the Uniform Commercial Code ...............................................................3

## OVERVIEW OF REPLY

Plaintiffs have admitted, in their Rule 56.1 Response, that there are no allegations in the First Amended Complaint of any TILA violations apparent on the face of the Disclosure Statements provided to Plaintiffs when they took out their loans. Therefore, Plaintiffs have admitted that the Money Store Defendants cannot be liable as **"assignees"** under TILA.

While Plaintiffs attempt to create a fact issue about whether the Money Store Defendants were the **"creditors"** under TILA, their own testimony and the documentary evidence show that none of the Money Store Defendants originated their loans, and, therefore, the Money Store Defendants are not **"creditors"** under TILA. Plaintiffs' loans were all *initially payable to* entities other than the Money Store Defendants, which precludes the Money Store Defendants from being **"creditors"** under TILA.[1]

As shown in detail below, and in the Money Store Defendants' moving papers, the undisputed facts and the law require the granting of the Money Store Defendants' motion for summary judgment on the TILA claim. Additionally, as argued in the moving papers, with the dismissal of the TILA claim, this Court should decline, under strong Second Circuit authority, to exercise supplemental jurisdiction over the State law claims.

### A.

### The Money Store Defendants are not "assignees" who can be liable under TILA

As shown in the Money Store Defendants' moving brief (at pp. 4-7), the limited circumstances under which an **"assignee"** may be liable under TILA are not present here. Paragraph 2. of the Money Store Defendants' Rule 56.1 Statement ["TMS Rule 56.1 Statement"]

---

[1]   The terms "originate" and "initially payable to" are, of course, synonymous, notwithstanding the "nitpick" by Plaintiffs (see Memorandum in Opposition, p. 15).

asserts as follows: "There are no allegations in the First Amended Complaint that there were any TILA violations apparent on the face of the disclosure statements provided to plaintiffs when they took out their loans." Plaintiffs **admit** paragraph 2. of the TMS Rule 56.1 Statement. [See ¶ 2 of Plaintiffs' Response to Money Store's Rule 56.1 Statement ("Plaintiffs' Rule 56.1 Response")]. Thus, as previously argued in the Money Store Defendants' moving brief, there can be no TILA liability for the Money Store Defendants as **"assignees"** under TILA.

**B.**

**The Money Store Defendants are not "creditors" under TILA**

As stated in the TMS Rule 56.1 Statement [at ¶¶ 1-2], the Money Store Defendants did not originate any of the Plaintiffs' loans. That means that none of them can be the **"creditors"** here. See, e.g., *Ridha v. Mortgage Electronic Registration Systems, Inc.*, 2010 U.S. Dist. LEXIS 123869, at **9-10 (E.D. Mich. 2010) ("the TILA does not apply to MERS or BAC here, because they did not originate the loan and therefore do not meet the definition of 'creditor' under the TILA").

Plaintiffs attempt to raise a fact issue by claiming that the Money Store Defendants somehow "acted" as the TILA creditor for their loans. This is both false and irrelevant. The loan documents and Plaintiffs' own testimony, discussed and quoted *infra* at pp. 4-7, show that this is not the case. More importantly, however, the statute and the case law do not support Plaintiffs' attempt to inject other criteria into the test for determining who is a **"creditor"** under TILA. As the Official Staff Interpretations of TILA and Regulation Z state:

> 2. . . . If an obligation is initially payable to one person, that person is the creditor even if the obligation by its terms is simultaneously assigned to another person. For example:

> i. An auto dealer and a bank have a business relationship in which the bank supplies the dealer with credit sales contracts that are initially made payable to the dealer and provide for the immediate assignment of the obligation to the bank. The dealer and purchaser execute the contract only after the bank approves the creditworthiness of the purchaser. Because the obligation is initially payable to the dealer, the dealer is the only creditor in the transaction. See 12 C.F.R. Part 226.2(a)(17)(i) 2, Supp. I (2010).

In *Mayfield v. General Electric Capital Corp.*, 1999 U.S. Dist. LEXIS 4048 at \*\*9-10 (S.D.N.Y. 1999) the court, citing The Federal Reserve Board's Official Staff Interpretation set forth above, stated as follows:

> The Federal Reserve Board's official staff interpretations explain that when 'the obligation is initially payable on its face to the dealer, the dealer is the only creditor in the transaction.'... This is so even when the contract provides for the immediate assignment of the obligation and when a regular acceptor of assignments must approve the creditworthiness of the purchaser. *Id.* Staff opinions are considered dispositive in construing TILA or Regulation Z unless it is shown that the opinion is demonstrably irrational. (citations omitted) (emphasis supplied)

Thus, Plaintiffs' proffered "fact issues" are, we respectfully submit, irrelevant to the determination of who was the **"creditor"** on Plaintiffs' loans. Plaintiffs point to the indorsements on each of their notes as evidence that the Money Store Defendants were the **"creditors"** on their loans. This argument, also, is unavailing. When negotiable instruments, like the notes at issue here, are assigned, they must be indorsed to the new holder under Article 3-201 and 204 of the Uniform Commercial Code. That is why the indorsements to TMS Mortgage, Inc. appear on the notes. The notes are all ***initially payable to*** the original lenders--<u>not</u> to any of the Money Store Defendants. As set forth in TMS Rule 56.1 Statement [at ¶¶ 6, 8, 9, 10, 12, 13, 14, 16 and 17], Plaintiffs' loan documents show that the **"creditors"** on their loans are all entities other than the Money Store Defendants.

**Vincent**

Vincent's loan was originated by Accubanc Mortgage Corporation ["Accubanc"] [Moving Exs. C and D; see also TMS Rule 56.1 Statement ¶¶ 6-9]. A review of Vincent's Note [Ex. C] and Deed of Trust [Ex. D] shows that Accubanc is the "Lender", and both documents recite that the payments are to be made to the "Lender". Vincent's Note [Moving Ex. C] states as follows:

> **BORROWER'S PROMISE TO PAY** In return for a loan that I have received, I promise to pay U.S. $67,600 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **ACCUBANC MORTGAGE CORPORATION**. (emphasis in original)

Thus, Accubanc is the entity to whom the loan is ***initially payable*** on the face of the loan documents (i.e., the evidence of indebtedness). Vincent's loan was not ***initially payable to*** any Money Store Defendant. Accubanc is the **"creditor"** under TILA. That fact is further corroborated by Vincent's testimony. Vincent testified as follows [Reply Ex. S]:

> Q. Does looking at those documents refresh your recollection that the lender on your note was Accubanc Mortgage [Corporation]?
>
> A. Yes. [Reply Ex. S, at p. 9].
>
> Q. Did you sign this loan application in February, 1998 and give it to Accubanc?
>
> A. Yes. [Reply Ex. S, at pp. 11-12].

**Gutierrez**

Gutierrez's loan was originated by First Financial Funding Group ["First Financial"] [Moving Exs. I and J; see also TMS Rule 56.1 Statement ¶¶ 10-13]. A review of Gutierrez's Note [Ex. I] and Deed of Trust [Ex. J] shows that First Financial is the "Lender", and both

4

documents recite that the payments are to be made to the "Lender". Gutierrez's Note [Moving Ex. I] states as follows:

> **BORROWER'S PROMISE TO PAY** In return for a loan that I have received, I promise to pay U.S. $41,642 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **FIRST FINANCIAL FUNDING GROUP.** (emphasis in original)

Thus, First Financial is the entity to whom the loan is *initially payable* on the face of the loan documents (i.e., the evidence of indebtedness). Gutierrez's loan was not *initially payable to* any Money Store Defendant. First Financial is the **"creditor"** under TILA. That fact is further corroborated by Gutierrez's testimony. Gutierrez testified as follows [Reply Ex. T]:

> Q. And is this the loan application that you made to First Financial Funding Group for the home equity or construction loan that you were getting?
>
> A. Yes. [Reply Ex. T, at p. 13].
>
> Q. You see the lender is First Financial Funding Group. Is this the note you signed in connection with a loan you took from First Financial Funding Group?
>
> A. Yes. [Reply Ex. T, at p. 17].

Without any supporting law to show that her alleged "fact issues" are relevant to the determination of who is a **"creditor"** under TILA, Gutierrez claims that her loan was funded after the Money Store took it over, making them her TILA **"creditors"**. She relies on a document entitled wire transfer log, dated April 14, 1997 as evidence of this. The checks for the proceeds of her loan from First Financial are dated April 11, 1997 [see Ex. U to Reply Dec., a series of checks, all dated April 11, 1997, from First Financial to the Gutierrezes and their contractors]. Thus, her statement about when her loan was fully funded is pure speculation, and, in any event, not relevant.

Gutierrez also claims that the Money Store Defendants review of her loan documents before her loan was approved makes them her TILA **"creditors"**. As shown above, the *Mayfield* case and the Official Staff Interpretation it cites make clear that that is not so. Similarly, Gutierrez claims that she was not bound to accept the loan until after the Money Store obtained the loan. Gutierrez and her husband were indeed bound under their loan with First Financial on April 5, 1997, when they both executed a Closing Agreement with the Lender, First Financial which so states [see Ex. V to Reply Declaration]. Plaintiffs' Opposing Ex. H supports the Money Store Defendants. That document enclosed the First Financial checks just noted and states: "Thank you for choosing First Financial Funding Group for your home financing needs. Enclosed you will find the proceeds check(s)." Gutierrez also points to an internal document which lists First Financial as a "broker" next to a fee of $1365.00. However, the HUD-1 Settlement Statement for her loan shows the Lender, First Financial, being paid this amount as the "Loan Origination Fee" [see Ex. W to Reply Declaration]. First Financial was not a mortgage broker, it was the lender, which makes it her **"creditor"** under TILA, and Plaintiffs' cases discussing TILA's inapplicability to mortgage brokers are irrelevant.

**The Garridos**

The Garridos' loan was originated by FHB Funding Corp. ["FHB"] [Moving Exs. N and O; see also TMS Rule 56.1 Statement ¶¶ 14-17]. A review of the Garridos' Note [Ex. N] and Mortgage [Ex. O] shows that FHB is the "Lender", and both documents recite that the payments are to be made to the "Lender". The Garridos' Note [Moving Ex. N] states as follows:

> **BORROWER'S PROMISE TO PAY** In return for a loan that I have received, I promise to pay U.S. $100,000 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is <u>FHB FUNDING CORP., 250 OLD COUNTRY ROAD,</u>

SUITE 201, MINEOLA, NEW YORK 11501. (emphasis in original)

Thus, FHB is the entity to whom the loan is **_initially payable_** on the face of the loan documents (i.e., the evidence of indebtedness). The Garridos' loan was not **_initially payable to_** any Money Store Defendant. FHB is the **"creditor"** under TILA. That fact is further corroborated by Mrs. Garrido's testimony. Mrs. Garrido testified as follows [Reply Ex. X]:

> Q. You had not taken your loan out originally from The Money Store?
>
> A. Correct. [Reply Ex. X, at p. 12].
>
> Q. Did you understand that they [The Money Store] weren't the ones who had originally given you the loan that FHB had done so?
>
> A. Yes. [Reply Ex. X, at pp. 13-14].

Plaintiffs attempt to raise a fact issue by alleging that FHB was a related entity of the Money Store because of some boilerplate language on a disclosure statement provided to the Garridos by FHB [see Opp. Ex. O], and a statement in the Money Store Defendants' prior papers.[2] The disclosure statement, which does not refer to any Money Store Defendant, was required by the Real Estate Settlement Procedures Act [12 U. S. C. 2605 (a)]. Pursuant to that section, it is the person who makes a federally related mortgage loan who shall disclose such information. That is further proof that FHB is the **"creditor"** on the Garridos' loan. There is no evidence here that any of the lenders were "related entities" of The Money Store.

---

[2] The statement in the Money Store Defendants' prior papers that the Garridos delivered their loan documents to The Money Store was simply a mistake; we were in error. There is no evidence that the Garridos delivered any loan documents to The Money Store.

**C.**

### Plaintiffs admit that their TILA Disclosure Statements were made by entities other than the Money Store Defendants

Plaintiffs admit that their TILA Disclosure Statements were provided by their lenders [see Plaintiffs' Rule 56.1 Response, ¶¶ 9, 13 and 17] and, thus, that the disclosures were "made" by entities other than the Money Store Defendants. That is also true of the TILA notices regarding Plaintiffs' rights of rescission [see Ex. Y to Reply Dec.]. Those rescission notices all show that any notice of cancellation must be sent to Accubanc, First Financial and FHB at their respective addresses. Pursuant to 15 U.S.C. §§ 1631 and 1635, it is the **"creditor"** who must make the TILA disclosures. Thus, that is further support that Accubanc, First Financial and FHB are the **"creditors"** here. See, e.g., *Vallies v. Sky Bank*, 432 F. 3d 493, 495-96 (3d Cir. 2006) (". . . those provisions of the TILA and its regulations that do address who must make disclosures explicitly and plainly direct the creditor to make all disclosures."). The reason for this lies in the purpose of TILA, as this Court stated in *Cedeno v. Indymac Bancorp, Inc.*, 2008 U.S. Dist. LEXIS 65337 at *15 (S.D.N.Y. 2008) (Koeltl, J.):

> TILA is a disclosure statute that requires that the terms of credit and the fees charged for extension of credit are properly disclosed [citation omitted]. The purpose of TILA is to assure "meaningful disclosure of credit terms to consumers."

**D.**

### Reply to Plaintiffs' other contentions

Plaintiffs claim that the Money Store Defendants have raised the **"creditor"** point too late — this is not so: the Money Store Defendants clearly asserted in their Answer to the First Amended Complaint, which was only filed in this case on October 19, 2010, that they were not **"creditors"** [Moving Ex. B at ¶¶ 55 and 56]. The First Amended Complaint and the Answer

thereto are the current governing pleadings in this case. As the court in *In Re Parmalat Sec. Lit.*, 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006) stated:

> An amended complaint, … supersedes the original and entitles a defendant to raise substantive arguments aimed at "judicial resolution of the controversy" in a new responsive pleading, even if those arguments were not raised in response to the original complaint.

Plaintiffs now also argue that the Money Store Defendants' view of TILA would somehow eviscerate the purpose of 15 U.S.C. § 1666d. That is not the case. Plaintiffs' remedy (if there was any wrongdoing) would have been to pursue their **"creditors"** to assert a TILA claim. Plaintiffs also claim that they will need additional discovery if the Court finds (which we respectfully submit it should) that the Money Store Defendants have carried their burden on this motion. The statute, the Official Staff Interpretations and the cases all provide that: once an entity is the **"creditor"**, that entity is always the **"creditor"**. No additional amount of discovery will change that fact.

Finally, Plaintiffs seek to make much of the fact that the Money Store Defendants have admitted, in the past, that the Garridos had a credit balance. That is a true "red herring" — what makes one a **"creditor"** *vel non* is whether one originated the loan or not, not whether there is or is not a credit balance.

### E.

### This Court should not exercise supplemental jurisdiction over the State law claims

Finally, as argued in the Money Store Defendants moving brief, if the Court dismisses Plaintiffs' TILA claim, it should also decline to exercise supplemental jurisdiction over Plaintiffs' State law claims. Plaintiffs' assertion that the *Mazzei* action would provide the Court

MEI 11012000v.1

with continuing original jurisdiction here is misplaced. The *Achtman* case relied on by Plaintiffs was an attorney fee dispute case, where the conduct of the attorneys during the litigation was at issue. There is no such issue here. The *Boyd* case involved claims asserted by other plaintiffs in the same lawsuit. All of the previous motions by the Money Store Defendants in this action have been directed at the Federal claims, not the State law claims. Plaintiffs' assertion of a claim under a complex California statute is a further reason to decline supplemental jurisdiction here. There is nothing about this case's current posture which would call for it to be treated any differently. Plaintiffs' reliance on the *Purgess* and *Raucci* cases is also misplaced. In *Purgess*, the jury had already heard the evidence and begun deliberations. In *Raucci*, the case was ready for trial. Here, we do not even have a certified class. The *Winter* case is also distinguishable since it did not involve the novel California statute asserted here.

## CONCLUSION

The Money Store's Defendants' motion for summary judgment should be granted.

Dated:  January 14, 2011
        New York, New York

                        Respectfully submitted,

                        McCARTER & ENGLISH, LLP

                        By: _____
                            Daniel A. Pollack (DP 9207)
                            *dpollack@mccarter.com*
                            W. Hans Kobelt (WK 1847)
                            *wkobelt@mccarter.com*
                        245 Park Avenue, 27th Floor
                        New York, New York 10167
                            Tel. (212) 609-6800
                            Fax (212) 609-6921
                        *Attorneys for Defendants*
                            The Money Store, TMS Mortgage, Inc.
                            and HomEq Servicing Corp.

10