**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

LORI JO VINCENT, RUTH ANN     :
GUTIERREZ, LINDA U. GARRIDO, and  :
JOHN GARRIDO, on behalf of themselves and  :
all others similarly situated,  :

             :     No. 03 CV 2876 (JGK)

     Plaintiffs,  :

             :

  - against -  :

             :     **MOSS CODILIS' REPLY**

THE MONEY STORE, TMS MORTGAGE,  :     **IN SUPPORT OF ITS MOTION**
INC., HOMEQ SERVICING CORP., and  :     **FOR SUMMARY JUDGMENT**
MOSS, CODILIS, STAWIARSKI, MORRIS,  :
SCHNEIDER & PRIOR, LLP,  :

             :

     Defendants.  :

---------------------------------------------------------------- X

David J. Chizewer (ARDC 06206747)
Jon E. Klinghoffer (ARDC 06270082)
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois  60603
(312) 201-4000

Thomas P. Battistoni (TPB 8012)
SCHIFF HARDIN LLP
900 Third Avenue, 23rd Floor
New York, New York  10022
(212) 753-5000

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................ 1

I.    PLAINTIFFS OFFER NO EVIDENCE THAT THE FEES AT ISSUE IN THIS CASE WERE FOR LEGAL WORK PERFORMED EXCLUSIVELY BY MS. NASH ................................................................. 3

    A.    Plaintiffs Cannot Rely on Isolated, Out-of-Context Quotations in Ms. Nash's Deposition to Prove That She Alone Created The Default Notice Templates. ........................................................ 4

    B.    Plaintiffs Offer No Evidence That TMS Paid Moss Codilis For Ms. Nash's Work – As Opposed to Ms. Bromley's – With Respect to The Default Notices Sent to Vincent and Gutierrez ...................... 8

II.   PLAINTIFFS HAVE MISREPRESENTED THIS COURT'S EARLIER RULING. ................................................................................................. 11

III.  GUTIERREZ CANNOT PROVE THAT SHE SUFFERED ANY DAMAGES . ........................................................................................... 12

CONCLUSION .............................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

AMEX Assurance Co. v. Caripedes, 179 F. Supp. 2d 309 (S.D.N.Y. 2002) .............................. 11

California for Disability Rights v. Mervyn, LLC, 138 P. 3d 207 (Cal. 2006)............................ 14

D'Amico v. City of New York, 132 F.3d 145 (2d Cir. 1998) ....................................................... 5

In re Omnicom Group Inc. Securities Litigation, 597 F.3d 501 (2d Cir. 2010) ........................... 1

Island Software & Computer Serv. Inc. v. Microsoft Corp., 413 F.3d 257 (2d Cir. 2005)........... 4

Jeffreys v. The City of New York, 426 F.3d 549 (2d Cir. 2005)................................................. 13

Lorenzo v. Qualcomm, Inc., 603 F. Supp. 2d 1291 (S.D. Cal. 2009) ........................................ 14

Mazzei v. The Money Store, 349 F.Supp.2d 651 (S.D.N.Y. 2004) ............................................ 11

People v. Adams, 243 P.3d 256 (Colo. 2010)............................................................................... 3

Slayton v. American Exp. Co., 460 D.3d 215 (2d Cir. 2006)..................................................... 11

Sussman v. Grado, 746 N.Y.S.2d 548 (2d Dist. 2002)................................................................. 4

Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23 (2d Cir. 2002)....................................... 11

**Statutes and Regulations**

Cal. Civ. Code § 1788.30(f)........................................................................................................ 14

## INTRODUCTION

Moss Codilis' motion for summary judgment centers primarily on two simple points: (1) Christina Nash – an admittedly unlicensed lawyer – rarely engaged in legal work, and when she did, she was supervised by a licensed lawyer; and (2) a licensed lawyer took over for Ms. Nash prior to the time when two of the plaintiffs in this case were first contacted by Moss Codilis. The very nature of the work performed by Moss Codilis, as described expressly in its contract with TMS, made clear that Ms. Nash's daily routine was an exercise in the mass processing of default notices – not legal work. That work is explained in detail in the *complete* transcript of Ms. Nash taken in another case. Moreover, Ms. Nash has explained her job and the role of her supervisor and fellow lawyer in an uncontroverted verification.

To defeat Moss Codilis' Motion for Summary Judgment, Plaintiffs must do more than simply poke holes in Moss Codilis' evidence. Although Moss Codilis is the movant here, Plaintiffs have the burden of proof. Plaintiffs must come forward with affirmative evidence to show they can win the case at trial. In re Omnicom Group Inc. Securities Litigation, 597 F.3d 501, 509 (2d Cir. 2010) (affirming summary judgment on claims where the plaintiff had the burden of proof but had failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his favor). They have failed to meet this burden. Plaintiffs did not depose any witnesses in this case nor have they presented any testimony solicited in this case. They do not even identify the particular legal work that they believe Ms. Nash illegally performed on behalf of TMS, let alone legal work related *to the Plaintiffs in this case*. Plaintiffs do not identify the legal standard for determining whether a task amounts to legal work; they do not articulate the standard for disgorgement of fees; and they do not offer a way to determine what, if any, portion of the fees should be disgorged for this supposed legal work.

Instead, Plaintiffs have focused on isolated, out-of-context portions of Ms. Nash's testimony in another case to make it appear as if she has changed her story.  A reading of the complete deposition shows that Ms. Nash's declaration testimony is not inconsistent with her deposition, and that the evidence offered by Plaintiffs in support of their case is insufficient for a victory at trial.  Plaintiffs cannot defeat summary judgment by offering no affirmative evidence in their favor and instead merely offering inconclusive evidence on points where they have the burden of proof.

Finally, Plaintiffs have engaged in other deceptive forms of argumentation which this Court should not countenance:

1.    Plaintiffs have completely mischaracterized this Court's earlier decision (per Sprizzo, J.) granting TMS's motion for summary judgment in the <u>Mazzei</u> case on the Plaintiffs' FDCPA claim.  Plaintiffs make it sound as if TMS relied on facts to win that motion that are opposite from the facts offered now by Moss Codilis.  As explained below, this Court's opinion and ruling in favor of TMS has nothing to do with whether Moss Codilis was engaged in the unauthorized practice of law or any other facts relevant to this dispute, and that opinion says so expressly.

2.    Plaintiffs make it sound as if Judge Sprizzo had previously recognized that Moss Codilis had taken inconsistent positions.  To do so, Plaintiffs quote the following statement by Judge Sprizzo:  "You people have got yourself in a pickle."  Plaintiffs do not attach the full transcript to permit the Court to understand any of the context of that statement, including to which party the Judge is speaking.  It appears, however, as though Judge Sprizzo may have directed that comment to *Plaintiffs' counsel* – not Moss Codilis – because it is Plaintiffs' counsel who responds and the Judge goes on to discuss some potential obstacles with Plaintiffs' case.

Even a review of the full transcript, however, does not shed light on this issue.  In any event, it was clearly an off the cuff remark that has no bearing on the issues now before this Court.

   3.   Plaintiffs attempt to exploit a typo in Moss Codilis' answer to argue that Moss Codilis has "admitted" a fact, even though the supposed admission belies a mass of uncontroverted evidence, all produced long before the mistake in the answer.  Even as written, the admission is of no help to Plaintiffs.

   These tactics are not a substitution for the affirmative evidence that Plaintiffs must – but fail to – present in order to meet their burden of proof.  Thus, this Court should award summary judgment in favor of Moss Codilis.

## I.   PLAINTIFFS OFFER NO EVIDENCE THAT THE FEES AT ISSUE IN THIS CASE WERE FOR LEGAL WORK PERFORMED EXCLUSIVELY BY MS. NASH.

   Plaintiffs base their entire case against Moss Codilis on the claims that TMS charged them fees for a default notice which was (a) legal work; and (b) performed exclusively by Ms. Nash.  Colorado law defines the practice of law as "(i) Furnishing legal counsel, drafting documents and pleadings, and interpreting and giving advice with respect to the law and/or (ii) Preparing, trying or presenting cases before courts, executive departments, administrative bureaus or agencies."  People v. Adams, 243 P.3d 256, 266 (Colo. 2010) (holding that defendant engaged in the unauthorized practice of law when he represented creditors by appearing *pro se* in court on their behalf).  Plaintiffs do not describe the particular work they believe was "legal work" nor do they prove that it was done exclusively by Ms. Nash.

   The contract that describes the work to be performed makes clear that the day-to-day responsibilities of sending out thousands of form letters in a 24-hour period, including to the Plaintiffs in this case, does not rise to "furnishing legal counsel, drafting documents or interpreting and giving advice with respect to the law."  Id.  Plaintiffs have offered no

explanation as to how the computer generation of so many letters in such a short time could rise to this definition of legal work.

        The only part of the work that constituted the practice of law was the creation of the template for the default notices in the first place.  On this point, Ms. Nash has testified that to the extent she was involved, she was supervised by a licensed Colorado lawyer.  SOMF ¶¶ 4-5.  Plaintiffs present no evidence to prove that she did this on her own.  An unlicensed person "may perform *any task* which is properly delegated and supervised by [a licensed] attorney, as long as the attorney is ultimately responsible to the client, maintains a direct relationship to the client, and assumes professional responsibility for the work product."  Sussman v. Grado, 746 N.Y.S.2d 548, 632 (2d Dist. 2002) (emphasis added).  Mr. Stawiarski, a named partner in the Moss Codilis firm, supervised Ms. Nash's work on the Breach Letter Program and approved any changes to the templates that she may have suggested.  SOMF ¶ 5.

      **A.**    **Plaintiffs Cannot Rely on Isolated, Out-of-Context Quotations in Ms. Nash's Deposition to Prove That She Alone Created The Default Notice Templates.**

        Plaintiffs offer no proof that legal work performed exclusively by Ms. Nash accounted for the default notice fees charged to them that they now want refunded.  Instead, Plaintiffs seek to attack Ms. Nash's credibility by arguing that she changed her story.  These arguments are based on incomplete quotes from her deposition and incomplete questioning in that deposition (which was taken before her license to practice law was at issue).  In any event, the isolated quotations are not the affirmative evidence with which Plaintiffs must come forward to defeat summary judgment.  See Island Software & Computer Serv. Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005) (holding that plaintiff failed to meet its burden on summary judgment by challenging witness's credibility because broad attacks on the credibility of a witness, by themselves, do not raise an issue of fact sufficient to defeat summary judgment);

D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998) (affirming order granting summary judgment and noting that the party opposing summary judgment "must offer some hard evidence showing that its version of the events is not wholly fanciful").

It is important to remember that the deposition testimony of Ms. Nash, which is the sole source of Plaintiffs' evidence in this case, was taken in an entirely separate case – the Mazzei case – before any claims against Moss Codilis were even filed.[1] Moss Codilis acknowledges the admissibility of the deposition here. But when being deposed in that case, however, neither Ms. Nash nor Moss Codilis was faced with the accusation of having engaged in the unauthorized practice of law. Of course Ms. Nash was under oath in that deposition; and of course, the point is *not* that Ms. Nash could have altered the truth in order to benefit Moss Codilis if she had understood what was at stake. Rather, the point is that in the Mazzei deposition, Plaintiffs were not inquiring about the level of supervision that Ms. Nash received for any legal work she may have performed, and Ms. Nash had no incentive or understanding to know why she should be engaging in any explanation of that supervision. It simply was not important to the matters then at hand. Thus, as demonstrated below, Ms. Nash's deposition is entirely inconclusive about the level of supervision Ms. Nash received when working on the default notice templates – the only real legal work that was performed. Here is all of the testimony from the deposition on the subject:

> A.   In 1997, no. In 1997, there was a process that all the property addresses in Colorado were put on their own separate spreadsheet and merged with a Colorado state specific letter.
> Q.   Was that done by a processor?
> A.   It was done by me initially and then was done by paralegals.

---

[1] Moss Codilis has frequently pointed out that in the Mazzei case, Plaintiffs had alleged that Moss Codilis was *not* practicing law – allegations they never retracted and have never explained to this Court. Moss Codilis' Memorandum of Law in Support of Its Motion for Summary Judgment, Docket Entry No. 131, at 9.

Q.      So based on the address, you would put in the information that was required by specific state statutes?

A.      Based on the property state.

Q.      Right.

A.      I don't understand your question.  What--

Q.      You would type that in?

A.      Type it in with?

Q.      If a specific state required specific information with regard to property located in that state, you indicated that you made sure that the legal template -- that --

A.      Proper template was pulled.

Q.      And how would you do that?

A.      *We had several letter templates that were created based on compliance reviews that were done by Moss, Codilis and approved by The Money Store's Counsel.  We had several state specific templates -- or let's call them state specific templates.*  Some of them required additional information, some of them required a specific form, some of them allowed a fee to be imposed, some did not allow a fee to be imposed.

Those were all broken out into separate spreadsheets -- and do you know what a Word mail merge document is?

Q.      No.

A.      The data is merged -- the Excel data format or the ACCESS database is merged with a Word document, with a template, and it creates a letter.

Q.      So would you just have to press a button on the computer to make sure the specific language which had to be put in for property located in a specific state?

A.      No.

Q.      Was --

A.      It was its own letter.

Q.      Would you type that letter?  I'm just trying to --

A.      No.  I took the data and I merged it into a Word document, and then I went back and looked at the data file to make sure that the proper template pulled for that state.

Q.      So you would just make sure that the proper specific -- whatever the specific statutory requirements were from that state were put in the letter?

A.      No.  I made sure that the data was accurate.

Q.      And how would you make sure that the data was accurate?

A.      I would look at the spreadsheet to make sure the appropriate data for that account number pulled into the appropriate template and then it was all accurate.

Q.      By "accurate," do you mean conformed to the information in the spreadsheet that was provided to you?

A.      Correct.

-6-

Nash Deposition 98:8-101:1 (emphasis added).  This passage – which the Plaintiffs did not present to this Court – shows that in 1997 Moss Codilis already "had several letter templates" that were done by "Moss Codilis" – not by Ms. Nash herself.

Moreover, this passage confirms that Ms. Nash's main role was simply to make sure that the correct state template was pulled for each particular default notice.  This passage puts into context the later testimony from Ms. Nash quoted by Plaintiffs and repeated below:

> Q.      Do you have a role in creating the form letters that were used --
> A.      The state specific templates?
> Q.      Any role.  Did you have a role in creating the form letters that Moss, Codilis sent out on behalf of The Money Store, TMS Mortgage?
> A.      The state specific templates, I had a role in doing some of the compliance -- the legal compliance to actually draft those, and then The Money Store's in-house counsel and myself amended some of those letter templates.
> Q.      With the templates -- let me ask you because we got a lot of first pages of letters and not many second pages.  Would the templates typically be on the second page of the breach letter?
> A.      What templates are you referring to?
> Q.      The state specific templates.
> A.      Not necessarily.
> Q.      Did you have any role other than what you just testified to -- did you have any other role in drafting the breach letters which Moss, Codilis sent out on behalf of TMS?
> A.      I don't understand your question.
> Q.      Did you use these letters -- you had a contract with --
> A.      Right.
> Q.      -- with TMS Mortgage.  You guys were creating a letter for them and you were going to send out a letter.  Who created the first draft of that letter, do you know?
> A.      We did compliance -- we did some compliance research and we provided some information to them and I worked with their – Sam Shusterman, who's their in-house counsel, to come to the final draft of the initial letter templates that we used.
> Q.      So the two of you, you and Mr. Shusterman --
> A.      Correct.
> Q.      -- created the form letter?
> A.      The templates, yes.

Nash Deposition at 125:15-127:6.  Contrary to the Plaintiffs' suggestion, there is nothing in this passage to suggest that Ms. Nash did not seek out help in preparing the templates.  Ms. Nash testified that she had "a role" in preparing the templates; that "we" did compliance research; "we" provided information; and she and TMS's in-house counsel "finalized" the letter.  Her continuous use of the word "we" when speaking about the templates implies that another person was involved.  This testimony actually supports her Declaration testimony that she consulted with Mr. Stawiarski.  In any event, this testimony cannot be used to prove that Ms. Nash was engaged in the unauthorized practice of law.  It does not establish or raise any genuine with respect to any material fact for the Plaintiffs.  It is not the sort of affirmative evidence on which Plaintiffs can rely to prove that Moss Codilis is obligated to return the fees paid to it by TMS for the default notices it sent to the Plaintiffs. [2]

If Plaintiffs really hoped to prove something as serious as Moss Codilis' engagement in the unauthorized practice of law, they should have deposed Ms. Nash – the alleged culprit – in this case, and her supervisor, Mr. Stawiarski – to find out for themselves the nature of their working relationship.  They cannot meet the burden of proof by referring to nothing more than inconclusive deposition testimony from another case.

**B.    Plaintiffs Offer No Evidence That TMS Paid Moss Codilis For Ms. Nash's Work – As Opposed to Ms. Bromley's – With Respect to The Default Notices Sent to Vincent and Gutierrez.**

Even if Ms. Nash had, on some unknown occasion, with respect to some unidentified default notice, engaged in the unauthorized practice of law, that circumstance does

---

[2] Plaintiffs also cite portions of Ms. Nash's testimony that she has no specific recollection of consulting with one of the Moss Codilis partners with respect to *individual accounts*.  See Plaintiffs' Memorandum of Law in Response to Moss Codilis' Motion for Summary Judgment ("Plaintiffs' Response"), at 16-17.  See also Nash Deposition at 180:15-188:7.  When read in full, rather than as expurgated by Plaintiffs, it is clear that this testimony has nothing to do with her consultation with Mr. Stawiarski about the form of the default notice templates.

not prove that the fees which TMS paid to Moss Codilis for the default notices *at issue in this case* were on account of work performed by Ms. Nash.  It is not disputed that Valerie Bromley came to work at Moss Codilis in July 1999 after graduating law school, and that a few months later, in November 1999, she became a licensed lawyer.  Ms. Nash testified to these facts in her deposition, long before she knew of the issues in this case.  Nash Deposition at 43:19-24.

      In fact, Ms. Nash testified in her deposition that Ms. Bromley was responsible for certain changes made to the templates of the default notice back in the year 2000.  See Nash Deposition 225:13-226:20.  This evidence is not contested.  In the face of these undisputed facts, Plaintiffs do not offer any evidence to prove that Ms. Nash had anything to do with the default notices sent to Plaintiffs Vincent and Gutierrez.  Indeed, it is more likely that Ms. Bromley, the licensed lawyer who had taken over for Ms. Nash at the time, was involved in the letters sent to Vincent and Gutierrez in March and September of 2000, respectively.   SOMF ¶¶ 14, 18. Without such affirmative evidence, Plaintiffs cannot survive summary judgment.

      Rather than present affirmative evidence, Plaintiffs seek to exploit a typographical error in Moss Codilis' answer.  Even as written, the answer does not help Plaintiffs meet their burden.  Paragraph 23 of Moss Codilis' Answer to the Final Amended Complaint states as follows:

> 23.    Despite the impression created by the letters on Moss Codilis' law firm stationary, these letters were generated by computers or lay persons, and overseen by an attorney who was not licensed in the state from which the Breach Letters originated and thus had no right to practice law in the State of Colorado.

> ANSWER:  Moss Codilis denies that the form of the letter used was created by a computer.  Moss Codilis admits that the letters at issue in this case were printed by a computer, and that the process by which the files were received from The Money Store by Moss Codilis and by which the information received was used to create and send the default notices was, during **the** portion of time in which Moss Codilis was preparing and sent out default notices for The Money Store, overseen by someone who was

> not licensed to practice law, and who was not entitled to practice law in
> the State of Colorado.   Moss Codilis denies that such person was
> practicing law.

Moss Codilis' Answer to Plaintiffs' Amended Complaint, Docket Entry No. 127, ¶ 23 (emphasis

added).   First, the answer as written merely admits that Ms. Nash oversaw the computer

generation of the default notices.   This answer does not contradict the fact that Ms. Bromley was

involved in the legal work with respect to the default notices sent to Vincent and Gutierrez.

Indeed, Ms. Nash testified in her deposition that Bromley made changes to the template in 2000

based on changes in the law.   If Bromley – a licensed lawyer – was involved, then the fact that

Ms. Nash may have been overseeing the computer generation of the default notices is irrelevant

to the issue at hand.

> Second, the answer contains a typo.   The answer should read:

> ANSWER:   Moss Codilis denies that the form of the letter used was
> created by a computer.   Moss Codilis admits that the letters at issue in this
> case were printed by a computer, and that the process by which the files
> were received from The Money Store by Moss Codilis and by which the
> information received was used to create and send the default notices was,
> during **a** portion of time in which Moss Codilis was preparing and sent out
> default notices for The Money Store, overseen by someone who was not
> licensed to practice law, and who was not entitled to practice law in the
> State of Colorado.   Moss Codilis denies that such person was practicing
> law.

Even before Moss Codilis filed this answer, Ms. Nash had testified that Ms. Bromley eventually

took over Ms. Nash's role in the Breach Letter Program, and that Ms. Nash was on maternity

leave during part of the program.   See Nash Deposition at 43:19-24; 153:12-17 (dated June 23,

2003); Declaration of Christina Nash, Docket Entry No. 90, ¶ 9 (filed June 24, 2009).   Thus, it

simply does not make sense for Moss Codilis to admit that Ms. Nash oversaw the Breach Letter

Program during the entire time it was in effect.   The word "portion" means some fraction of the

whole.   Thus, the phrase "portion of time" should not imply the *entire* time of the Breach Letter

Program.   Rather, Moss Codilis meant to answer, consistent with every other piece of uncontroverted evidence on this issue, that Ms. Nash oversaw the computer generation of the breach letters during **"a"** portion of the time in which Moss Codilis was preparing default notices for TMS.[3]   Vincent and Gutierrez cannot overcome summary judgment by seizing upon an admission which (a) does not prove anything with respect to the unauthorized practice of law; and (b) which is based on a typo in any event.[4]

## II.   PLAINTIFFS HAVE MISREPRESENTED THIS COURT'S EARLIER RULING.

Plaintiffs' argue that TMS won summary judgment on an FDCPA claim by presenting to the Court the opposite facts that Moss Codilis now alleges here.   Specifically, Plaintiffs argue:

> "[h]aving helped The Money Store to defeat the FDCPA claims by arguing that Moss Codilis engaged in a review of each of debtor's circumstances before sending out breach letters, Moss Codilis now tells a completely different story."

See Plaintiffs' Response at 10.   Plaintiffs' characterization of what led to the Court's FDCPA ruling in favor of TMS is grossly misleading.   In Mazzei v. The Money Store, 349 F. Supp. 2d 651 (S.D.N.Y. 2004) the court states as follows:

---

[3]  Moss Codilis has filed a Motion for Leave to File an Amended Answer to correct this and one other inconsequential error it discovered in its Answer.   Though an answer can bind a party later in the litigation, the pleading has no binding effect if it is amended.   Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 32 (2d Cir. 2002) (statement in a prior pleading that is subsequently amended "is no longer a conclusive judicial admission"), overruled on other grounds by Slayton v. American Exp. Co., 460 D.3d 215, 228 (2d Cir. 2006); AMEX Assurance Co. v. Caripedes, 179 F. Supp. 2d 309, 323-324 (S.D.N.Y. 2002) (refusing to bind parties to judicial admission that resulted from an inadvertent error in a pleading even though the pleading had not yet been formally amended).

[4]  Plaintiffs do point out one true inconsistency in Ms. Nash's testimony.   In her affidavit she testifies that after Ms. Bromley was hired in 1999, Ms. Nash's involvement in the Breach Letter Program was "extremely limited and that she did not review breach letters in any way."   At her deposition, however, she had testified that she may have reviewed 1000 breach letters in 2000.   While 1000 letters in a year is still a very small fraction (or "extremely limited" number) of default notices sent in a year, it is not the same as not reviewing "any."   This inconsistency is more a reflection on the human memory than anything else.   In any event, it does not bear on any significant issue in this case, and does not help Plaintiffs meet their burden of proof.

Plaintiffs arguments that Moss Codilis attorney Christina Nash was not authorized to practice law, that the breach letters were not really from Moss Codilis in any meaningful sense, that Moss Codilis did not verify the validity of the debt or exercise any professional judgment in doing its work, played little role in handling responses to the breach letters, and did not take legal action to pursue The Money Store's debts, *are not relevant* to the question of whether The Money Store should be considered a debt collector under the false name exception of the FDCPA because they fail to demonstrate that Moss Codilis was The Money Store's alter ego.  Pl.'s Mem. at 6-7, 8-13, 15-16; see Maguire, 147 F.3d at 234-35, 236. There is no requirement in the FDCPA that debt collectors be attorneys and therefore, even if Moss Codilis failed to meet the relevant standard of attorney involvement, *an issue not presented by the case before this Court*, Moss Codilis would still be considered a debt collector under the FDCPA. At best plaintiff's arguments suggest Moss Codilis may have made a false misrepresentation that the breach letters were from an attorney, a claim plaintiff could and should have pursued against debt collector Moss Codilis directly, *but which are not relevant here.*

349 F. Supp. 2d at 661 (emphasis added).  From these comments, it is clear that the Court's ruling had nothing whatsoever to do with the argument that Ms. Nash was engaged in the unauthorized practice of law.  Moreover, the case makes no mention of the role of other lawyers such as Ms. Bromley or Mr. Stawiarski.  What is clear from the opinion is that it was *Plaintiffs* – not Moss Codilis – who have changed their position.  In trying to win the FDCPA case, the Plaintiffs argued that Moss Codilis:  (1) "did not exercise any professional judgment in doing its work;" (2) "played little role in handling responses to breach letters;" and (3)"did not take any legal action to pursue The Money Store's debts."  Id.  Having lost the FDCPA case on other grounds, *it is the Plaintiffs* who now argue precisely the opposite set of facts.  Yet, Plaintiffs have failed to offer any proof in support of them.  If anything, this decision only affirms that this Court should grant summary judgment in favor of Moss Codilis.

## III.   GUTIERREZ CANNOT PROVE THAT SHE SUFFERED ANY DAMAGES.

Moss Codilis has presented evidence that Gutierrez was never charged for, and never paid, the fees she is now seeking to recover in this lawsuit.  SOMF ¶ 20.  Plaintiffs'

Response to this point reflects their fundamental misunderstanding about their burden of proof on this motion and how they have failed to satisfy it.  In response to testimony and documents proving that there was no charge to Gutierrez for the breach letter fee, Plaintiffs respond as follows:

> Because Money Store charged over $1,929.00 to Ms. Gutierrez's account through an accounting procedure it described as a "Transaction Reversal", (Deyoung Decl. Exh. O) and because Money Store has admitted that it supplied no invoices to explain the purported fees and expenses which comprise this amount, (Deyoung Decl. Exh. P, ¶52; Exh. Q, ¶52) *Moss Codilis cannot possibly demonstrate on this record that Gutierrez was never charged for the Moss Codilis letters.*

Plaintiffs' Response at 21 (emphasis added).

Moss Codilis has submitted uncontroverted evidence that Gutierrez was not charged for and did not pay for the fees she now wants refunded.  SOMF ¶ 20.  It is not Moss Codilis' burden "to demonstrate on this record that Gutierrez was never charged for the Moss Codilis letters."  Rather, it is *Plaintiffs'* burden (or more particularly Ms. Gutierrez's burden) to demonstrate that she paid the fees.  "To defeat summary judgment, therefore, nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation."  Jeffreys v. The City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (affirming summary judgment where the record did not support plaintiff's allegations).  Plaintiffs' reliance on the "Transaction Reversal" is pure speculation – they fail to produce any evidence that fees for Moss Codilis breach letters were included in the "Transaction Reversal".  Moreover, the record evidence actually belies Plaintiffs' speculation and demonstrates that Gutierrez was never charged for Moss Codilis fees.  SOMF ¶ 20.  Thus, Gutierrez has failed to meet her burden with respect to the element of damages – which is essential to all of her claims.

Plaintiffs acknowledge, as they must, that Gutierrez must prove actual damages for claims under the California Unfair Competition Law (See Plaintiffs Response at 20-21) (citing California for Disability Rights v. Mervyn, LLC, 138 P. 3d 207 (Cal. 2006).  See also Lorenzo v. Qualcomm, Inc., 603 F. Supp. 2d 1291, 1303 (S.D. Cal. 2009) (a claim under section 17200 et seq. requires a showing that the plaintiff has lost money or property as a result of the violation).[5]  Knowing that she cannot establish such damages, Gutierrez now argues for the very first time, that she has a claim under the California version of the FDCPA.  See Plaintiffs' Response at 21.  Once again, Plaintiffs want to amend their complaint to add yet another new claim.  Such an amendment would be futile, however, because even if the new claim related back to the original date of filing more than 7 years ago, their claim under the California FDCPA is still barred by the one-year statute of limitations.  Cal. Civ. Code § 1788.30(f).  The Gutierrezes received their default notices in September and October of 2000 but did not file this case until 2003.  Furthermore, California law provides that a claim under the California FDCPA can be brought only in an individual capacity.  Thus, Gutierrez could not bring a class action under the California FDCPA even if her claim were not time-barred.  Id.[6]

## CONCLUSION

After litigating this case for 7 years, Plaintiffs have essentially proved one fact: That Moss Codilis' employee Christina Nash was not licensed to practice law.  Based on that fact alone, Plaintiffs wish to force Moss Codilis to refund all of the fees it earned from TMS over an

---

[5] Gutierrez has not disputed that damages are an essential element of her fraud, unjust enrichment, and Colorado statutory claims.

[6] Plaintiffs are correct with respect to the outcome of Gutierrez's bankruptcy case:  her bankruptcy was dismissed before the bankruptcy court could adopt her schedule of assets, in which she admittedly failed to disclose her claim in this matter.  Because the matter was dismissed before her false schedule was adopted by the Court, judicial estoppel does not apply and Moss Codilis withdraws its argument on the issue of judicial estoppel.  Moss Codilis should have realized this point before making the argument and apologizes to Plaintiffs and the Court for not doing so.

approximately 4-year period for creating and mass-processing approximately 89,000 default notices. Plaintiffs' Response to Moss Codilis' Summary Judgment motion shows a fundamental misunderstanding of Plaintiffs' burden of proof. Plaintiffs' have not identified any particular tasks that Ms. Nash performed (a) which constitute legal work; (b) were performed by her exclusively and without supervision from a licensed lawyer; and (c) were performed by her to earn the particular fees paid by the Plaintiffs in this case. Plaintiffs have also failed to articulate the standard for defining what constitutes legal work and when and to what extent disgorgement is appropriate.

Instead, Plaintiffs have relied upon deceptively expurgated deposition quotations, out of context court transcripts, a mischaracterization of this Court's earlier decision, and newly stated hopes to amend the complaint yet again to add a time-barred claim. It is time for this case to end. This Court should award summary judgment in favor of Moss Codilis.

Dated: January 18, 2011

MOSS, CODILIS, STAWIARSKI, MORRIS, SCHNEIDER & PRIOR, LLP

By: /s/ David J. Chizewer
David J. Chizewer (ARDC 06206747)
Jon E. Klinghoffer (ARDC 06270082)
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 201-4000

Thomas P. Battistoni (TPB 8012)
SCHIFF HARDIN LLP
900 Third Avenue, 23rd Floor
New York, New York 10022
(212) 753-5000

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he caused a copy of **MOSS CODILIS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be served via email and via the Court's ECF/electronic mailing system on January 18, 2011 upon the following:

Paul S. Grobman
Law Offices of Paul S. Grobman
555 – Fifth Avenue
17th Floor
New York, New York  10017

Himanshu R. Sharma
Neal A. DeYoung
Sharma & DeYoung LLP
Suite 2002
286 Madison Avenue
New York, New York  10017

Kenneth F. McCallion
McCallion & Associates LLP
24 West 40th Street
New York, New York  10018

W. Hans Kobelt
Daniel A. Pollack
McCarter & English, LLP
27th Floor
245 Park Avenue
New York, New York  10167

/s/ David J. Chizewer
David J. Chizewer