UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------x

LORI JO **VINCENT**, RUTH ANN GUTIERREZ and
LINDA U. GARRIDO and JOHN GARRIDO on behalf of
themselves and all others similarly situated,

                                        Plaintiffs,

                                                                    03 Civ. 2876 (JGK)

            -against-


**THE MONEY STORE**, TMS MORTGAGE, INC.,
HOMEQ SERVICING CORP., and MOSS, CODILIS,
STAWIARSKI, MORRIS, SCHNEIDER & PRIOR, LLP,

                                        Defendants.
-----------------------------------------------------------------------------x


## THE MONEY STORE DEFENDANTS'
## MEMORANDUM IN OPPOSITION TO
## <u>PLAINTIFFS' MOTION FOR RECONSIDERATION</u>

McCARTER & ENGLISH, LLP
    By Daniel A. Pollack (DP 9207)
    *dpollack@mccarter.com*
    Edward T. McDermott (EM 7243)
    *emcdermott@mccarter.com*
    W. Hans Kobelt (WK 1847)
    *wkobelt@mccarter.com*
245 Park Avenue, 27th Floor
New York, New York 10167
    Tel. (212) 609-6800
    Fax (212) 609-6921

Attorneys for Defendants
    The Money Store,
    TMS Mortgage, Inc. and
    HomEq Servicing Corp.

Dated:  January 20, 2011

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT……………………………………………….    1

LEGAL ARGUMENT…………………………………………………..    2

POINT I -  Plaintiffs' Motion for Reconsideration is Untimely…………………………    2

POINT II - Plaintiffs Have Failed to Prove a Compelling Reason to Ignore
      the Ten-Day Time Limit…………………………………………..    3

      1. The Strict Test for Reconsideration………………………………    3

      2. Plaintiffs' Motion Fails the Strict Test for Reconsideration…………..    3

    A. The "new evidence" would not have changed the outcome of the
      prior ruling…………………………………………………    4

    B. Plaintiffs' evidence is not "newly discovered" evidence………………….    7

      1. "mass processing"………………………………………    7
      2. no legal analysis……………………………………………    9
      3. The Money Store's awareness and approval……………………    10

    C.  Plaintiffs have not shown their own due diligence…………………………    11

CONCLUSION………………………………………………………………    12

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*British Caledonian Airways, Ltd. v. First State Bank of Bedford, Texas,*
    819 F.2d 593 (5th Cir. 1987) .................................................................................5

*Casper v. Lew Lieberbaum & Co., Inc.,*
    182 F.Supp.2d 342 (S.D.N.Y. 2002) ....................................................................2

*Church of Scientology Int'l. v. Time Warner, Inc.,*
    1997 U.S. Dist. LEXIS 12839 ..........................................................................1, 2

*Clinton v. Brown & Williamson Holdings, Inc.,*
    652 F.Supp.2d 528 (S.D.N.Y. 2009) ....................................................................2

*Harris v. Owens-Corning Fiberglas Corp.,*
    102 F.3d 1429 (7th Cir. 1997) ...........................................................................4

*Itar-Tass Russian News Agency v. Russian Kurier,*
    1999 U.S. Dist. LEXIS 3575 (S.D.N.Y. March 25, 1999) ...................................7

*Lorusso v. Borer,*
    260 Fed. Appx. 355, 2008 U.S. App. LEXIS 838 ..............................................11

*Maxwell v. Brian Fischer,*
    2008 U.S. Dist. LEXIS 70416 (E.D.N.Y. August 22, 2008) .................................4

*Mazzei v. The Money Store,*
    349 F.Supp. 2d 651 (S.D.N.Y. 2004) .............................................................5, 6, 7

*Nassau - Suffolk Ice Cream, Inc. v. Integrated Resources,*
    683 F.Supp. 453 (S.D.N.Y. 1988) (Pollack, J.) .................................................4, 5

*Official Comm. Of the Unsecured Creditors of Color Title, Inc. v. Coopers & Lybrand,*
    322 F. 3d 147 (2d Cir. 2003) ................................................................................1

*Palmer v. Sena,*
    474 F.Supp. 2d 353 (D. Conn. 2007) ...................................................................5

*Richman v. W. L. Gore & Assocs., Inc.,*
    988 F.Supp.753 (S.D.N.Y. 1997) .........................................................................2

*In re Ski Train Fire,*
    224 F.R.D. 543 (S.D.N.Y. 2004) .........................................................................1

MEI 11069977v.3

*Snall v. City of New York,*
    242 F. 3d 367, 2000 U.S. App. LEXIS 33349 (2d Cir. December 15, 2000)............................2

*Tatum v. City of New York,*
    2009 U.S. Dist. LEXIS 35391 ...........................................................................................3

*Trafalgar Power Inc. v. Aetna Life Ins. Co.,*
    2009 U.S. Dist. LEXIS 88279 .......................................................................................4, 5

*U.S.A. v. Int'l Brotherhood of Teamsters,*
    247 F.3d 370 (2d Cir. 2000)...............................................................................................4

*U.S. Fidelity & Guaranty Co. v. Braspetro Oil Services Co.,*
    2001 U.S. Dist. LEXIS 715 ..............................................................................................10

*U.S. v. All Right, Title and Interest in Property,*
    753 F.Supp. 121 (S.D. N.Y. 1990) ....................................................................................5

*U.S. v. Mercedes,*
    179 F.R.D. 136 (S.D.N.Y. 1998) .....................................................................................11

*Vincent v. The Money Store,*
    402 F. Supp. 2d 501 (S.D.N.Y. 2005)........................................................................ *passim*


## STATUTES AND OTHER AUTHORITIES

Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* .............................................. *passim*

Local Rule 6.3 of the United States District Courts for the Southern
and Eastern Districts of New York ...................................................................1, 2, 7, 11

Fed. R. Civ. P.
    Rule 54(b) .......................................................................................................................1
    Rule 59 ............................................................................................................................5
    Rule 59(e).....................................................................................................................1, 5
    Rule 60(b) .......................................................................................................................1
    Rule 60(b)(2)...................................................................................................................5

*Moore's Federal Practice 3d*, § 60.42[2] .............................................................................5

*Wright, Miller & Kane*, § 2859, at p. 302 (1995 ed.).........................................................5

## PRELIMINARY STATEMENT

Plaintiffs' motion in 2010 for reconsideration of the Court's decision in 2005 dismissing the claims under the Fair Debt Collection Practices Act ("FDCPA") is untimely and without merit.[1]

First, the motion is five years late. Under clear precedent and Local Rule 6.3, plaintiffs had ten days - not five years - to file their motion for reconsideration, and failed to meet that deadline.

Second, the narrow exception to that ten-day time limit on which plaintiffs rely - "newly discovered evidence" - is not applicable at bar:

(a)  plaintiffs' supposed new evidence "which [allegedly] flatly contradicts the evidence before the court on the prior motion" about the role of the Moss Codilis law firm (Pls.' Memo, p.1) does not meet the requirements for the exception because it would not alter the outcome of the 2005 decision by Judge Sprizzo. Indeed, Judge Sprizzo explicitly ruled that evidence on the same subject matters covered by the purported new evidence was irrelevant to his decision;

(b)  plaintiffs' proffered evidence is not, in fact, "newly discovered" but rather is duplicative and/or cumulative of the evidence considered by Judge Sprizzo. At most, any differences between the new evidence and the evidence submitted on the motion for partial

---

[1]  Although plaintiffs have moved for reconsideration under Rule 54(b) their motion is, in truth, a motion for reargument or reconsideration more properly brought and considered under Rule 59(e) and Local Rule 6.3. Even if considered a motion under only Rule 54(b), the relevant criteria for determining whether the prior ruling should be reviewed are substantially the same as for Rule 59(e), Rule 60(b) and Local Rule 6.3 motions. *Church of Scientology Int'l. v. Time Warner, Inc.,* 1997 U.S. Dist. LEXIS 12839, at **5-7 (S.D.N.Y. August 27, 1997) (ten-day period is applied to reconsideration motion nominally under Rule 54(b)); *Official Comm. Of the Unsecured Creditors of Color Title, Inc. v. Coopers & Lybrand,* 322 F. 3d 147, 167 (2d Cir. 2003); *In re Ski Train Fire,* 224 F.R.D. 543, 545-46 (S.D.N.Y. 2004).

1

summary judgment before Judge Sprizzo are matters of emphasis and degree rather than material contradiction; and

(c)   plaintiffs have not explained their failure to present this evidence in 2005.  As early as 2003 they deposed the person whose declaration they are now proffering to the Court.  They failed to ask her questions which, if asked, would have generated evidence they now trumpet as "newly discovered."   In such circumstances, the Courts properly deny motions for reconsideration.

## LEGAL ARGUMENT

### POINT I -
### Plaintiffs' Motion for Reconsideration is Untimely

Motions to vacate, modify or reconsider a prior decision must be made within ten days of the Court's contested ruling, pursuant to the guidelines in Local Rule 6.3 for motions for reconsideration.  *See, e.g. Snall v. City of New York*, 242 F. 3d 367, 2000 U.S. App. LEXIS 33349, at *8 (2d Cir. December 15, 2000); *Clinton v. Brown & Williamson Holdings, Inc.*, 652 F. Supp. 2d 528, 530 (S.D.N.Y. 2009); *Church of Scientology Int'l. v. Time Warner, Inc.*, 1997 U.S. Dist. LEXIS 12839, at **6-8 (S.D.N.Y. 1997); *Richman v. W. L. Gore & Assocs., Inc.*, 988 F. Supp.753, 755 (S.D.N.Y. 1997); *Casper v. Lew Lieberbaum & Co., Inc.*, 182 F. Supp. 2d 342, 346 (S.D.N.Y. 2002).

Thus, the Court in *Clinton* (652 F. Supp. 2d at 530) recognized that the ten-day limit governs a motion for reconsideration, stating :

> In this District, a motion to reargue, modify or vacate a prior decision must comply with Local Civil Rule 6.3, which "requires a party to submit a motion to reconsider a decision within ten days of

the docketing of the Court's original determination, unless the movant presents a compelling reason to ignore the time limit. (citation omitted)."

At bar, plaintiffs have not filed their motion within the ten-day period.  As demonstrated below, they have also failed to provide "a compelling reason to ignore the time limit." (*Id.*)

**POINT II -**

**Plaintiffs Have Failed to Prove a**
<u>**Compelling Reason to Ignore the Ten-Day Time Limit**</u>

### 1. <u>The Strict Test for Reconsideration</u>

As the Court stressed in *Tatum v. City of New York*, 2009 U.S. Dist. LEXIS 35391, at **2-4 (S.D.N.Y. April 9, 2009), reconsideration is an extraordinary remedy which is granted only if the movant satisfies a strict standard:

> Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and consideration of scarce judicial resources."  Local Rule 6.3 requires that, in a motion for reconsideration, the movant must "set[] forth concisely the matters or controlling decisions which counsel believes the court has overlooked." (citations omitted) "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data…that might reasonably be expected to alter the conclusion reached by the court." (citations omitted) "A party should not use a motion for reconsideration to reargue those issues already considered when a party does not like the way the original motion was resolved." (citations omitted)

### 2. <u>Plaintiffs' Motion Fails the Strict Test for Reconsideration</u>

Plaintiffs' reason for the Court's reconsideration of Judge Sprizzo's 2005 award of partial summary judgment — purported new evidence of a "Moss' Codilis[ ] representation that the sending of the breach letters involved no legal judgment, and was an exercise in mass processing" (Pls.' Memo, p. 10) — does not satisfy that strict standard.  First, the proffered

3

evidence is not sufficient because it would not have changed the outcome of the Court's 2005 ruling on plaintiffs' claims under the FDCPA.   Second, the evidence is not newly discovered evidence but is duplicative and/or cumulative of the witness' earlier deposition testimony which the Court considered on the partial summary judgment motion.   In any event, plaintiffs had the opportunity to obtain the purported new evidence, but did not act diligently to take advantage of that opportunity[2]

## A.

### The "new evidence" would not have changed the outcome of the prior ruling

Plaintiff's purported "new evidence" is not sufficient for the Court's reconsideration because it is not "of such importance that it probably would have changed the outcome" of the 2005 ruling granting partial summary judgment to the Money Store Defendants on the FDCPA claim.   *See*, e.g., *U.S.A. v. Int'l Brotherhood of Teamsters*, 247 F. 3d 370, 392 (2d Cir. 2000); *Trafalgar Power Inc. v. Aetna Life Ins. Co.*, 2009 U.S. Dist. LEXIS 88279, at **12-13 (N.D.N.Y. September 25, 2009), *aff'd in rel. part*, 227 F. 3d 8, 14-15 (2d Cir. 2000); *Maxwell v. Brian Fische*r, 2008 U.S. Dist. LEXIS 70416, at *5 (E.D.N.Y. August 22, 2008); *Nassau - Suffolk Ice Cream, Inc. v. Integrated Resources,* 683 F. Supp. 453, 454 (S.D.N.Y. 1988) (Pollack, J.).   *See Harris v. Owens-Corning Fiberglas Corp.*, 102 F. 3d 1429, 1434-35 (7th Cir. 1997) (reconsideration motion denied where plaintiff would have the "same problem" with its

---

[2] Plaintiffs also state that their evidence "strongly indicates that Money Store (*sic*) may have misled the court about the nature of Moss Codilis' services for the Money Store" (Pls.' Memo, p.1).   Plaintiffs wisely do not attempt to develop that baseless innuendo.

claim even if motion were granted); *British Caledonian Airways, Ltd. v. First State Bank of Bedford, Texas*, 819 F. 2d 593, 601 (5th Cir. 1987).[3]

Thus, the court in *Nassau - Suffolk Ice Cream, Inc.* (683 F. Supp. 2d at 454) denied a motion for reconsideration based on "newly discovered evidence" because the moving party had not shown that the "newly discovered piece of evidence would somehow change the result of the former ruling in an antitrust action", stating:

> The moving party has not shown that the newly discovered piece of evidence would somehow change the result of the former ruling. The insufficiency of the investigation which preceded bringing in Babb as a party has not been overcome. The movant's contention at oral argument that Babb stood to earn "three times as much" if the machines were ordered by and sold to franchises is a mere assumption and, moreover, is irrelevant to an antitrust claim and could not warrant pleading an antitrust claim thereon. Steve's payment covering Babb's development costs if orders were not placed by franchisees would not ground an antitrust tie-in claim. It, per se, would not have provided counsel with any indication for assertion of an unreasonable restraint of competition sufficient for an antitrust charge. (emphasis supplied)

*Trafalgar Power, 2009* U.S. Dist. LEXIS 88279, at **12-13 (reconsideration motion denied because, *inter alia*, purported new evidence about Swiss bank accounts was irrelevant to the issues decided in the prior ruling).

Here,[4] Judge Sprizzo expressly ruled that evidence about the same subject matter underlying plaintiffs' motion for reconsideration - *i.e.* whether Moss Codilis had done legal

---

[3] It is well settled that the same standard applies to motions regarding newly discovered evidence under Rule 59(e) and Rule 60(b)(2). *See, e.g. Palmer v. Sena*, 474 F. Supp. 2d 353, 354 (D. Conn. 2007); *U.S. v. All Right, Title and Interest in Property*, 753 F. Supp. 121, 126 (S.D.N.Y. 1990); *Wright, Miller & Kane*, § 2859, at p. 302 (1995 ed.) ("The same standard applies to motions on the ground of newly discovered evidence whether they are made under Rule 59 or Rule 60(b)(2),..."); *Moore's Federal Practice 3d*, § 60.42[2], at pp. 121-23.

[4] The December 7, 2005 opinion in this action (402 F. Supp 2d at 502-03) expressly adopted the reasoning in the Court's earlier opinion on the parallel claim under the FDCPA in *Mazzei v. The Money Store*, 349 F. Supp. 2d 651

analysis and exercised legal judgment in its work for the Money Store defendants - was <u>not</u> <u>relevant</u> to the legal issue on which his grant of partial summary judgment turned - i.e. whether the Money Store should be considered a debt collector under the FDCPA pursuant to the "false name exception," stating (349 F. Supp. 2d at 661):

> **Plaintiff's arguments that** Moss Codilis attorney Christina Nash was not authorized to practice law, that the breach letters were not really from Moss Codilis in any meaningful sense, that **Moss Codilis did not** verify the validity of the debt or **exercise any professional judgment in doing its work, played little role in handling responses to the breach letters,** and did not take legal action to pursue The Money Store's debts, **are not relevant to the question of whether The Money Store should be considered a debt collector under the false name exception of the FDCPA because they fail to demonstrate that Moss Codilis was The Money Store's alter ego.** Pl.'s Mem. at 6-7, 8-13, 15-16; see *Maguire*, 147 F.3d at 234-35, 236. **There is no requirement in the FDCPA that debt collectors be attorneys** and therefore, even if Moss Codilis failed to meet the relevant standard of attorney involvement, an issue not presented by the case before this Court, Moss Codilis would still be considered a debt collector under the FDCPA. (emphasis supplied)

Accordingly, since, under the governing legal standard in the December 7, 2005 opinion, plaintiffs' motion is based on irrelevant evidence and, thus, would not have changed the outcome of that ruling, this Court should deny the motion for reconsideration.

Given Judge Sprizzo's express ruling that the plaintiffs' evidence about the extent to which Moss Codilis exercised legal judgment and whether "the breach letters were not really from Moss Codilis in any meaningful sense" was irrelevant (349 F. Supp. 2d at 661), plaintiffs' motion for reconsideration is understood best as an improper attempt to simply reargue the

---

(S.D.N.Y. 2004). In both cases, plaintiffs did not assert an FDCPA claim against Moss Codilis. Accordingly, this memorandum will treat the reasoning in the *Mazzei* opinion as the reasoning in the challenged December 7, 2005 opinion.

controlling law on their FDCPA claims.[5]   Towards that end, plaintiffs' legal memorandum presents a prolonged, partisan account of what they call the controlling law on their claims – not the law for granting reconsideration (*see* Pls.' Memo, pp. 10-19).

Plaintiffs' focus on the legal standard for their claims, however, also reveals a fundamental logical flaw in their motion:  their contention that their proffered evidence about Moss Codilis merits reconsideration of the legal standard for the "false name exception" rests on the false premise that a <u>factual</u> error (assuming *arguendo* that there was a factual error) in a prior ruling requires reconsideration of the federal <u>legal</u> standard used in that prior ruling.   That is simply a *non sequitur* and not supported by any case cited by plaintiffs.

Accordingly, this Court should apply Local Rule 6.3 and follow its own directive in *Itar-Tass Russian News Agency v. Russian Kurier*, 1999 U.S. Dist. LEXIS 3575, at *3 (S.D.N.Y. March 25, 1999):

> "[Local Rule 6.3] is narrowly and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." (citations omitted)

## B.

### Plaintiffs' evidence is not "newly discovered" evidence

Another reason why the Court should not reconsider Judge Sprizzo's prior decision is that the evidence in the Nash Declaration is not truly "newly discovered":

1. **"mass processing"** – Plaintiffs' contend that Moss Codilis in the Nash Declaration "admits" that:

---

[5]   This motion is the third time plaintiffs' counsel have asked the Court to rule on the validity of their legal theory for claims against the Money Store Defendants under the FDCPA.  The two prior efforts were rejected in *Mazzei* (349 F. Supp. 2d 651) and *Vincent* (402 F. Supp. 2d 501).

MEI 11069977v.3

its role in sending out individual letters "was an exercise in mass processing" (Nash Decl. ¶ 6).

Plaintiffs, however, excised the sentences in the Nash Declaration immediately following the reference to "mass processing." They provide the meaning of that phrase :

> Specifically, TMS would send information regarding defaulted mortgages to Moss Codilis electronically, typically once per month, in batches that usually exceeded 1000 borrowers.  TMS required that the Breach Letters to these borrowers be mailed the next day.

That information was not new as Ms. Nash, at her deposition,[6] provided such details about the Moss Codilis system for generating Breach Letters.  She stated that Moss Codilis had received the information on defaulted mortgages "in an electronic data file from The Money Store" (Nash Depo., p. 49; see also pp. 63, 74).  She then added that the Breach Letters sent to individual borrowers were created by merging data on an Excel format with a template letter "on a Word Document" (Nash Depo., pp. 99-100).  She would then review certain letters for accuracy (Nash Depo., pp. 100-01, 202-03).  In the later years of its work for The Money Store, Moss Codilis installed computer software which replaced the manual review of the data on the defaulted mortgages covered by the Breach Letters for accuracy and completeness (Nash Depo. pp. 137-38, 142-43).

Ms. Nash also gave testimony about how Moss Codilis engaged in a sizable volume of correspondence with borrowers on defaulted mortgages.  She testified that Moss Codilis sent 88,932 Breach Letters over a multi-year period (Nash Depo., pp. 46-47).  She also said that while she did not review every Breach Letter sent by Moss Codilis (Nash Depo., pp. 202-03), she reviewed probably over 1,000 letters in 2000, a year during which she was supervising paralegals

---

[6]   The transcript of the Nash Deposition is attached as Exhibit B to plaintiffs' Declaration in Opposition to Defendant Moss Codilis' Motion for Summary Judgment dated December 13, 2010.  If necessary, the Money Store Defendants request that the Court take judicial notice of that deposition in the files of this case.

8

engaged in that work rather than actually doing all the review work herself, as she had done previously (Nash Depo., pp. 152-53).  Furthermore, she stated that the Breach Letters were sent out the day after Moss Codilis received the information about defaulted mortgages from The Money Store (Nash Depo., p. 114).  Those numbers and practices are consistent with "mass processing" and the batches in excess of 1000 letters per month referred to in the Nash Declaration.

     **2.   <u>no legal analysis</u>** – Plaintiffs' second piece of evidence is also not "newly discovered."  Plaintiffs' statement that Moss Codilis "admits" that:

> it engaged in **little, if any, legal analysis** of each borrower's information or of the individual Breach Letters before sending out the letters. (emphasis supplied) (Nash Decl. ¶ 6).

In fact, Nash gave very similar testimony at her deposition.  When asked if she made any legal analysis of the information in a borrower's account, she promptly corrected the questioner's description of the work as "legal" analysis.  Thus, she stated (Nash Depo., p. 44):

> Q.    When you said that a lawyer would be involved in pulling this kind of questionable loan, what legal analysis did you apply for examining that information?
>
> A.    Oh, **I don't know that it was a legal analysis.  It was an analysis of the account.**
>
> Q.    Was it an analysis of the numbers, essentially?
>
> A.    Right.
>
> Q.    Was it an analysis of the underlying loan documents for that individual borrower?
>
> A.    Sometimes. (emphasis supplied)

Ms. Nash also characterized her review of the information about borrowers as one for accuracy and completeness (Nash Depo., pp. 64-66; *see also* pp. 51, 53-54).  Indeed, Ms. Nash said that

the check for the accuracy and completeness of the information on the borrower "had nothing to do with <u>analyzing</u> the accounts since … analyzing the accounts had already taken place" (Nash Depo., pp. 150-51).

### 3. **The Money Store's awareness and approval**

Finally, Moss Codilis' "admission" that The Money Store was aware of and had approved Moss Codilis' "process" is not "newly discovered." Nash testified that The Money Store and Moss Codilis had discussed the procedures it used to process and create letters (Nash Depo., p. 144). She also testified repeatedly about how one would "escalate" problems to Money Store employees to get the problem resolved (Nash Depo., pp. 83-85). And, she testified that Moss Codilis worked with The Money Store's General Counsel to create templates for the Breach Letters (Nash Depo., pp. 99, 125-27).

In sum, plaintiffs' proffered evidence is not "newly discovered" but rather is duplicative and/or cumulative of evidence available to plaintiffs and submitted to Judge Sprizzo before his December 2005 decision. This Court, when faced with a similar attempt in *U.S. Fidelity & Guaranty Co. v. Braspetro Oil Services Co.*, 2001 U.S. Dist. LEXIS 715, at ** 6-7 (S.D.N.Y. January 29, 2001), to use "new" evidence to create a conflict with evidence previously used for a decision, denied the motion for reconsideration because:

> [A]lthough the deposition testimony was not entirely consistent with [the previously submitted] declaration, the distinctions between the witnesses' portrayals of the document production were for the most part, a matter of degree rather than of material contradiction.

This Court should rule the same here, especially where the old and "new" evidence are "entirely consistent."

**C.**

### Plaintiffs have not shown their own due diligence

Reconsideration is not granted unless plaintiffs show that they were justifiably ignorant of the proffered facts, despite their own due diligence to obtain them, before the contested decision. At bar, plaintiffs do not, and cannot, proffer evidence of their due diligence. Indeed, their own counsel noticed the deposition of Ms. Nash in 2003 and examined her for over 210 pages of transcript. They could have obtained (and in some instances did) the "new" evidence by simply asking Ms. Nash questions focused on the specific points now trumpeted by them. Their own tactics and failure to ask such questions do not allow reconsideration of a decision five years later. *See, e.g., Lorusso v. Borer*, 260 Fed. Appx. 355, 357, 2008 U.S. App. LEXIS 838, at **3-4 (2d Cir. January 15, 2008); *U.S. v. Mercedes*, 179 F.R.D. 136, 139 (S.D.N.Y. 1998).

\*     \*     \*

The cases cited by plaintiffs do not support their motion for reconsideration. None dealt with purported new evidence about a subject matter which the Court had previously held was not relevant to the ruling contested by the movant. None even considered Local Rule 6.3 or its ten-day time limit, except to use it to deny the reconsideration motion. None dealt with whether the new evidence was actually new or cumulative or whether plaintiff had exercised due diligence in obtaining the evidence and seeking the Court's reconsideration.

## CONCLUSION

Plaintiffs' motion for reconsideration should be denied.

Dated:  January 20, 2011
        New York, New York

                           Respectfully submitted,

                           McCARTER & ENGLISH, LLP

                           By: _Daniel A. Pollack_
                                Daniel A. Pollack (DP 9207)
                                *dpollack@mccarter.com*
                                Edward T. McDermott (EM 7243)
                                *emcdermott@mccarter.com*
                                W. Hans Kobelt (WK 1847)
                                *wkobelt@mccarter.com*
                           245 Park Avenue, 27th Floor
                         New York, New York 10167
                              Tel. (212) 609-6800
                              Fax (212) 609-6921

                           *Attorneys for Defendants*
                              The Money Store,
                              TMS Mortgage, Inc. and
                              HomEq Servicing Corp.

MEI 11069977v.3