UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LORI JO VINCENT, RUTH ANN GUTIERREZ, and
LINDA U. GARRIDO, and JOHN GARRIDO, on behalf
of themselves and all others similarly situated,

      Plaintiffs,

 -- against --

THE MONEY STORE, TMS MORTGAGE, INC.,
HOMEQ SERVICING CORP., and MOSS, CODILIS,
STAWIARSKI, MORRIS, SCHNEIDER
& PRIOR, LLP,

      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 03 Civ. 2876 (JGK)

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION FOR RECONSIDERATION

Neal A. DeYoung (ND 3098)
H. Rajan Sharma (HS 3598)
SHARMA & DEYOUNG LLP
286 Madison Avenue, Suite 2002
New York, New York 10017
(212) 561-1907

Paul S. Grobman (PG 1876)
The Law Offices of Paul Grobman
555 Fifth Avenue, 17th floor
New York, NY 10017
(212) 983-5880

Attorneys for Plaintiffs

## **PRELIMINARY STATEMENT**

Plaintiffs respectfully submit this reply memorandum of law in further support of their motion to reconsider the Decision and Order dated December 7, 2005 granting summary judgment to The Money Store and TMS Mortgage Inc. (collectively "Money Store") dismissing the claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA").

The motion at bar is timely because it is based on "new evidence" in the form of a declaration submitted by Christina Nash ("Nash Declaration") revealing Money Store's Breach Letter Program as "an exercise in mass processing" with "little, if any legal analysis of each borrower's information or the individual breach letters." Declaration of Christina Nash dated November 11, 2010 ("Nash Decl."), ¶6). Moreover, the Nash Declaration not only acknowledged that Money Store was aware "of the process that [Moss Codilis] employed to prepare and send the Breach Letters," but crucially admitted that Money Store had in fact "approved of that process." (Nash Decl., ¶6). These statements by Money Store's agent are the very antithesis of Money Store's prior position taken in this action and are sufficiently material to the FDCPA claim to warrant reconsideration and reinstatement.

Money Store contends that the motion to reconsider should be denied based on (i) its contention that the Nash Declaration is not "new evidence," (ii) that such evidence as is proffered would not have altered the outcome even if reconsideration were granted, and (iii) that the "purportedly new evidence" could have been discovered earlier. Money Store, however, makes no showing whatsoever that the "new evidence' could have been obtained earlier by plaintiffs. The remaining arguments fail as a matter of law.

The new disclosures of the Nash Declaration constitute newly obtained evidence that is unquestionably material to liability under the FDCPA. As plaintiffs demonstrated in their moving papers, *every single court* which has considered the issue has held that a creditor may be subject to FDCPA liability for letters sent out by an attorney on its behalf if the attorney "was not genuinely involved in the effort to collect [the creditor's] debts." Nielsen v. Dickerson, 307 F.3d 623, 634 (7th Cir. 2002). Under Nielsen v. Dickerson, there can be no question that Money Store would be subject to liability under the false name exception of the FDCPA if the facts in the Nash Declaration were ultimately credited by the factfinder.

## ARGUMENT

### THE RULE 54(B) RECONSIDERATION MOTION SHOULD BE GRANTED

This "Court has authority to revise decisions entered before the entry of a final judgment." In re Ski Train Fire, 224 F.R.D. 543, 545-46 (S.D.N.Y. 2004). Rule 54(b) permits an earlier decision to be reconsidered where "there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Official Comm. of the Unsecured Creditors of Color Tile v. Coopers & Lybrand, 322 F.3d 147, 167 (2d Cir. 2003). Here, the new evidence strongly suggests that Money Store may have deliberately misled the Court on the prior motion for summary judgment as to the nature of Moss Codilis' services. Coupled with the controlling authority that was erroneously found inapplicable in the earlier decision, reconsideration should be granted as to the FDCPA claim.

## A. **The Nash Declaration Is "New Evidence"**

Money Store argues that the Nash Declaration's sworn affirmance on behalf of Moss Codilis -- that preparation of the individual breach letters "was an exercise in mass processing," that it involved no legal analysis, and that Money Store was aware of the process -- is not "new evidence." The contention is absurd in light of the record.[1] In his prior dismissal of the FDCPA claim, Judge Sprizzo expressly found that the Money Store defendants "contend that Moss Codilis attorney Christina Nash made legal determinations on the Money Store's behalf before sending any breach letter[.]" Mazzei v. Money Store, Inc., 349 F.Supp.2d 651, 658 (S.D.N.Y. 2004).

The stark factual clash between (i) Nash's prior testimony and Money Store's Rule 56.1 Statement on the prior motion, on the one hand, and (ii) the new Nash Declaration, on the exact same issue prove that these differences are not "a matter of degree" but are factual polar opposites evidencing "material contradiction." Cf. U.S. Fidelity & Guaranty Co. v. Braspetro Oil Serv. Co., 2001 U.S. Dist. Lexis 715, *7 (S.D.N.Y. 2001). The Nash Declaration constitutes new testimony which not only directly contradicts her prior deposition testimony, but also Money Store's characterization of Moss Codilis's services on the prior motion to dismiss the FDCPA claim. See Capitol Records, Inc. v. MP3Tunes, LLC, 2009 U.S. Dist. Lexis 96521, *15, *19-*28 (S.D.N.Y. 2009) (granting motion to reconsider earlier motion to dismiss under

---

[1] See Money Store Rule 56.1 Statement annexed to plaintiffs' original motion papers as Exh. C, ¶44 (emphasis added) ("Moss Codilis, as collection counsel (as well as debt collector), *made its own independent legal determination* that collection of the debt was proper and legal"); ¶42 (emphasis added) ("Moss Codilis did not simply sell its name to The Money Store, or put its name on a letterhead and "front" for The Money Store, but *rather made its own determination about whether a debt was owed* and a letter ... would appropriately be sent to [a] debtor"....); ¶18 (emphasis added) ("Christina Nash of Moss Codilis performed these tasks; *she made the legal determinations involved* and oversaw the administrative handling of the debtor accounts with the help of paralegals working under her supervision").

3

Rule 54(b) on the basis of new testimony which directly contradicted testimony before the court on the prior motion).

Money Store does not attempt to identify anything in the record which even hinted at, let alone affirmed under oath, that Moss Codilis' services on behalf of Money Store were actually "an exercise in mass processing." As Money Store's Rule 56.1 Statement submitted on the prior motion and Nash's deposition testimony demonstrate, both Money Store and Moss Codilis repeatedly emphasized the legal determinations made by Nash. Indeed, Nash became offended when counsel for plaintiffs asked her whether these functions were merely "ministerial":

> Q. Weren't these ministerial functions?
> MR. KAMINSKY: Objection to the form of the question.
> **NASH:** No.
> MR. CHIZEWER: Same objection.
> **NASH:** And I actually resent that, that I, *as an attorney*, rolled up my sleeves and got actively *involved in the day-to-day processing of an important client* – I resent the fact that you're saying that *I'm not using my legal expertise for that.*
> Q. (By Mr. Grobman) And I want to know how your legal expertise was used.
> **NASH:** I have told you over and over again. We have been over this how many times? Do you want to do it again? Do you want me to go through it again? Because, honestly, *I really resent the fact that you're telling me that you don't feel that my independent legal judgment was utilized*, because trust me –
> Q. That's not what I –
> **NASH:** Because, trust me, it was.

(DeYoung Decl. Exh. B, at pp. 209-10 (emphasis added)).

Money Store also argues that the Nash Declaration's representation that Money Store knew that there was "little, if any, legal analysis of each borrower's information or of the individual breach letters" is not new evidence. (Nash Decl., ¶6, annexed as Exh. E

4

to Motion for Reconsideration). Nevertheless, Money Store does not point to anything in the record preceding this motion where either Moss Codilis or Money Store acknowledged that the Breach Letter Program was "an exercise in mass processing" and that no legal review of the breach letters was being made. In fact, in its Rule 56.1 Statement on the prior motion, Money Store represented just the opposite:

- "Moss Codilis, as collection counsel (as well as debt collector), *made its own independent legal determination* that collection of the debt was proper and legal" (Money Store Rule 56.1 Statement annexed to plaintiffs' original motion papers as Exh. C, ¶44 (emphasis added);

- "Moss Codilis did not simply sell its name to The Money Store, or put its name on a letterhead and "front" for The Money Store, but *rather made its own determination about whether a debt was owed a*nd a letter … would appropriately be sent to [a] debtor"….) (Rule 56.1 Statement, Exh. C to Original Motion, ¶42 (emphasis added)

- "Christina Nash of Moss Codilis performed these tasks; *she made the legal determinations involved* and oversaw the administrative handling of the debtor accounts with the help of paralegals working under her supervision" (Rule 56.1 Statement, Exh. C to Original Motion, ¶18 (emphasis added)

The motion for reconsideration should be granted accordingly based on the new evidence contained in the Nash Declaration that starkly contradicts in absolute terms both her own deposition testimony and Money Store's Rule 56.1 Statement on the motion seeking dismissal of the FDCPA claim. See Capitol Records, 2009 U.S. Dist. Lexis 96521, *26 (granting motion to reconsider under Rule 54(b) where the new evidence indicates that a party may have misled the court in its submissions on the prior motion). In view of the above, the FDCPA claim should be reinstated against Money Store.

### B. The New Evidence Compels Reinstatement of the FDCPA Claim Under Controlling Authorities From This Circuit And Other Federal Circuits.

Money Store contends that the Nash Declaration would not change the outcome of the prior motion if considered by this Court, because the Decision had held that

"whether Moss Codilis had done legal work and exercised legal judgment in its work for the Money Store defendants" was "not relevant" to the question of whether Money Store could be liable under the false-name exception of the FDCPA. (Money Store Br., pp. 5-6).

Money Store does not dispute that Judge Sprizzo may have made a "factual error" by holding that Nielsen v. Dickerson, 307. F.3d 623 (7th Cir. 2002) is "inapplicable because, as opposed to this case, the plaintiffs in Nielsen sued the law firm collecting the debt." Mazzei, 349 F.Supp.2d at 659, fn 5, adopted in Vincent v. Money Store, Inc., 402 F.Supp.2d 501, 503 (S.D.N.Y. 2005). As applied to Vincent, that conclusion was clear error, since the law firm (Moss Codilis) *had* been sued and *was* a party in the Vincent case. See, Money Store Mem. at p. 7.

Money Store attempts to parse it too finely by arguing that it is a "false premise that a factual error… in a prior ruling requires reconsideration of the federal legal standard used in that prior ruling." Money Store Brief, p. 7. Money Store argues in effect that the new evidence must be weighed under the legal standard applied in the prior decision, presumably even if that legal standard was erroneous. The materiality of the new evidence, however, in terms of whether or not it would change the outcome of the prior decision is always made on the governing law, i.e. the applicable legal standard. Elliott Assocs., L.P. v. Banco de la Nacion, 194 F.R.D. 116, 120 (S.D.N.Y. 2000) ("Materiality is defined by the governing substantive law."). In order to determine whether or not reconsideration is warranted, this Court must weigh the new evidence under the correct legal standard applicable to the false name exception under the FDCPA

6

to determine whether or not a claim has been stated. Under that standard, the new evidence warrants reinstatement of the FDCPA claim under the false name exception.

Money Store does not even refer to – much less attempt to distinguish – the uniform authority holding that a creditor can be liable for letters sent on attorney letterhead where, as here, the attorney admits that the preparation of the individual letters was "an exercise in mass processing" involving no legal judgment.[2] See also, Miller v. Upton, Cohen & Slamowitz, 687 F.Supp.2d 86, 96 (E.D.N.Y. 2009)(holding that Nielsen

---

[2] See also Nielsen, supra; Soto v. Ocwen Bank, 2003 WL 22391250 (N.D. Ill. 2003) (denying summary judgment to creditor under false name exception to FDCPA where "the facts suggest that Moss Codilis attorneys may not have had meaningful involvement in Plaintiff's case prior to sending the dunning letters"); White v. Goodman, 41 F. Supp. 2d 794, 796 (N.D. Ill. 1998), aff'd, 200 F.3d 1016 (7th Cir. 2000) (in order to insulate creditor for liability under FDCPA for mass mailing sent out by debt collector, "minimal participation" by debt collector in debt collection process "is not enough"); Ricciardi v. Service Credit Union, 2006 U.S. Dist. Lexis 28468, *4 (D. N.H. 2005) (false name "exception [applies] to creditors whose collection efforts include correspondence from a lawyer lacking any 'meaningful involvement' in the efforts themselves"); Dean v. Gillette, 2005 U.S. Dist. Lexis 7280, *8 fn.2 (D. Kan. 2005) (granting summary judgment to creditor on FDCPA claim where "there is no suggestion that [an attorney] was not genuinely involved in the collection efforts"); Pullman v. American Express, 2009 U.S. Dist. Lexis 47864, *11 (N.D. Ill. 2009) (granting summary judgment to creditor on FDCPA claim where plaintiff failed to show that creditor's attorneys "were not meaningfully involved in the collection of his debt" or "failed to become professionally involved in [debtor's] file"); Blanford v. St. Vincent Hospital, 2009 U.S. Dist. Lexis 15760, *13 (S.D. Ind. 2009) (court denied creditor's motion to dismiss FDCPA claim, crediting allegations in the Complaint that the debt collector "was acting at [the creditor's] direction and exercising no independent judgment"); Sokolski v. Trans Union Corp, 53 F. Supp. 2d 307 (E.D.N.Y. 1999) (granting summary judgment against creditor where debt collection agency which sent letter was not otherwise meaningfully involved in collection of debt); Canterbury v. Columbia Gas of Ohio, 2000 WL 1460080 (S.D.Ohio 2000) (listing factors to determine whether collection agency's participation is so minimal that creditor should be deemed the actual debt collector subject to liability); Daniels v. Baritz, 2003 WL 21027238 (E.D. Pa. 2003) (if a creditor "controls almost all aspects of debt collection, he is considered a debt collector as defined by the FDCPA"); Weber v. Goodman, 9 F. Supp.2d 163, 168 (E.D.N.Y. 1998) (FDCPA violated "if the creditor creates the misleading impression in the least sophisticated consumer that a third party is collecting a debt for the creditor when that third party is not meaningfully involved in the collection process"); Denkers v. United Compucred Collections, Inc., 1996 WL 724784 (N.D. Cal. 1996) (creditor can be liable if it knew of or sanctioned the use of deceptive statements in the letters sent by debt collector); Peters v. AT& T Corp., 43 F.Supp.2d 926 (N.D. Ill.1999); Roe v. Publishers Clearing House, Inc., 39 F. Supp.2d 1099 (N.D. Ill. 1999); Arellano v. Etan Industries, Inc., 1998 WL 911729 (N.D. Ill. 1998); Fratto v. Citibank (South Dakota), N.A., 1996 WL 554549 (N.D. Ill. 1996) (denying summary judgment to creditor).

7

"presents the most instructive and analogous case for establishing the requirements of meaningful attorney review."). In the end, all Money Store can argue is that this Court should ignore the standard articulated by the Seventh Circuit in Neilsen v. Dickerson and other uniform authority because Judge Sprizzo (erroneously) failed to consider those decisions on the prior motion. However, both the Second Circuit and other Circuit Courts have repeatedly held that – while not controlling -- the decisions of other federal Courts of Appeals on federal law questions constitute "persuasive authority", Pireno v. New York State Chiropractic Assoc., 650 F.2d 387, 395 (2d Cir. 1981), which courts should give "the usual intercircuit regard." Desiano v. Warner-Lambert & Co., 467 F.3d 85, 91(2d Cir. 2006) (holding that district courts should "give most respectful consideration to the decisions of the other courts of appeals and follow them whenever they can"). That conclusion is especially appropriate here, where both the Second Circuit and New York federal District Courts have repeatedly cited to Nielsen on the issue of whether a letter is "from an attorney" within the meaning of the FDCPA. See Miller v. Wolpoff, 321 F.3d 292, 301, 304, 306 (2d Cir. 2003), Miller v. Upton, Cohen & Slamowitz, 687 F.Supp.2d 86, 96 (E.D.N.Y. 2009).

"The interest of courts in the finality of their decisions is important, yet it is clear that 'the law of the case does not rigidly bind a court to its former decisions, but is addressed only to its good sense.'" U.S. v. Gambino, 741 F. Supp. 412, 414 (S.D.N.Y. 1990) Thus, "if a court believes a prior ruling to be incorrect, the only just and sensible course is to change the prior ruling and proceed with the litigation." Feigenbaum v. Marble of America, 735 F. Supp. 79, 81 (S.D.N.Y. 1990); Gambino, supra.; American Canoe Ass. v. Murphy Farms, 326 F.3d 505, 515 (4th Cir. 2003) (law of the case "cannot

8

limit the power of a court to reconsider an earlier ruling [because] the ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law").

In the case at bar, plaintiffs respectfully submit that a combination of (i) material new evidence; (ii) errors in the prior ruling, and (iii) evidence of possible misrepresentations to the Court on the earlier motion, warrant reconsideration of the Judge's Sprizzo's decision dismissing the FDCPA claim against Money Store.

## CONCLUSION

For each of these reasons, plaintiffs respectfully submit that their motion for reconsideration of this Court's dismissal of the FDCPA claim against Money Store should be granted and, upon reconsideration, the Court should reinstate the FDCPA claim against Money Store.

Dated: New York, New York
February 3, 2011

                                                   THE LAW OFFICES OF PAUL GROBMAN

                                                 _____ss_____
                                                 Paul Grobman (PG 1876)
                                                 555 Fifth Avenue, 17th Floor
                                                 New York, NY 10017
                                                 Tel: (212) 983-5880

                                                 Neal A. DeYoung (ND 3098)
                                                 SHARMA & DEYOUNG LLP
                                                 286 Madison Avenue, Suite 2002
                                                 New York, New York 10017
                                                 (212) 561-1907

                                                 *Attorneys for Plaintiffs*