UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

LORI JO VINCENT, ET AL.,

                       Plaintiffs,           03 Civ. 2876 (JGK)

        - against -               MEMORANDUM OPINION
                                            AND ORDER
THE MONEY STORE, ET AL.,

                       Defendants.
────────────────────────────────

JOHN G. KOELTL, District Judge:

      The plaintiffs, Lori Jo Vincent, Ruth Ann Gutierrez (also known as Ruth Ann Alamillo), Linda U. Garrido and John Garrido bring this purported class action on behalf of themselves and all others similarly situated against The Money Store, TMS Mortgage, Inc., HomEq Servicing Corp. (collectively "The Money Store Defendants") and Moss, Codilis, Stawiarski, Morris, Schneider & Prior, LLP ("Moss Codilis").

      The plaintiffs bring claims against all defendants for fraud, unjust enrichment, and violations of California Business & Professional Code § 17200, et seq. (West 2011).  Additionally, they bring claims against The Money Store Defendants for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1666d, TILA Regulation Z, 12 C.F.R. § 226.21, and for breach of contract.  Finally, they assert an additional claim against Moss Codilis for violations of § 12-5-115 of the Colorado Revised Statutes.

The Money Store Defendants move pursuant to Rule 56 of the
Federal Rules of Civil Procedure for summary judgment dismissing
the plaintiffs' claim under TILA.  Defendant Moss Codilis also
moves for summary judgment dismissing all of the plaintiffs'
claims against it.  Finally, the plaintiffs move for
reconsideration of an order of this Court by Judge Sprizzo,
dated December 7, 2005, granting partial summary judgment
dismissing the plaintiffs' claims against The Money Store
Defendants under the Fair Debt Collection Practices Act
("FDCPA), 15 U.S.C. § 1692, et seq.

## I.

The standard for granting summary judgment is well
established.  "The court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs.,
Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial
court's task at the summary judgment motion stage of the
litigation is carefully limited to discerning whether there are
any genuine issues of material fact to be tried, not to deciding
them.  Its duty, in short, is confined at this point to issue-
finding; it does not extend to issue-resolution."  Gallo, 22
F.3d at 1224.  The moving party bears the initial burden of

"informing the district court of the basis for its motion" and
identifying the matter that "it believes demonstrate[s] the
absence of a genuine issue of material fact."  Celotex, 477 U.S.
at 323.  The substantive law governing the case will identify
those facts that are material and "[o]nly disputes over facts
that might affect the outcome of the suit under the governing
law will properly preclude the entry of summary judgment."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see
also Behringer v. Lavelle Sch. for the Blind, No. 08 Civ. 4899,
2010 WL 5158644, at *1 (S.D.N.Y. Dec. 17, 2010).

     In determining whether summary judgment is appropriate, a
court must resolve all ambiguities and draw all reasonable
inferences against the moving party.  See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)
(citing United States v. Diebold, Inc., 369 U.S. 654, 655
(1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is
improper if there is any evidence in the record from any source
from which a reasonable inference could be drawn in favor of the
nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d
29, 37 (2d Cir. 1994).  If the moving party meets its burden,
the nonmoving party must produce evidence in the record and "may
not rely simply on conclusory statements or on contentions that
the affidavits supporting the motion are not credible . . . ."
Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir.

1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Behringer, 2010 WL 5158644, at *1.


## II.

The following facts are undisputed unless otherwise noted.

### A.

The plaintiffs are individuals who took out mortgage loans on their homes.  The Money Store is a mortgage lender and servicer of loans.  The Money Store Defendants claim that they did not make the loans at issue in this case but that the loans were later assigned to them.  (Money Store Defs.' 56.1 Stmt. ¶¶ 5, 7, 11, 15.)

In February 1998, plaintiff Lori Jo Vincent took out a mortgage loan on her house in Carrollton, Texas.  The Note and Deed of Trust she executed state that the lender is Accubanc Mortgage Corporation.  (Note of Lori Jo Vincent, attached as Ex. C to Kobelt Declaration ("Kobelt Decl."); Deed of Trust of Lori Jo Vincent, attached as Ex. D to Kobelt Decl.)  The Money Store Defendants contend that the loan was assigned to EquiCredit Corporation of America in February 1998 and then to TMS Mortgage, Inc. in April 1998.  (Money Store Defs.' 56.1 Stmt. ¶¶ 6, 7; Assignment from Accubanc to Equicredit, attached as Ex. E to Kobelt Decl.; Assignment from EquiCredit to TMS Mortgage, attached as Ex. F to Kobelt Decl.; Letter from The Money Store

to Vincent dated June 22, 1998, attached as Ex. G to Kobelt
Decl.)

In April 1997, plaintiff Ruth Gutierrez (also known as Ruth
Ann Alamillo) took out a mortgage loan on her home in Stockton,
California.  The Note and Deed of Trust she executed state that
the lender is First Financial Funding Group.  (Note of Ruth Ann
Gutierrez a/k/a Alamillo, attached as Ex. I to Kobelt Decl; Deed
of Trust of Ruth Ann Gutierrez a/k/a Alamillo, attached as Ex. J
to Kobelt Decl.)  The Money Store Defendants contend that the
loan was then assigned to TMS Mortgage, Inc. which became Ms.
Gutierrez' new lender.  (Money Store Defs.' 56.1 Stmt. ¶ 11;
Assignment from First Financial Funding Group to TMS Mortgage,
Inc., attached as Ex. K to Kobelt Decl.; Letter from The Money
Store to Gutierrez dated April 16, 1997, attached as Ex. L to
Kobelt Decl.)

In May 1996, plaintiffs Linda U. Garrido and John Garrido
took out a mortgage loan on their home in Huntington Station,
New York.  The Note and Mortgage they executed state that the
lender is FHB Funding Corp.  (Note of Linda and John Garrido,
attached as Ex. N to Kobelt Decl; Mortgage of Linda and John
Garrido, attached as Ex. O to Kobelt Decl.)  The Money Store
Defendants contend that the loan was then assigned to TMS
Mortgage in June 1996, which became the Garridos' new lender.
(Money Store Defs.' 56.1 Stmt. ¶ 15; Assignment from FHB Funding

Corp. to TMS Mortgage, Inc., attached as Ex. P to Kobelt Decl.;
Letter from The Money Store to Garridos dated July 1, 1996,
attached as Ex. Q to Kobelt Decl.)

**B.**

In April 1997, TMS Mortgage hired Moss Codilis to create
and operate a system to send breach notices to borrowers who had
defaulted on their loans ("Breach Letter Program").  Such
notices were a prerequisite to TMS Mortgage taking action to
foreclose on borrowers' property.

Ms. Christina Nash, an attorney with Moss Codilis, was
charged with supervising the Breach Letter Program from its
inception in April 1997.  (Moss Codilis' 56.1 Stmt. ¶ 5; Pls.'
Resp. to Moss Codilis' 56.1 Stmt. ¶ 5.)  Ms. Nash was not
licensed to practice law in Colorado, where Moss Codilis' only
office was located.  (Moss Codilis' Answer & Affirmative
Defenses to First Am. Compl. ¶ 23.)  In July 1999, Moss Codilis
hired Valerie Bromley, an attorney licensed to practice law in
Colorado, to assist Ms. Nash in operating the Breach Letter
Program.  Moss Codilis asserts that Ms. Bromley took over the
Breach Letter Program at the end of October 1999 and that Ms.
Nash's involvement was "extremely limited" thereafter.  (Moss
Codilis' 56.1 Stmt. ¶ 7.)  The plaintiffs assert that Ms. Nash
remained involved at least through 2000.  (Pls.' Resp. to Moss
Codilis' 56.1 Stmt. ¶¶ 5, 7.)

6

The parties disagree as to the nature of the tasks that the Breach Letter Program entailed.  Moss Codilis argues that the only element of the Breach Letter Program that required legal analysis was the drafting of language for the breach letter templates to ensure that they were in compliance with applicable state and federal laws.  (Moss Codilis' 56.1 Stmt. ¶ 4.)  Moss Codilis asserts that Mr. Leo Stawiarski, a partner at Moss Codilis, bore primary responsibility for this element of the Breach Letter Program and supervised Ms. Nash in carrying out all work related to this task.  (Moss Codilis' 56.1 Stmt. ¶¶ 4, 5.)  Moss Codilis characterizes the other tasks involved in the Breach Letter Program as an "exercise in mass processing." (Moss Codilis' 56.1 Stmt. ¶ 6.)  The plaintiffs contend that the Breach Letter Program required Ms. Nash to exercise independent legal judgment in a number of tasks.  (Pls.' Resp. to Moss Codilis' 56.1 Stmt. ¶¶ 1, 6.)

Ms. Nash gave a deposition in January 2003 in connection with the case of Mazzei v. The Money Store, Docket No. 01-cv-5694 (JGK) (the "Mazzei case"), in which the nature of the tasks performed in the Breach Letter Program was also at issue.  See Dep. Tr. of Christina Nash ("Nash Dep. Tr."), attached as Ex. B to DeYoung Declaration ("DeYoung Decl.").)  The deposition dealt at length with the extent of independent legal judgment that Ms. Nash exercised in operating the Breach Letter Program.

Each of the plaintiffs received breach letters from Moss Codilis.  Moss Codilis sent breach letters to Lori Jo Vincent on or about March 22, 2000 (Moss Codilis' 56.1 Stmt. ¶ 14; Pls.' Resp. to Moss Codilis' 56.1 Stmt. ¶ 14), to Linda and John Garrido on or about October 8, 1997 (Moss Codilis' 56.1 Stmt. ¶ 16; Pls.' Resp. to Moss Codilis' 56.1 Stmt. ¶ 16), and to Ruth Ann Gutierrez (also known as Ruth Ann Alamillo) on or about September 28, 2000 and October 30, 2000 (Moss Codilis' 56.1 Stmt. ¶ 18; Pls.' Resp. to Moss Codilis' 56.1 Stmt. ¶ 18).

## C.

On April 24, 2003, the plaintiffs filed a complaint in this Court.  On December 7, 2005, Judge Sprizzo granted partial summary judgment dismissing the plaintiffs' claims against The Money Store Defendants under the FDCPA.[1]

## III.

## A.

The Money Store Defendants move for summary judgment dismissing the plaintiffs' TILA claim on the grounds that TILA's definition of a "creditor" on whom liability can be imposed does not include The Money Store Defendants.

TILA seeks to "assure a meaningful disclosure" of creditor terms to protect consumers against deceptive or unfair practices

---

[1] Vincent v. Money Store, 402 F. Supp. 2d 501 (S.D.N.Y. 2005).

by creditors.  15 U.S.C. § 1601(a).  TILA imposes liability only

upon creditors and, in some limited circumstances, assignees.[2]

See 15 U.S.C. §§ 1640(a); 1641(e).  TILA defines a "creditor" as

a person who both:

> (1) regularly extends, whether in connection with loans,
> sales of property or services, or otherwise, consumer
> credit which is payable by agreement in more than four
> installments or for which the payment of a finance charge
> is or may be required, and (2) is the person to whom the
> debt arising from the consumer credit transaction is
> initially payable on the face of the evidence of
> indebtedness or, if there is no such evidence of
> indebtedness, by agreement.

15 U.S.C. § 1602(f).  This definition "is restrictive and

precise, referring only to a person who satisfies both

requirements" of the bifurcated definition.  Cetto v. LaSalle

Bank Nat'l Ass'n, 518 F.3d 263, 270 (4th Cir. 2008).

Under the second prong of the TILA definition, a creditor

must be the person to whom a debt is initially payable on the

face of the indebtedness, meaning "on the face of the note or

contract, or by agreement when there is no note or contract."

12 C.F.R. § 226.2(a)(17)(i).  Here, The Money Store Defendants

do not fall within this definition.  Each of the plaintiffs'

---

[2] Assignee liability under TILA is limited to situations where
the violation that gives rise to the proceeding "is apparent on
the face of the disclosure statement provided in connection with
such transaction pursuant to this subchapter."  15 U.S.C. §
1641(e)(1)(A).  The plaintiffs do not contend that there was any
such violation apparent on the face of the disclosure statements
here.

loans were initially payable to lenders other than The Money
Store Defendants.  Each of the Notes identifies an entity other
than The Money Store Defendants as the original lender and
indicates an assignment to The Money Store Defendants.  (Kobelt
Decl. Exs. C, I, N.)  Moreover, for each of the plaintiffs'
loans, the TILA disclosure statements were made by lenders other
than The Money Store Defendants.  (TILA Disclosure Statement for
Vincent, attached as Ex. H to Kobelt Decl.; TILA Disclosure
Statement for Gutierrez, attached as Ex. M to Kobelt Decl.; TILA
Disclosure Statement for Garridos, attached as Ex. R to Kobelt
Decl.)  Because TILA requires that disclosure statements be made
by the "creditor," 15 U.S.C. §§ 1631, 1635, these statements
evidence the fact that the original lenders, rather than The
Money Store Defendants, were "creditors" for purposes of TILA.

     The plaintiffs argue that the loans in question were
"initially payable" to The Money Store Defendants within the
meaning of § 1602(f) of TILA because the assignments to The
Money Store Defendants occurred before the funds were disbursed
to the plaintiffs and before the plaintiffs made their first
loan payments.  However, even when loan obligations are
simultaneously assigned to another lender, that lender does not
become a "creditor" for the purposes of TILA.  The Federal
Reserve Board's Official Staff Commentary to Regulation Z,
TILA's implementing regulation, indicates that "[i]f an

obligation is initially payable to one person, that person is the creditor even if the obligation by its terms is simultaneously assigned to another person." 12 C.F.R. pt. 226, supp. I at 300 (2000); see also Riviere v. Banner Chevrolet, Inc., 184 F.3d 457, 461 (5th Cir. 1999) (car dealer to whom loan obligation was initially payable was creditor even though loan was immediately assigned to financing company); Mayfield v. Gen. Elec. Capital Corp., No. 97 Civ. 2786, 1999 WL 182586, at *3 (S.D.N.Y. Mar. 31, 1999) (interpreting the Official Staff Commentary to Regulation Z to mean that the person to whom the debt is initially payable is the only creditor "even when the contract provides for the immediate assignment of the obligation").

The plaintiffs also contend that The Money Store Defendants are precluded from contesting their creditor status because they allegedly made prior admissions that the plaintiffs were owed a credit balance. However, the plaintiffs point to no pleadings in which The Money Store Defendants affirmatively asserted that they were the original lender on the loans. The initial dispositive issue for the purposes of TILA is to whom the loan was initially payable, not whether a credit balance is due. Thus, any concession by The Money Store Defendants that a credit balance was owed to the plaintiffs is irrelevant to whether the defendants are creditors within the meaning of TILA.

The plaintiffs' argument that The Money Store Defendants' creditor defense is untimely is also unavailing.  The Money Store Defendants timely asserted this defense in their Answer to the plaintiffs' Amended Complaint.  (The Money Store Defendants' Answer to First Am. Compl. ¶ 55.)  See, e.g., Legal Aid Soc'y v. City of New York, 114 F. Supp. 2d 204, 222 (S.D.N.Y. 2000) (affirmative defense was timely when raised for first time in answer to Second Amended Complaint).  Moreover, the plaintiffs have not established that they have suffered any prejudice. While the plaintiffs claim that they must take additional discovery to test The Money Store Defendants' creditor defense, the question of whether a particular entity is a creditor under TILA can be answered from "the face of the evidence of indebtedness," 15 U.S.C. § 1602(f), which here clearly indicates an original lender other than The Money Store Defendants.

Thus, because the plaintiffs' loan obligations were initially payable to other lenders, The Money Store Defendants cannot be held liable as "creditors" under TILA.  Accordingly, the Money Store Defendants' motion for summary judgment is **granted** on the plaintiffs' TILA claim.  The plaintiffs' application for additional discovery is also **denied**.

**B.**

The TILA claims are the plaintiffs' only remaining federal claims against The Money Store Defendants.  Having dismissed

12

this claim, the Court declines to exercise supplemental jurisdiction over the plaintiffs' remaining state-law claims. See 28 U.S.C. § 1367(c)(3).  The Court of Appeals for the Second Circuit has instructed that "'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)).

This case presents no basis for deviating from the balance articulated in Valencia.  While the Court of Appeals for the Second Circuit has upheld the exercise of supplemental jurisdiction over state-law claims when federal claims are dismissed on the eve of trial, this is not such a case.  See Valencia, 316 F.3d at 305-06 (citing Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1191-92 (2d Cir. 1996) (exercise of supplemental jurisdiction proper when federal claim dismissed just nine days before trial) and Raucci v. Town of Rotterdam, 902 F.2d 1050, 1055 (2d Cir. 1990) (supplemental jurisdiction proper when case was ready for trial at the time federal claims were dismissed)).  Here, the case is not ready for trial because the motion for class certification remains.

Moreover, the plaintiffs' state-law claims against The Money Store Defendants raise complex issues of California law. This weighs heavily against the exercise of supplemental jurisdiction.  See Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir. 1998) (citing Rounseville v. Zahl, 13 F.3d 625, 631 (2d Cir. 1994) (exercise of supplemental jurisdiction improper when state claim required potentially novel application of state law and federal claims had been dismissed) and Morse v. Univ. of Vt., 973 F.2d 122, 127-28 (2d Cir. 1992) (retention of supplemental jurisdiction improper when state claim raised undecided question of state law and federal claims had been dismissed)).

The remaining state-law claims against The Money Store Defendants are therefore **dismissed without prejudice.**

## IV.

Defendant Moss Codilis moves for summary judgment arguing that it was not engaged in the unauthorized practice of law when its employee, Ms. Nash, who was not licensed to practice law in Colorado, sent breach letters to borrowers who had defaulted on their loans.  Accordingly, it argues that the plaintiffs' claims against it, which depend on this assertion, must be dismissed.

Moss Codilis relies primarily on a declaration of Ms. Nash asserting that she performed little to no legal analysis in the

course of her work supervising the Breach Letter Program.
(Declaration of Christina Nash, attached as Ex. A to Chizewer
Declaration ("Nash Decl.") ¶¶ 6, 8.)  Moss Codilis contends that
the only legal component of the Breach Letter Program was
drafting and revising the language of the breach letter
templates for each state to ensure they were in compliance with
relevant state and federal laws.  (Moss Codilis' 56.1 Stmt. ¶¶
4, 6.)  According to Moss Codilis, Leo Stawiarski, a partner of
the firm who was licensed to practice law in Colorado, bore
primary responsibility for drafting and revising the template
language.  (Moss Codilis' 56.1 Stmt. ¶ 4.)  To the extent Ms.
Nash was involved in this task, Moss Codilis claims, she was
always under the supervision of Mr. Stawiarski.  (Moss Codilis'
56.1 Stmt. ¶ 5.)  Moss Codilis argues that the rest of the work
involved in the Breach Letter Program was "an exercise in mass
processing" that required little to no independent legal
judgment.  (Moss Codilis' 56.1 Stmt. ¶¶ 6, 9.)  In addition,
Moss Codilis contends that, after October 1999, Ms. Nash's role
in the Breach Letter Program was extremely limited and that
there is no evidence that she was involved in the breach letters
sent to plaintiffs Vincent or Gutierrez in 2000.  (Moss Codilis'
56.1 Stmt. ¶¶ 7, 14, 18.)

    The plaintiffs contend that Moss Codilis' assertion that
Ms. Nash was not practicing law when she supervised the Breach

Letter Program is flatly inconsistent with her deposition testimony in the Mazzei case, during which she asserted that her role required the exercise of independent legal judgment. (Pls.' Resp. to Moss Codilis' 56.1 Stmt. ¶ 6.)  Similarly, they argue that Ms. Nash's assertion that she had little involvement with the Breach Letter Program after October 1999 contradicts her prior deposition testimony.  (Pls.' Resp. to Moss Codilis' 56.1 Stmt. ¶¶ 5, 14, 18.)  The plaintiffs argue that, because Ms. Nash's declaration in support of this motion contradicts her prior deposition testimony, it is unreliable and should be disregarded by the Court.

Ms. Nash's declaration in support of this motion does not suffice to meet Moss Codilis' burden of establishing that there is no genuine issue of material fact regarding whether Moss Codilis engaged in the unauthorized practice of law.  Ms. Nash's declaration does appear to contradict her prior deposition testimony in several respects.  Ms. Nash states in her current declaration that "there was little, if any, legal analysis of each borrower's information or of the individual Breach Letters."  (Nash Decl. ¶ 6.)  However, in her prior deposition testimony, Ms. Nash asserted that "I looked at the total delinquency [on each borrower's account] to make sure that . . . we weren't sending a breach letter out on a loan that legally shouldn't be breached" (Nash Dep. at 209: 4-8) and characterized

this analysis as "a legal determination." (Nash Dep. at 83: 2.)
In addition, while Ms. Nash's current declaration states that
"[t]he Breach Letter templates and the form text was created by
Leo Stawiarski" (Nash Decl. ¶ 4), she previously testified that
with regard to "[t]he state specific templates, I had a role in
doing some of the compliance – the legal compliance to actually
draft those, and then The Money Store's in-house counsel and
myself amended some of those letter templates." (Nash Dep. Tr.
at 125: 21-25.)  In her prior deposition testimony, Ms. Nash
even took affront at the notion that her role in the Breach
Letter Program was non-legal, stating that "I really resent the
fact that you're telling me that you don't feel that my
independent legal judgment was utilized . . . ." (Nash Dep. Tr.
at 210: 11-14.)  In addition, while Ms. Nash asserts in her
current declaration that she had little involvement with the
Breach Letter Program after October 1999 (Nash Decl. ¶ 9),
portions of her prior deposition testimony suggest that she
remained involved in the year 2000.  See Nash Dep. Tr. at 118:
9-18 (testifying that, in 2000, she "looked at the [loan]
file[s] to make the legal determinations, to make sure that [the
paralegals] were following the policies and procedures that had
been put in place from a legal standpoint"); 152: 16-24 (stating
that Ms. Nash reviewed more than 1000 default letters in the
year 2000).  Given the seeming contradictions between Ms. Nash's

17

deposition and her current declaration, it is the task of the jury, not the Court, to decide which version of Ms. Nash's testimony concerning the Breach Letter Program to credit.  See Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997) ("Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury.").  Thus, summary judgment is **denied** on Moss Codilis' motion to dismiss the plaintiffs' claims against it.

However, no federal claims have been asserted against Moss Codilis.  Because the Court has dismissed the only federal claim in this action, it declines to exercise supplemental jurisdiction over the state-law claims asserted against Moss Codilis.  See Valencia, 316 F.3d at 304-06.  Therefore, the plaintiffs' claims against Moss Codilis are **dismissed without prejudice.**

## V.

The plaintiffs move for reconsideration of an order of this Court dated December 7, 2005 by Judge Sprizzo granting in part The Money Store Defendants' motion for summary judgment and dismissing the plaintiffs' claims under the FDCPA.[3]  The

---

[3] Judge Sprizzo's decision relied on and cited to the reasoning of his prior decision in Mazzei v. Money Store, 349 F. Supp. 2d 651 (S.D.N.Y. 2004), finding the issues presented in the two cases to be nearly identical.  Thus, discussion of Judge Sprizzo's ruling in the Vincent case will cite to his reasoning as articulated in the Mazzei decision.

plaintiffs argue that Ms. Nash's declaration submitted in support of Moss Codilis' motion for summary judgment constitutes new evidence that contradicts the evidence before the Court on the prior summary judgment motion and thus justifies reconsideration of Judge Sprizzo's ruling.

The standard to be applied to a motion for reconsideration under Local Rule 6.3[4] is well established.  It is the same as the standard that was applied under former Local Civil Rule 3(j).  See United States v. Letscher, 83 F. Supp. 2d 367, 382 (S.D.N.Y. 1999) (collecting cases).  The moving party is required to demonstrate that the Court overlooked the controlling decisions or factual matters that were put before the Court in the underlying motions.  Nakano v. Jamie Sadock, Inc., No. 98 Civ. 0515, 2000 WL 1010825, at *1 (S.D.N.Y. July 20, 2000); Walsh v. McGee, 918 F. Supp. 107, 110 (S.D.N.Y. 1996); In re Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y. 1996).  The rule is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court."  Walsh, 918 F. Supp. at 110; see also Nakano,

---

[4] While the parties dispute whether Federal Rule of Civil Procedure 54(b) or 59(e) is the applicable federal rule governing this motion, the standards the two rules dictate for a motion for reconsideration are equivalent and are both analyzed under the same framework as Local Rule 6.3   See United States v. Morrison, No. 04-CR-699, 2007 WL 4326796, at *1 n. 3 (E.D.N.Y. Dec. 7, 2007).

2000 WL 1010825, at *1; <u>United States v. Mason Tenders Dist.</u>
<u>Council of Greater N.Y.</u>, 909 F. Supp. 882, 889 (S.D.N.Y. 1995).
The decision to deny or grant a motion for reconsideration lies
within the sound discretion of the Court.   <u>See</u> <u>Devlin v. Transp.</u>
<u>Commc'ns Int'l Union</u>, 175 F.3d 121, 131-32 (2d Cir. 1999);
<u>Belmont v. Assocs. Nat'l Bank</u>, 219 F. Supp. 2d 340, 343
(E.D.N.Y. 2002).

        As an initial matter, the plaintiffs' motion for
reconsideration is untimely.   Local Rule 6.3 requires that a
motion for reconsideration be served within fourteen days after
the Court's entry of the determination of the original motion.[5]
<u>See, e.g.</u>, <u>Jackson v. Killian</u>, No. 08 Civ 4386 (SAS), 2010 WL
2103646, at *1 (S.D.N.Y. May 25, 2010).   Judge Sprizzo's
decision was entered on December 7, 2005 and the plaintiffs
brought this motion for reconsideration on December 13, 2010.
This is a far cry from the fourteen-day time period contemplated
by Local Rule 6.3.

        While courts have permitted untimely motions for
reconsideration when there is "a compelling reason to ignore the
time limit," <u>Richman v. W.L. Gore & Assocs., Inc.</u>, 988 F. Supp.
753, 755 (S.D.N.Y. 1997), such a case is not presented here.
Compelling grounds for reconsideration include "an intervening

---

        [5] While the defendants state that a ten-day time limit governs
a motion for reconsideration, the December 2009 amendments to
Local Rule 6.3 changed the time limit from ten to fourteen days.

change in controlling law, the availability of new evidence, or
the need to correct a clear error or to prevent manifest
injustice." Id. at 755.  The plaintiffs argue that Ms. Nash's
declaration constitutes new evidence that could alter Judge
Sprizzo's prior determination that The Money Store Defendants
were not "debt collectors" within the meaning of the FDCPA.
Under the FDCPA, creditors do not fall within the definition of
"debt collectors" and thus generally are not subject to
liability.  15 U.S.C. § 1692a(6)(F).  However, under the False
Name Exception to the FDCPA, a creditor is considered to be a
debt collector if "in the process of collecting his own debts,
[the creditor] uses any name other than his own which would
indicate that a third person is collecting or attempting to
collect such debts."  15 U.S.C. § 1692a(6).  The plaintiffs
argue that Judge Sprizzo was led to believe that Moss Codilis
was exercising professional judgment in sending out the breach
letters and that this misrepresentation was material to the
question of whether Moss Codilis fell within the False Name
Exception to the FDCPA.  According to the plaintiffs, a creditor
falls within the False Name Exception if letters were sent on
the creditor's behalf by a third party who was not genuinely
involved in the effort to collect the creditor's debts.  The
plaintiffs argue that Ms. Nash's declaration sheds new light on
the question of Moss Codilis' "genuine involvement" because the

declaration states that Moss Codilis was engaged only in an
"exercise in mass processing" that involved "little, if any,
legal analysis."  (Nash Decl. ¶ 6.)

For new evidence to justify reconsideration, the evidence
must be "of such importance that it probably would have changed
the outcome" of the prior ruling.  United States v. Int'l Bhd.
of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001) (citations
omitted).  The plaintiffs have made no such showing here.  Judge
Sprizzo previously considered the plaintiffs' arguments that
"the breach letters were not really from Moss Codilis in any
meaningful sense" and that Moss Codilis did not "exercise any
professional judgment in doing its work" and he determined that
those arguments "[were] not relevant to the question of whether
The Money Store should be considered a debt collector under the
false name exception of the FDCPA . . . ."  Mazzei v. Money
Store, 349 F. Supp. 2d 651, 661 (S.D.N.Y. 2004).  Instead, Judge
Sprizzo determined the dispositive question to be whether The
Money Store "used Moss Codilis' name to collect its debts,
pretended to be Moss Codilis or used an alias to that effect, or
. . . controlled almost every aspect of Moss Codilis' debt
collection practice, rendering Moss Codilis defendants' alter
ego."  Id. (internal quotation marks and citations omitted).

The plaintiffs do not contend that Ms. Nash's declaration
bears on any of these three inquiries.  Instead, they simply

argue that Judge Sprizzo was incorrect in not deeming the level of Moss Codilis' professional judgment relevant to The Money Store's liability under the FDCPA.  This is not a proper basis for a motion for reconsideration.  See, e.g., Houbigant, 914 F. Supp. at 1001 (motion for reconsideration "is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved"); Devinsky v. Kingsford, No. 05 Civ. 2064, 2008 WL 2704338, at *2 (S.D.N.Y. July 10, 2008) ("A motion for reconsideration is not an opportunity to renew arguments considered and rejected by the court, nor is it an opportunity for a party to re-argue a motion because it is dissatisfied with the original outcome.")

For these reasons, the plaintiffs' motion for reconsideration is **denied.**

## CONCLUSION

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the foregoing reasons, The Money Store Defendants' Motion for Summary Judgment on the plaintiffs' TILA claim is **granted** and that claim is **dismissed with prejudice.**  The state-law claims against The Money Store Defendants are **dismissed without prejudice.**  Moss Codilis' Motion for Summary Judgment is **denied** but the plaintiffs' state-law claims against it are **dismissed**

**without prejudice.**  The plaintiffs' Motion for Reconsideration

is **denied**.  The Clerk is directed to enter Judgment in

accordance with this Opinion and to close this case.  The Clerk

should close all pending motions.


SO ORDERED.

Dated:     New York, New York
           September 29, 2011

_____
                    John G. Koeltl
          United States District Judge

24