UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

LORI JO VINCENT, ET AL.,

                    Plaintiffs,           03 Civ. 2876 (JGK)

          - v.-                           OPINION AND ORDER

THE MONEY STORE, ET AL.,

                    Defendants.
────────────────────────────────

JOHN G. KOELTL, District Judge:

     The plaintiffs, Lori Jo Vincent, Ruth Ann Gutierrez, and

Linda and John Garrido bring this purported class action on

behalf of themselves and all others similarly situated against

the defendants, The Money Store, TMS Mortgage, Inc., and HomEq

Servicing Corp.  The plaintiffs allege violations of the Fair

Debt Collection Practices Act ("FDCPA") in connection with the

defendants' allegedly improper debt collection practices.  The

plaintiffs move for certification of a class based on their

FDCPA claim pursuant to Rule 23 of the Federal Rules of Civil

Procedure.

                              I.

     The factual background of this case has been set forth in

the Court's previous decision on summary judgment, Vincent v.

Money Store, No. 03cv2876, 2011 WL 4501325, at *2-3 (S.D.N.Y.

Sept. 29, 2011), aff'd in part, vacated in part, remanded,

Vincent v. Money Store, 736 F.3d 88 (2d Cir. 2013), and is

                              1

substantially similar to the facts of a related case, <u>Vincent</u>
<u>II</u>, as described in another previous decision.  <u>Vincent v. Money</u>
<u>Store</u>, 915 F. Supp. 2d 553, 557-58 (S.D.N.Y. 2013).  Familiarity
with those decisions is assumed.  The following factual and
procedural background relevant to the present motion is
undisputed, unless otherwise noted.

### A.

The named plaintiffs in this action all took out home
mortgage loans on which they defaulted.  The defendants serviced
those loans.  The plaintiffs all received substantially similar
letters notifying them of their defaults from the law firm Moss,
Codilis, Stawiarski, Morris, Schneider & Prior ("Moss Codilis").
<u>See</u> Grobman Decl. Ex. B ("Breach Letters").  The breach letters
also notified them that the servicer of their loans, defendant
TMS Mortgage, Inc, intended to enforce the loan by accelerating
the sum of the principal and interest, and that Moss Codilis had
been retained by the defendants to collect the debt.  <u>Id.</u>  The
defendants and Moss Codilis agreed in what they termed the
"Breach Letter Program" that Moss Codilis would receive a $50
fee, later reduced to $35, for every breach letter it sent.
Grobman Decl. ¶ 2, Ex. A.  Moss Codilis sent out 88,937 breach
letters to borrowers.  Grobman Decl. ¶ 4, Ex. C, at 4.

In this action, the plaintiffs allege that the defendants
hired Moss Codilis to represent itself as collecting the

defendants' debt, when in fact Moss Codilis was just sending out collection letters on attorney letterhead at the defendants' behest.  The plaintiffs contend that the defendants' conduct violates the false name exception of the FDCPA.  See 15 U.S.C. § 1692a(6).  The plaintiffs seek damages based on the fees charged by Moss Codilis, which the plaintiffs contend were passed on to the borrowers.

**B.**

In a decision dated December 7, 2005, Judge Sprizzo granted summary judgment to the defendants, dismissing the plaintiffs' FDCPA claim.[1]  Vincent v. Money Store, 402 F. Supp. 2d 501, 503 (S.D.N.Y. 2005).  Judge Sprizzo relied on his prior decision in the separate related case of Mazzei v. Money Store, 349 F. Supp. 2d 651, 659-60 (S.D.N.Y. 2004).  In Mazzei, Judge Sprizzo concluded that the defendant had not violated § 1692a(6) because the defendant had not "pretend[ed] to be someone else" or used a "pseudonym or alias."  Id.  In a decision issued on September 29, 2011, this Court dismissed the plaintiffs' claims under the Truth in Lending Act ("TILA") and denied the plaintiffs' motion for reconsideration of Judge Sprizzo's opinion.  Vincent, 2011 WL 4501325, at *9.  Having dismissed all federal claims, this

---

[1] Judge Sprizzo presided over this case from its filing in 2003 until his death in 2008, whereupon this case was transferred to this Court.

Court declined to exercise supplemental jurisdiction over the plaintiffs' state law claims.  Id. at *7.

On appeal, the Court of Appeals of the Second Circuit vacated in part the judgment entered pursuant to this Court's 2011 decision, and reinstated the plaintiffs' FDCPA claim. Vincent v. The Money Store, 736 F.3d 88, 104-05, 109 (2d Cir. 2013).  The Court concluded that a creditor could violate the false name exception not only by using a pseudonym or alias to collect its debts, but also by hiring a third party to purport to collect debts independently while the third party was actually under the creditor's control.  Id. at 99-103.

The Court noted that Moss Codilis had described the Breach Letter Program as an "exercise in mass processing," and that Moss Codilis had indicated that "all meaningful collection efforts or attempts to 'gather' the money owed were handled by The Money Store."  Id. at 100-01.  It pointed to deposition testimony of one of the principal supervisors of the Breach Letter Program, Christina Nash, in which she testified that the defendants provided Moss Codilis with large spreadsheets of debtors in default, usually over 1000, to be notified by mail the next day.  Id. at 104.  The Court also explained that Nash's testimony suggested that Moss Codilis's review of the letters prior to sending them was limited to "ministerial tasks," such as ensuring the address information was complete.  Id.

4

The Court held that, "when determining whether a representation to a debtor indicates that a third party is collecting or attempting to collect a creditor's debts, the appropriate inquiry is whether the third party is making *bona fide* attempts to collect the debts of the creditor or whether it is merely operating as a 'conduit' for a collection process that the creditor controls." Id. at 103.  Based on what it termed Moss Codilis's "limited involvement," the Court concluded that a jury could find that its representations through the breach letters that it had been retained by the defendants to collect their debts could violate the false name exception of the FDCPA. Id. at 104.

Subsequent to the decision of the Court of Appeals, this Court denied the plaintiffs' motion to reinstate their state law claims. Vincent v. Money Store, No. 01cv5694, 2014 WL 1087928, at *2-3 (S.D.N.Y. Mar. 19, 2014), reconsideration denied, No. 03cv2876, 2014 WL 1673375 (S.D.N.Y. Apr. 28, 2014).  The plaintiffs now move to certify a class based on their claim under the false name exception of the FDCPA, as explained by the Court of Appeals, proposing a class of all borrowers on loans owned or serviced by the defendants who were sent breach letters by Moss Codilis from April 1, 1997, to the present.

## II.

Before certifying a class, the Court must determine that the party seeking certification has satisfied the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  See Fed. R. Civ. P. 23(a); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 202-03 (2d Cir. 2008); In re Initial Pub. Offerings Sec. Litig. ("In re IPO"), 471 F.3d 24, 32 (2d Cir. 2006).  The Court must find, more specifically, that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a). The Court must also find that the class qualifies under one of the three sets of criteria set forth in Rule 23(b).  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997); Teamsters, 546 F.3d at 203; In re IPO, 471 F.3d at 32.

The plaintiffs here seek certification under Rule 23(b)(3), which provides for a class to be maintained where "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and

6

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also* *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1431 (2013). If the requirements of 23(a) have been met, and the claims fall within the scope of Rule 23(b)(3), a court may, in its discretion, certify the class. *See* *In re IPO*, 471 F.3d at 41 ("[A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met.").

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Plaintiffs seeking class certification bear the burden of demonstrating by a preponderance of the evidence that the proposed class meets each of the requirements for class certification set forth in Rule 23. *Teamsters*, 546 F.3d at 202. When assessing whether plaintiffs have met this burden, courts must take into account "all of the relevant evidence admitted at the class certification stage." *In re IPO*, 471 F.3d at 42. A court may certify a class only after determining that "whatever underlying facts are relevant to a particular Rule 23 requirement have been established." *Id.* at 41. "[T]he obligation to make such

determinations is not lessened by overlap between a Rule 23 requirement and a merits issue," although a court "should not assess any aspect of the merits unrelated to a Rule 23 requirement." Id.; see also Ramirez v. Riverbay Corp., No. 13cv2367, 2014 WL 3800886, at *2-3 (S.D.N.Y. Aug. 1, 2014).

**III.**

The plaintiffs seek to certify a class of all borrowers on loans serviced or owned by the defendants who, from April 1, 1997, to the present, were sent breach letters by Moss Codilis. The defendants oppose certification based on the plaintiffs' alleged failure to show that the commonality, typicality, and adequacy prongs of Rule 23(a) are satisfied. The defendants also contend that Rule 23(b)'s preponderance and superiority requirements have not been satisfied.[2]

**A.**

Before turning to the Rule 23 requirements, there are initial problems with the class definition as proposed by the plaintiffs. In their most recent complaint, the plaintiffs sought to bring this action as a class action on behalf of all

---

[2] The defendants have not contested that numerosity is met in this case. In any event, the numerosity requirement of Rule 23(a)(1) is presumed satisfied for classes with more than forty members. See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). Because the defendants sent out nearly 90,000 breach letters between July 1997 and November 2000, the plaintiffs have shown that numerosity is satisfied even if the scope of the class is limited to only a portion of that period.

borrowers who paid certain fees to the defendants "after March 1, 2000." Am. Compl. ¶ 14.  Among those fees were the "fees paid to Moss Codilis for the 88,937 breach letters prepared for HomEq pursuant to Moss Codilis' breach letter program."  Id. The current proposed class differs in both the time period identified, and the precipitating event; in the Complaint the borrowers are identified by when they incurred the expenses, but the class proposed in this motion is identified by when they were sent breach letters.  The plaintiffs' proposed definition in this motion would also extend the starting date for the class definition back three years to April 1, 1997, from the date alleged in the Complaint, without any attempt by the plaintiffs to amend their complaint in the years since it was filed.  This would be improper.

While a district court may carve out a narrower class from an overbroad class proposed in the Complaint, Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp., 993 F.2d 11, 14 (2d Cir. 1993), the plaintiffs cite no case demonstrating the appropriateness of considerably expanding a class on a certification motion from what was originally proposed in the Complaint.  In this case, discovery has already been completed with the scope of the class limited to borrowers incurring expenses after March 1, 2000, as stated in the Amended Complaint.  See Oscar v. BMW of N. Am., LLC, No. 09cv11, 2011 WL 6399505, at *6 (S.D.N.Y. Dec. 20, 2011)

9

(denying motion to amend to broaden class due to likelihood of additional discovery being necessary).  Even if there would not be additional discovery required for the expansion of this class, there would be problems with the notice provided by the initial statement of the class in the Complaint.  "When the initial complaint is clear with respect to the definition of the class," as it was with respect to the beginning date of the purported class in this case, "the defendants are placed on notice of the nature and scope of the claims asserted against them."  Choquette v. City of New York, 839 F. Supp. 2d 692, 701 (S.D.N.Y. 2012).  Expanding the class now on this motion would be unfair to the defendants.  Allowing plaintiffs to expand the class backwards in time would also be at odds with the Supreme Court's decision in American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), which treats asserted members of a class as parties to the action and consequently tolls the statute of limitations with respect to them.  Any expansion of the class backwards on this motion would cover members whose claims had not been tolled after the Complaint was filed.  Accordingly, the plaintiffs should be held to the time period of the class stated in their Complaint.

In addition to the temporal discrepancy between the Complaint and the class proposed in this motion, there is a discrepancy between the class defined by incurring expenses as

stated in the Complaint and those being sent letters as sought in the class certification motion.  The Complaint sought a class of borrowers who paid fees to the Money Store defendants that were purportedly incurred for fees paid to Moss Codilis for the breach letters.  It did not include, for example, borrowers who were sent breach letters but never paid the Money Store defendants a fee for such a letter.  The plaintiffs provide no explanation for expanding the class definition without any motion to amend the Complaint.  Therefore for purposes of the Rule 23 motion, the Court will consider a class consisting of:

> All borrowers of loans owned or serviced by the Money Store defendants and who, after March 1, 2000, reimbursed any of the defendants for fees paid to Moss Codilis for the 88,937 breach letters prepared pursuant to Moss Codilis's breach letter program.

**B.**

Rule 23(a)(2) requires a showing that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy the commonality requirement, class members' claims must "depend upon a common contention," and the common contention "must be of such a nature that it is capable of classwide resolution."  Dukes, 131 S. Ct. at 2551.  The plaintiffs allege that the defendants retained Moss Codilis in order to send breach letters out en masse to borrowers and falsely represent that Moss Codilis was collecting the defendants' debts.  Deciding the plaintiffs' claims would entail

11

applying the standard that the Court of Appeals set out in Vincent: whether Moss Codilis was "making *bona fide* attempts to collect" the plaintiffs' debts, or whether "it was merely operating as a 'conduit' for a collection process" controlled by the defendants.  736 F.3d at 103.

The defendants argue that such a question is not capable of classwide resolution because the plaintiffs have not shown that the breach letters sent to each class member were materially similar.  Although the plaintiffs have submitted examples of the breach letters that appear materially similar, see Grobman Decl. Ex. B, the defendants claim that the Court would have to undertake a letter-by-letter review of all 88,978 breach letters sent by Moss Codilis in order to determine if they are all materially similar.  However, the record before the Court on this motion indicates that Moss Codilis pursued a program of "mass processing" in which it sent out similar breach letters to the borrowers identified as being in default.  See Grobman Decl. Ex. E ("Nash Decl.") ¶¶ 4, 6.  See also Nash Dep. at 127-28 (suggesting, in response to whether there were ten different form letters used by Moss Codilis, that it was "[p]robably closer to five or six").  Moreover, in cases in which plaintiffs allege FDCPA claims based on form letters, no court has suggested that such an exhaustive review of all of the letters would be necessary to find commonality.  See, e.g., Savino v.

12

Computer Credit, Inc., 173 F.R.D. 346, 352 (E.D.N.Y. 1997), aff'd, 164 F.3d 81 (2d Cir. 1998) (noting that "in cases where FDCPA plaintiffs have received similar debt collection letters from the defendants' mailing as the basis of the lawsuit, courts have found common questions of law or fact sufficient to certify the class").

The defendants also argue that determining whether Moss Codilis engaged in *bona fide* efforts in collecting debts would necessitate individualized inquiries into its efforts as to each class member.  Here too the defendants' concern is not borne out by the evidence in the record, and is not sufficient to preclude a showing of commonality.  For example, the defendants point to a statement by the dissent in Vincent that Moss Codilis had "numerous follow-up communications with debtors and their lawyers" after it sent the breach letters.  736 F.3d at 113. The defendants argue that factual differences such as this would necessitate a loan-by-loan review of the class members. However, as the Court of Appeals noted, Nash testified that she spoke with debtors and their attorneys approximately one hundred times, compared to almost 90,000 breach letters sent out.  Id. at 95.  Furthermore, the record suggests that for at least some of those follow-up communications, Nash simply referred the matter back to the defendants.  See Nash Dep. 179-81.

Even if the defendants ultimately can show that Moss
Codilis engaged in follow-up efforts as to some class members,
such a showing would not defeat commonality in this case.  The
commonality requirement "may be met even though individual
circumstances differ, so long as class members' injuries derive
from a unitary course of conduct."  Annunziato v. Collecto,
Inc., 293 F.R.D. 329, 336 (E.D.N.Y. 2013) (citations and
quotation marks omitted) (finding commonality met because
resolution of the action would "rest on whether or not the
Defendant's alleged conduct in sending the form letters violated
. . . the FDCPA").

The issue disputed by the parties in this case—whether or
not Moss Codilis's Breach Letter Program was merely a conduit
under the defendants' control in violation of the FDCPA—is a
"unifying thread that warrants class treatment," and therefore
commonality is met.  See Sykes v. Mel Harris & Associates, LLC,
285 F.R.D. 279, 290 (S.D.N.Y. 2012) (citation and quotation
marks omitted) (finding commonality met where plaintiffs alleged
a scheme to defraud borrowers in violation of the FDCPA by
generating affidavits "en masse" with minimal attorney review).
The defendants have not shown that in resolving the issue of
whether the Breach Letter Program violates the FDCPA, individual
differences in Moss Codilis's efforts between borrowers will "be
enough to overcome the common factual nexus" presented by the

14

Program itself.  Id. at 291.  The similarities in the form letters, the agreement between the defendants and Moss Codilis, and the supervision of the entire program by one or two Moss Codilis employees, see Nash Dep. 43-44, suggests that the Breach Letter Program was a centralized program, and addressing whether it violated the FDCPA on a classwide basis would generate common answers for the class.  See Sykes, 285 F.R.D. at 290 n.10; Strouchler v. Shah, 286 F.R.D. 244, 246 (S.D.N.Y. 2012) (finding the "centralization of the program" determinative in meeting commonality).

Accordingly, Rule 23(a)(2)'s commonality requirement is satisfied for the proposed class.

### c.

Rule 23(a)(3) is satisfied when "the claims of the class representatives [are] typical of those of the class, and . . . when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997).  "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  Gary

15

Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990) (citations omitted).  The Supreme Court has emphasized that "the commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Dukes, 131 S. Ct. at 2551 n.5 (citation omitted); see also Ramirez, 2014 WL 3800886, at *6.

The named plaintiffs in this case have all received similar breach letters from Moss Codilis in which Moss Codilis represented that it was retained by the defendants to collect the debts that the plaintiffs owed.  Therefore, the named plaintiffs' claims "arise from the same factual and legal circumstances that provide the basis for the Class Members' claims."  Zimmerman v. Portfolio Recovery Associates, LLC, 276 F.R.D. 174, 179 (S.D.N.Y. 2011) (finding typicality met for proposed class's FDCPA claim based on each class member's receipt of similar correspondences).  The defendants counter that the named plaintiffs are subject to unique defenses that would become the focus of the litigation, including defenses of waiver and judicial estoppel based on the plaintiffs' failure to

16

challenge the breach letter fees in their prior foreclosure or bankruptcy proceedings.

Nevertheless, the unique defense rule "is not rigidly applied in this Circuit." In re Parmalat Sec. Litig., No. 04cv30, 2008 WL 3895539, at *5 (S.D.N.Y. Aug. 21, 2008) (citations and quotation marks omitted). "[I]t is intended to protect plaintiff class—not to shield defendants from a potentially meritorious suit and has generally been applied only where a full defense is available against an individual plaintiff's action." Id. (internal citations and quotation marks omitted). Here, the defendants' potential defenses do not threaten to become the focus of the litigation because they do "not go to the heart of Plaintiff's case and will not require considerable time and effort to rebut." Lapin v. Goldman Sachs & Co., 254 F.R.D. 168, 180 (S.D.N.Y. 2008) (finding typicality met due to lack of meritorious defenses).

The defendants claim that the named plaintiffs will be subject to the defense of judicial estoppel because they did not challenge the breach letter fees in their bankruptcy or foreclosure proceedings. See, e.g., McDermott Decl. Ex. D (Garridos 1999 Foreclosure and Sale); McDermott Decl. Ex. F (Gutierrez 2003 Bankruptcy Judgment). Judicial estoppel typically is appropriate when a party's position is clearly inconsistent with an earlier litigation position, the party

17

persuaded a court to accept the earlier position, and the party will obtain a benefit from the new position.  In re Residential Capital, LLC, No. 14cv2427, 2014 WL 5055493, at *3 (S.D.N.Y. Oct. 9, 2014).

At this stage of the litigation, with discovery completed, the defendants have not made a colorable showing that waiver or judicial estoppel would apply.  There is no plausible showing that judicial estoppel would apply because several of the plaintiffs' prior proceedings did not result in a final bankruptcy plan and there was thus no acceptance of their failure to list the claim.  See Vill. on Canon v. Bankers Trust Co., No. 95cv3706, 1997 WL 47804, at *4 (S.D.N.Y. Feb. 5, 1997). For other proceedings with final judgments, there is no showing that the plaintiffs had knowledge of their present claims against the breach letter fees because those proceedings came before this action was even initiated.  See Buzulencia v. Ohio Bell Tel. Co., 964 F. Supp. 2d 854, 859 (N.D. Ohio 2013) ("An individual filing for bankruptcy is not bound to disclose a claim when he is unaware of its existence.")

Accordingly, the defendants have not shown that the plaintiffs would be subject to unique defenses, and Rule 23(a)(3)'s typicality requirement is satisfied.

**D.**

Adequacy under Rule 23(a)(4) consists of two requirements: "First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another." In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992) (citation omitted); see also Dukes, 131 S. Ct. at 2551 n.5 ("[T]he [adequacy] requirement . . . raises concerns about the competency of class counsel and conflicts of interest."); Ramirez, 2014 WL 3800886, at *7.

The defendants do not appear to challenge the qualifications of class counsel.  Rather, they assert two grounds for why the named plaintiffs are inadequate representatives: that their claims are time-barred, and that previous dishonest conduct has rendered them inadequate due to diminished credibility.

**i.**

If a named plaintiff is time-barred from pursuing an action, the plaintiff would be an inadequate representative of the class because that plaintiff would not be a member of the class.  See, e.g., In re Cmty. Bank of N. Virginia, 622 F.3d

275, 293-94 (3d Cir. 2010) ("Statute-of-limitations issues . . . touch the adequacy requirement.").[3]

The defendants argue that all of the claims of the named plaintiffs in this action are barred by the FDCPA's one-year statute of limitations, 15 U.S.C. § 1692k, and therefore each of the plaintiffs is an inadequate representative of the class. The plaintiffs assert various reasons for tolling their claims such that their claims were timely filed.[4]

The Garridos' most recent breach letter is dated March 13, 1998, Ms. Vincent's most recent letter is dated March 22, 2000, and Ms. Gutierrez's most recent letter is dated October 30,

---

[3] The requirement that a named plaintiff's claim not be time-barred may implicate different prongs of Rule 23(a), and "decisions interpreting and applying this requirement are not uniform in the way they articulate this issue."   7A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Pratice and Procedure § 1760 (describing the requirement that a representative be a member of the class as "inherent" in Rule 23, and noting that courts have considered it as affecting adequacy or standing); see also Cmty. Bank, 622 F.3d at 293-94 (stating that statute-of-limitations issues for the named plaintiffs may affect either the typicality requirement or the adequacy requirement).

[4] Relying on Mattson v. U.S. W. Commc'ns, Inc., 967 F.2d 259, 262 (8th Cir. 1992), the defendants argue that § 1692k cannot be tolled. However, this Court agrees with the well-reasoned decisions of every other Court of Appeals to have considered the issue which have all concluded that § 1692k can be tolled.   See, e.g., Mangum v. Action Collection Service, Inc., 575 F.3d 935, 940 n.14 (9th Cir. 2009); Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 327 (7th Cir. 2000).   While the Second Circuit Court of Appeals has not directly addressed this question, multiple district courts have found that FDCPA claims can be tolled.   See, e.g., Sykes v. Mel Harris & Associates, LLC, 757 F. Supp. 2d 413, 422 (S.D.N.Y. 2010) ("FDCPA claims are subject to equitable tolling."); Boyd v. J.E. Robert Co., No. 05cv2455, 2008 WL 4415253, at *2 (E.D.N.Y. Sept. 24, 2008) (applying American Pipe tolling to FDCPA claim).

2000.  See Grobman Decl. Ex. B.  The plaintiffs filed this action on April 24, 2003.  Therefore, absent any tolling of their claims, the plaintiffs' claims would be time-barred.[5]

However, the plaintiffs assert that multiple tolling doctrines apply to make all of their claims timely.  The plaintiffs argue that their claims have been tolled since at least June 22, 2001, when the putative class action Complaint was filed in Mazzei, based on the tolling doctrine articulated in American Pipe, 414 U.S. at 554.  In American Pipe, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."[6]  Id.; see also Choquette, 839 F. Supp. 2d at 697.  The plaintiffs contend that Gutierrez's claim is thus timely under American

---

[5] The Supreme Court has not addressed when the statute of limitations begins to run on an FDCPA claim, and opinion appears to be divided among the circuits, and within this circuit, as to whether the one-year time period begins to run on the date an allegedly offending letter is mailed, or when it is received.  See Benzemann v. Citibank N.A, No. 12cv9145, 2014 WL 2933140, at *6 (S.D.N.Y. June 27, 2014) (comparing case law).  In any event, the parties have only provided the date on each of the letters—likely when they were sent—and neither party has suggested that analyzing when they were received would make a difference for purposes of § 1692k.

[6] The Supreme Court's decision in American Pipe concerned plaintiffs who sought to intervene in the putative class action after denial of class certification and beyond the limitations period.  However, in Crown v. Parker, the Court later clarified that tolling also applies to plaintiffs who seek to file separate actions, not just to plaintiffs who seek to intervene in a pending action.  462 U.S. 345, 350 (1983).

Pipe, because it accrued after June 22, 2000, less than one year before the Complaint was filed in Mazzei.

American Pipe tolling can only save Gutierrez's claim because more than one year elapsed between the date of the breach letters sent to the Garridos and Vincent and June 22, 2001, the date the Mazzei class action Complaint was filed. Gutierrez, on the other hand, was plainly a member of the putative breach letter class described in the Mazzei Complaint, and the Gutierrez breach letter is dated less than one year before the Mazzei class action Complaint was filed.  See Mazzei Compl. (No. 01cv5694, ECF No. 2); Mazzei Third Am. Compl. ¶ 10 (asserting claims on behalf of "[a]ll borrowers of loans serviced by HomEq who, after March 1, 2000, reimbursed HomEq for . . . fees paid  . . . pursuant to Moss Codilis's breach letter program").  The defendants respond that American Pipe should not apply to Gutierrez because she filed the present putative class action while awaiting the certification decision in Mazzei.  See Korwek v. Hunt, 827 F.2d 874, 878 (2d Cir. 1987) (describing concern that plaintiffs may "piggyback one class action onto another and thus toll the statute of limitations indefinitely") (citation omitted).

The Second Circuit Court of Appeals has held that American Pipe "provides that the filing of a class action tolls the statute of limitations for all members of the asserted class,

regardless of whether they file an individual action before resolution of the question whether the purported class will be certified."  In re WorldCom Sec. Litig., 496 F.3d 245, 247 (2d Cir. 2007).  The statute of limitations remains tolled at least until class certification is denied.  See In re Nat'l Austl. Bank Sec. Litig., No. 03cv6537, 2006 WL 3844463, at *4 (S.D.N.Y. Nov. 8, 2006).[7]  In Korwek, the Court of Appeals voiced concern about applying American Pipe to "successive class actions," but did so in the context of a class action that was filed after certification of the previous class was denied.  827 F.2d at 879.  The Court stated that "[t]he Supreme Court in American Pipe and Crown, Cork certainly did not intend to afford plaintiffs the opportunity to argue and reargue the question of class certification by filing new but repetitive complaints." Id.

Acknowledging that the plaintiffs filed this Complaint when a class certification motion in Mazzei had not yet been filed, let alone decided,[8] the defendants rely on Musa v. SuperShuttle Int'l, Inc., No. 12cv2418, 2013 WL 5507143 (E.D.N.Y. Sept. 30,

---

[7] Indeed, the statute of limitations may remain tolled after class certification is denied if it is denied for a reason such as the inadequacy of the lead plaintiff, because "in such cases there is nothing wrong with the class claims."  In re Nat'l Austl. Bank, 2006 WL 3844463, at *4 (emphasis in original).

[8] On December 20, 2012, this Court granted in part and denied in part the plaintiff's class certification motion in Mazzei.  See Mazzei v. Money Store, 288 F.R.D. 45, 69 (S.D.N.Y. 2012).

2013), in which the court held that <u>American Pipe</u> tolling should
not apply to a successive class action even when there was no
denial of the previous class certification.  <u>Id.</u> at *4.
However, the circumstances in <u>Musa</u> presented the "potential for
abuse" of <u>American Pipe</u> tolling, because the plaintiffs had
opted out of the prior class and filed a new action shortly
after the previous case settled.  <u>Id.</u> at *2, 4.  The court held
that "[t]o allow tolling under these circumstances would invite
further iterations of class actions suits for any subset of
putative plaintiffs dissatisfied with the settlement offered,
thereby tolling the statute of limitations indefinitely."  <u>Id.</u>
at *4.

     No such circumstances exist here.  The plaintiffs filed
this lawsuit over nine years prior to the certification of the
class in <u>Mazzei</u>.  It was "not the purpose of <u>American Pipe</u> . . .
to reduce the number of suits filed, or to . . . protect the
desire of a defendant 'not to defend against multiple actions in
multiple forums.'"  <u>In re Worldcom</u>, 496 F.3d at 256 (quoting
<u>Crown</u>, 462 U.S. at 353).  Gutierrez's claim was tolled by
<u>American Pipe</u> and is timely filed in this case.  See <u>Boyd</u>, 2008
WL 4415253, at *2 ("<u>American Pipe</u> tolling applies to plaintiffs'
claims in the instant case notwithstanding their failure to
await determination of class certification.")

The plaintiffs argue that the Court should apply equitable tolling to save the claims of the Garridos and Vincent, which accrued more than one year before the Mazzei Complaint was filed. "[E]quitable tolling is only appropriate in rare and exceptional circumstance[s], in which a party is prevented in some extraordinary way from exercising his rights." Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks, citations, and alteration omitted). Accordingly, equitable tolling is appropriate where the plaintiff diligently pursued judicial remedies and filed a timely but defective pleading; where the defendant's misleading conduct prevented the plaintiff from becoming aware of the cause of action; or where a medical condition or impairment prevented the plaintiff from timely filing. Id. "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period [the plaintiff] seeks to have tolled and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Id. at 80-81 (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)) (internal quotation marks omitted); see also Chepilko v. Cigna Life Ins. Co. of New York, 952 F. Supp. 2d

629, 632-33 (S.D.N.Y. 2013), aff'd sub nom. Chepilko v. Cigna Grp. Ins., No. 12cv3229, 2015 WL 264635 (2d Cir. Jan. 22, 2015).

Generally, for equitable tolling to apply due to the defendant's misleading conduct, the plaintiff must show that "the defendant took affirmative steps beyond the allegedly wrongful activity itself to conceal her activity from the plaintiff." S.E.C. v. Gabelli, 653 F.3d 49, 59-60 (2d Cir. 2011), rev'd on other grounds, 133 S. Ct. 1216 (2013). In some cases, however, the plaintiff may be able to prove this element by showing that "the wrong itself was of such a nature as to be self-concealing." State of N.Y. v. Hendrickson Bros., 840 F.2d 1065, 1083 (2d Cir. 1988). The plaintiffs rely on this line of cases to argue that the Breach Letter Program was a "self-concealing" wrong and the claims of Vincent and the Garridos should consequently have been tolled until they could have been aware of the harm.[9]

---

[9] At times, the plaintiffs conflate showing a "self-concealing" wrong for purposes of tolling the statute of limitations, Hendrickson Bros., 840 F.2d at 1083, with a discovery rule in which the plaintiffs' claim would not accrue until "the injury is or reasonably could have been discovered." Gabelli v. SEC, 133 S. Ct. 1216, 1222 (2013). Although, as discussed earlier, the Second Circuit Court of Appeals has not stated when FDCPA claims accrue, the statute makes clear that a discovery rule should not apply. See Benzemann, 2014 WL 2933140, at *6. The FDCPA provides that the statute of limitations begins "on the date when the violation occurs." 15 U.S.C. § 1692k(d). A statute that "key[s] the start of the limitations period to the date of the occurrence of the violation . . . plainly establish[es]" that Congress did not intend for the discovery rule to apply. TRW Inc. v. Andrews, 534 U.S. 19, 32 (2001) (internal citations and quotation marks omitted). Although the Ninth Circuit Court of Appeals applies a

Courts have identified a limited number of circumstances where a "self-concealing" fraud exists such that the plaintiffs need not show any additional affirmative acts of concealment by the defendants.  Principal among these are bid-rigging and price-fixing schemes: "scheme[s] [that] necessarily include[] concealment of the existence of [the] conspiracy," and thus "proof of the conspiracy itself suffice[s] to prove concealment by the coconspirators."  Hendrickson Bros., 840 F.2d at 1084. See also In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig. (In re IPO), No. 00cv7804, 2004 WL 487222, at *4 (S.D.N.Y. Mar. 12, 2004) (holding that price-fixing scheme itself satisfied the concealment element of the equitable tolling requirements); In re Nine W. Shoes Antitrust Litig., 80 F. Supp. 2d 181, 193 (S.D.N.Y. 2000) ("[S]ince bid-rigging and price-fixing conspiracies are deemed self-concealing, a plaintiff is not required to show defendants took independent affirmative steps to conceal their conduct.") (citing Hendrickson Bros., 840 F.2d at 1083).  Because accomplishing those schemes require affirmative acts of concealment, the plaintiffs in those cases do not need to show additional

---

discovery rule to § 1692k(d), Mangum, 575 F.3d at 939-40, such an approach is consistent with the "general application of the discovery rule" required by Ninth Circuit case law.  Id. at 941 (noting the Supreme Court's "skepticism" with this approach).

"independent affirmative steps" of concealment.  In re IPO, 2004 WL 487222, at *4.

The plaintiffs have not met their burden to show that such "extraordinary circumstances" exist as to warrant equitably tolling their claims.  See Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000) (placing on the plaintiff the burden of demonstrating equitable tolling is warranted).  The plaintiffs have not shown that it "would have been *impossible* for a reasonably prudent person to learn about his or her cause of action." Conklin v. Jeffrey A. Maidenbaum, Esq., No. 12cv3606, 2013 WL 4083279, at *5 (S.D.N.Y. Aug. 13, 2013) (emphasis in original) (quoting Pearl v. City of Long Beach, 296 F.3d 76, 85 (2d Cir. 2004)).

In Coble v. Cohen & Slamowitz, LLP, 824 F. Supp. 2d 568 (S.D.N.Y. 2011), an FDCPA case upon which the plaintiffs rely, the defendants affirmatively "concealed [the] plaintiffs' cause of action," and continued to enforce the allegedly fraudulent affidavits after being on notice that the affidavits were false. Id. at 571-72.  By contrast, in this case the plaintiffs have not shown that the defendants were aware that any borrowers could have a cause of action arising from the Breach Letter Program.  Indeed, in the course of this action, Judge Sprizzo concluded that the Breach Letter Program did not violate the FDCPA, and this Court denied a motion to reconsider that decision.  There is no evidence that the defendants were aware

28

that by using Moss Codilis to send out breach letters they were violating the FDCPA, and that they then took affirmative steps to hide that potential claim.  The plaintiffs' claims rely solely on the fact that they received the breach letters from Moss Codilis and were charged for them, not on any other acts of concealment by the defendants.  See Shetiwy v. Midland Credit Mgmt., 980 F. Supp. 2d 461, 474 (S.D.N.Y. 2013) (denying equitable tolling of FDCPA claims where there was no act of concealment by the defendants); cf. McAnaney v. Astoria Fin. Corp., No. 04cvl101, 2008 WL 222524, at *7 (E.D.N.Y. Jan. 25, 2008) ("[I]f the very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified.").  Furthermore, the plaintiffs have not alleged facts showing due diligence to discover such a cause of action, a deficiency for which courts regularly dismiss equitable tolling requests.  See, e.g., Conklin, 2013 WL 4083279, at *5; Fritz v. Resurgent Capital Servs., LP, 955 F. Supp. 2d 163, 173 (E.D.N.Y. 2013).

Any claims based on a letter sent before June 22, 2000, would therefore be time-barred, including those of Vincent and the Garridos.  Because Vincent and the Garridos claims are time-barred, they are not adequate representatives of the putative class.  See City of Hialeah, Fla. v. Rojas, 311 F.3d 1096, 1103

(11th Cir. 2002) (holding that named plaintiff who was time-barred from bringing claims could not serve as class representative).

### ii.

The defendants also argue that Ms. Gutierrez, the remaining named plaintiff, has engaged in various acts of misconduct that will diminish her credibility and render her inadequate as a lead plaintiff.  The defendants argue that Gutierrez's previous bounced checks and multiple bankruptcy filings "would create serious concerns" as to her credibility at trial, and threaten the interests of the class.  Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998).

However, in Savino, the Court of Appeals emphasized that the plaintiff was inadequate because his credibility was in question as to the "very basis of his lawsuit."  Id.  The defendants have not shown that Gutierrez's prior financial issues will be implicated by any issues related to the putative class's FDCPA claim.  The prior actions at issue relate generally to failures to make payments, and have nothing to do with whether Gutierrez received a breach letter that was improper under the FDCPA.  The attacks are therefore not "so sharp as to jeopardize the interests of absent class members." Lapin, 254 F.R.D. at 177 (citation and quotation marks omitted).

30

Accordingly, the plaintiff Gutierrez is an adequate representative of the class for purposes of Rule 23(a)(4).

### E.

"Although it is not explicitly spelled out in Rule 23, courts have added an implied requirement of ascertainability with respect to the class definition." Schear v. Food Scope Am., Inc., 297 F.R.D. 114, 125 (S.D.N.Y. 2014) (citation and internal quotation marks omitted). Under this requirement, a class must be identifiable before it may be properly certified. Id. "An identifiable class exists if its members can be ascertained by reference to objective criteria." Id. (citation omitted); see also Ramirez, 2014 WL 3800886, at *7. Here, neither party has addressed the ascertainability requirement. It is nevertheless clear that the members of the proposed class can be ascertained by reference to objective criteria, such as the borrowers to whom breach letters were sent.

Accordingly, the implied ascertainability requirement of Rule 23(a) is satisfied.

### F.

The plaintiffs must also satisfy the Rule 23(b)(3) predominance and superiority requirements for their class to be certified.

31

i.

To satisfy the predominance requirement, the issues subject to generalized proof and applicable to the class as a whole must predominate over, and be more substantial than, the issues that are subject to individualized proof.  See In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001), abrogated on other grounds by, In re IPO, 471 F.3d at 24; see also Mazzei v. Money Store, 288 F.R.D. 45, 59 (S.D.N.Y. 2012).

The defendants argue that the plaintiffs have failed to satisfy their burden as to predominance for two reasons: first, for at least some of the putative class members, Moss Codilis made "bona fide efforts" sufficient to satisfy the standard provided by the Court of Appeals, and determining for which class members this standard was met will require individualized inquiries into each loan.  Second, the defendants have affirmative defenses such as waiver and estoppel that will present individual inquiries that outweigh the common issues.

Because the Court of Appeals has already examined the record and found that a cause of action exists for the plaintiffs under the FDCPA, its analysis provides helpful guidance for the type of inquiries that will be necessary in this case.  The Court of Appeals looked to generalized proof about the Breach Letter Program, such as the agreement between

the defendants and Moss Codilis, descriptions of the general process by Moss Codilis, including that the program was an "exercise in mass processing," and evidence about the interactions between the defendants and Moss Codilis.  <u>Vincent</u>, 736 F.3d at 94, 103-04.  For example, the Court noted that the defendants "typically sent Moss Codilis batches of borrower information that usually exceeded 1000 borrowers, and required Moss Codilis to mail all the Breach Letters by the next day." <u>Id.</u> at 104 (internal quotation marks omitted).  The Court's resort to generalized proof in analyzing the Breach Letter Program itself, rather than various individual efforts at debt collection, demonstrates that common issues will predominate over individualized inquiries in this case.[10]

The defendants argue that the "numerous follow-up communications" that Moss Codilis made as to individual debtors, noted by the dissenting opinion in <u>Vincent</u>, <u>id.</u> at 113, show that Moss Codilis made bona fide efforts at least as to some putative class members.  But any disagreements about the level

---

[10] In determining the scope of the false name exception, the Court relied heavily on the opinion of the Seventh Circuit Court of Appeals in <u>Nielsen v. Dickerson</u>, 307 F.3d 623, 635 (7th Cir. 2002), noting that the facts were "nearly identical" to that case.  <u>Vincent</u>, 736 F.3d at 104.  Prior to the Court of Appeals' decision in <u>Nielsen</u>, the District Court for the Northern District of Illinois had certified a class of all borrowers receiving debt collection letters.  <u>Nielsen v. Dickerson</u>, No. 98cv5909, 1999 WL 350649, at *10 (N.D. Ill. May 20, 1999).  There was no dispute in that case over predominance.  <u>Id.</u> at *3.

of efforts made by Moss Codilis do not demonstrate a
predominance of individualized inquiries, but rather illustrate
that the ultimate issue of the defendants' liability is still
contested.  The Court of Appeals made clear that such
disagreements present a question for the jury.  Id. at 104.
Furthermore, the plaintiffs have shown that the follow-up
efforts comprised a small percentage of Moss Codilis's role in
the Breach Letter Program.  Ms. Nash testified that out of the
nearly 89,000 breach letters sent, she only engaged in follow-up
discussions with around 100 borrowers.  Nash Dep. 186.

The defendants point to this Court's decision in Mazzei, in
which the Court declined to certify a class that asserted a
claim based on the same Breach Letter Program because, among
other reasons, the plaintiff failed to satisfy predominance.
288 F.R.D. at 59.  However, the differences between the state
law claim in that case and the FDCPA claim in this case
illustrate why predominance is satisfied here.  In Mazzei, the
plaintiff argued that the fees charged by Moss Codilis for the
breach letters were improper because Ms. Nash was responsible
for drafting them and she was not licensed to practice law in
Colorado where the letters were issued.  Id. at 57.  In order
for Mazzei's claim based on Ms. Nash's alleged unauthorized
practice of law in supervising the program to survive, it was
necessary that Nash had actually supervised the writing of the

breach letters.  Id. at 59.  Because there was evidence that another lawyer was involved, the difficult individualized inquiries necessary to determine who had supervised each letter outweighed the common question of whether the fees for the letters were improperly charged.  Id.

By contrast, the question of which lawyer was supervising the program is of little relevance in determining whether the Breach Letter Program as a whole is found to be a mere conduit for the defendants' own debt collection efforts.  The plaintiffs have shown this claim may be evaluated by reference to, among other things, the agreement between the defendants and Moss Codilis regarding the Breach Letter Program, the cumulative evidence of Moss Codilis's efforts on the program, and Moss Codilis's descriptions of the program.  See Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co., 301 F.R.D. 116, 136 (S.D.N.Y. 2014) (rejecting defendants' argument that a "loan-by-loan examination" of securities issued would be necessary because the defendants' liability would be assessed principally by the defendants' process of issuing securities).  The defendants have not shown that evaluating efforts as to individual borrowers, such as Nash's approximately one hundred follow-up inquiries, would outweigh the generalized inquiries into the Breach Letter Program.  See id. at 137 (finding

predominance satisfied because "relatively minor variations" in relevant documents "will not require individualized attention").

The FDCPA cases on which the defendants rely are all distinguishable from this case. In Wahl v. Midland Credit Mgmt., Inc., 243 F.R.D. 291, 300-01 (N.D. Ill. 2007), the court denied certification because the plaintiffs were only challenging an "*alleged* policy" of collection efforts forbidden by the FDCPA. Id. (emphasis in original). The court distinguished a separate class that it had certified that relied on standardized letters, and held that determining the existence of the alleged policy as to each class member would present individualized inquiries that would predominate over any common issues. Id. In this case, the plaintiffs are challenging the legality of a program that indisputably exists, and involves sending out standardized letters. The plaintiff's case here is thus more similar to the class that the court certified in Wahl. See id. at 300.[11]

---

[11] Indeed, courts within this Circuit have "routinely found that putative classes alleging debt collection schemes that employ false or misleading language in mailings sent to debtors . . . warrant class certification under Rule 23(b)." Sykes, 285 F.R.D. at 290 n.10 (collecting cases); see, e.g., Zimmerman, 276 F.R.D. at 180; Ellis v. Gen. Revenue Corp., 274 F.R.D. 53, 61 (D. Conn. 2011); Leone v. Ashwood Fin., Inc., 257 F.R.D. 343, 352-53 (E.D.N.Y. 2009). This case does not simply deal with misleading mailings, but will also require evaluating the inner workings of the Breach Letter Program. Nevertheless, the program appears similarly uniform such that certification is also appropriate here.

The defendants also argue that the "bona fide efforts" standard is analogous to the "bona fide error" affirmative defense under § 1692k(c) of the FDCPA, which at least one district court has found would necessitate examining each potential class member's circumstances.  LaRocque ex rel. Spang v. TRS Recovery Servs., Inc., 285 F.R.D. 139, 157 (D. Me. 2012). However, unlike the defendants in LaRocque, the defendants have not presented a sufficient "variety of circumstances" that would make a class action trial "unmanageable."  Id. at 157-58 (finding it necessary to inquire into the defendants' documentation and procedures as to each class member); see also Lee v. Javitch, Block & Rathbone, LLP, 522 F. Supp. 2d 945, 958 (S.D. Ohio 2007) (finding predominance not met in determining whether attorney had a "reasonable basis" for signing garnishment affidavits because "potential factual variations loom large").  Rather, the record evidence suggesting that the Breach Letter Program was an "exercise in mass processing" indicates that there would be far fewer relevant factual variations between Moss Codilis's efforts towards borrowers. See Sykes, 285 F.R.D. at 293 (holding that defendants' "uniform, widespread practice of filing automatically-generated, form affidavits of merit based on 'personal knowledge'" satisfied predominance despite individual issues of causation and damages).

37

Finally, the defendants' argument that they will have affirmative defenses of waiver and estoppel does not preclude a finding that predominance is met.  That an affirmative defense may arise that affects different class members differently "does not compel a finding that individual issues predominate over common ones."  In re Nassau Cnty. Strip Search Cases, 461 F.3d 219, 225 (2d Cir. 2006) (citation and internal quotation marks omitted).  Furthermore, as discussed above, the defendants have not shown that any affirmative defenses based on the plaintiffs' conduct in prior foreclosures or bankruptcies would be meritorious, or detract significant attention away from the common issues in this litigation.

Accordingly, predominance under Rule 23(b) is satisfied in this case.

### ii.

In order to satisfy Rule 23(b)(3), the plaintiffs must also show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The defendants contend that the superiority prong is not satisfied for the same reasons as the predominance prong.  Those reasons have already been rejected, as described above.  Moreover, superiority is plainly satisfied in this case.  There are a significant number of putative class members, and the plaintiffs are aware of no other individual

actions against the defendants regarding the Breach Letter Program.  See Ramirez, 2014 WL 3800886, at *10.  Statutory and actual damages for each class member would likely be insufficient to incentivize bringing individual actions, as can be seen from the paucity of other lawsuits raising the plaintiffs' claims.  Accordingly, superiority is satisfied for the plaintiffs' class.

### G.

For the foregoing reasons, the requirements of Rule 23(a) and (b)(3) are satisfied for the plaintiff class as defined above, and the plaintiffs' motion to certify this class is granted.

### CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the reasons explained above, the plaintiffs' motion for class certification is **granted.**  The Clerk is directed to **close Docket Nos. 202 and 205.**

The plaintiffs should provide a proposed order for class notice by **March 4, 2015.**  The defendants may provide any objections and response by **March 19, 2015.**

**SO ORDERED.**

**Dated:  February 2, 2015**
**        New York, New York**                              _____/s/_____
                                                               **John G. Koeltl**
                                                    **United States District Judge**